IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES, a
Nevada nonprofit foundation
8379 West Sunset Road, Suite 210
Las Vegas, NV 89113

Civil Action No. _____

*Plaintiff,*

v.

ROBERT F. KENNEDY, JR., in his official
capacity, and U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
200 Independence Avenue, S.W.
Washington, DC 20201

and

THOMAS ENGELS, in his official capacity,
and HEALTH RESOURCES AND SERVICES
ADMINISTRATION,
5600 Fishers Lane
Rockville, MD 20857

*Defendants.*

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Sagebrush Health Services ("Sagebrush"), a nonprofit foundation, submits the

following Verified Complaint for Declaratory and Injunctive Relief against Defendants Robert F.

Kennedy, Jr., in his official capacity, the United States Department of Health and Human Services

("HHS"), the Health Resources and Services Administration ("HRSA"), and Thomas Engels, in his official capacity, and alleges as follows:

## INTRODUCTION

1.      The federal 340B Drug Pricing Program (the "340B Program") endeavors to stretch federal resources as far as possible and increase access to medical care. It does this, in part, by allowing certain types of health care providers and organizations, referred to as "covered entities," to obtain outpatient drugs from participating manufacturers at substantially reduced prices. HRSA, an agency of HHS, administers the 340B Program, which is governed by Section 340B of the Public Health Service Act ("Section 340B" and "PHSA," respectively). This section of the PHSA places specific limitations on HRSA's power, including limiting the circumstances under which HRSA may remove covered entities from the program and require covered entities to repay the discounts received on manufacturers' drugs.

2.      In the instant case, HRSA improperly and unlawfully removed Sagebrush, a covered entity, from the 340B Program. HRSA's unlawful removal of Sagebrush from the 340B Program, and its accompanying (and equally unlawful) demand that Sagebrush repay manufacturers the drug savings to which it is entitled as a covered entity, contravenes the statutory limitations on HRSA's oversight of the 340B Program, is arbitrary and capricious, and significantly impairs Sagebrush's operating capabilities. This Court must recognize the constraints on HRSA's power and issue a declaratory judgement and injunctive relief accordingly.

## THE PARTIES

3.      Sagebrush is a Nevada nonprofit foundation that collaborates with specialty care clinics in Nevada, Connecticut, and South Carolina. Its headquarters is located at 8379 West Sunset Road, Suite 210, Las Vegas, Nevada 89113.

4.      Defendant Robert F. Kennedy, Jr. is the Secretary of HHS. He has ultimate responsibility for oversight of HRSA's activities, including administration of the 340B Program and the actions that are the subject of this Complaint. He is sued in his official capacity only. Secretary Kennedy maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201.

5.      Defendant HHS is an executive department of the United States government that is responsible for HRSA and the 340B Program. HHS is headquartered in Washington, D.C.

6.      Defendant HRSA is an administrative agency of the United States government within HHS. It is the division of HHS charged with administering the 340B Program. HRSA is headquartered in Rockville, Maryland.

7.      Defendant Thomas Engels is the Administrator of HRSA. He has ultimate responsibility for HRSA's Office of Pharmacy Affairs ("OPA") and its administration of the 340B Program, among other duties. He is sued in his official capacity only. Administrator Engels maintains an office at 5600 Fishers Lane, Rockville, Maryland 20857.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because this is an action against officers, a department, and an agency of the United States; at least one defendant is located in this district; and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

**A.    The 340B Program**

10.    The 340B Program, established by Congress in 1992, is a federal drug discount program that allows eligible organizations, referred to as "covered entities," to obtain outpatient drugs from participating manufacturers at a statutorily capped "ceiling price." *See* 42 U.S.C. § 256b. By capping prices, the program ensures that covered entities can purchase outpatient drugs at significantly reduced rates (which are reimbursed by insurers at higher rates), allowing them to allocate more resources to patient care, expand services, and improve access to medications for vulnerable populations with the savings on their drug purchases. *See* H.R. Rep. 102-384(II) at 12 (1992) (noting that the purpose of the 340B Program is "to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services"). There are few limits on the type of outpatient drugs that a covered entity may purchase at the ceiling price.

11.    Section 340B authorizes HHS (and, by extension, HRSA) to administer the program. *See* 42 U.S.C. § 256b. Its programmatic responsibilities include determining an entity's eligibility as a covered entity, overseeing a certification and recertification process for certain categories of covered entities, auditing covered entities regarding statutorily prohibited activity, and terminating entities from the 340B Program in specific circumstances.

**1. Participation in the 340B Program**

12.    In keeping with the purpose of the 340B Program to expand patient access to health care, Congress expressly provided for the participation of a wide range of entities. The pool of eligible participants authorized under the statute range from federally qualified health centers to family planning projects to urban Indian organizations and rural referral centers. *See* 42 U.S.C. § 256b(a)(4).

13.    An "entity receiving funds . . . through a State or unit of local government" under Section 318 of the PHSA ("Section 318") "relating to treatment of sexually transmitted diseases" (a "Section 318 Subrecipient") qualifies as a covered entity under the statute. *Id.* § 256b(a)(4)(K). The statute neither defines the term "funds" nor specifies that the funding must be obtained *directly from* a government entity. The statute only requires that funds be "receiv[ed]" by an entity after having passed "through" a "State or unit of local government." *Id*.

14.    HRSA has interpreted the term "funds" to include in-kind contributions that may take the form of equipment, supplies, or goods and services directly benefiting and specifically identifiable to the relevant project or grant.[1] For example, an entity receiving an in-kind contribution of condoms that a state health department purchased using Section 318 grant funds has received "funds" for purposes of qualifying as a Section 318 Subrecipient.

15.    Section 318 authorizes various grant programs which are primarily managed by the Centers for Disease Control and Prevention ("CDC"), an agency of HHS, relating to the prevention, detection, and treatment of sexually transmitted diseases ("STDs"). *See id.* § 247c. These include grants to states and political subdivisions of states for, among other initiatives, "sexually transmitted diseases surveillance activities, including the reporting, screening, and follow-up of diagnostic tests for, and diagnosed cases of, sexually transmitted diseases . . . ." *Id.* § 247c(c)(1). One such grant program is the "Strengthening STD Prevention and Control for Health Departments (STD PCHD)" initiative, which provides financial support to state, local, and territorial health departments to bolster their STD prevention efforts, including monitoring, prevention, and control activities. The CDC describes this program as its "flagship funding to prevent and control sexually transmitted infections . . . ."[2]

---

[1] https://www.hrsa.gov/opa/faqs.
[2] https://www.cdc.gov/sti/php/projects/pchd.html.

16.    A Section 318 Subrecipient that wishes to participate in the 340B Program must undergo an initial certification process with HRSA. *See id.* § 256b(a)(7)(A). Once certified as eligible to participate, the covered entity must then recertify its continued eligibility on a no-more-than-annual basis. *See id.* § 256b(a)(7)(E).

17.    To begin the certification process, an entity must register via HRSA's Office of Pharmacy Affairs Information System ("OPAIS"). OPAIS is a "single, universal, and standardized identification system by which each covered entity site can be identified by manufacturers, distributors, covered entities, and the Secretary for purposes of facilitating the ordering, purchasing, and delivery of covered outpatient drugs . . . ." *Id.* § 256b(d)(2)(B)(iv).

18.    A Section 318 Subrecipient must register each physical site that purchases 340B drugs to use or prescribe to eligible patients.[3]  Once the registration is complete, OPA reviews the submission and "verif[ies] eligibility by conferring with the appropriate granting agency."[4] If OPA determines that a site is eligible and has provided all required information, it will approve the site's enrollment as a covered entity and issue a 340B identification number—a unique number that drug manufacturers, wholesalers, and others use to verify the site's program enrollment.[5]

19.    Only after a Section 318 Subrecipient has completed all these steps may it begin to purchase drugs at the 340B ceiling price. Each year thereafter, the Section 318 Subrecipient must recertify its sites' eligibility with HRSA to remain in the 340B Program. If the Section 318 Subrecipient fails to timely recertify, HRSA may terminate its sites from the program.[6]

---

[3] *See* https://www.hrsa.gov/opa/registration.
[4] *See* HRSA FAQ ID: 1213.
[5] *See* https://www.hrsa.gov/opa/registration.
[6] *See* HRSA FAQ ID: 1434.

**2. 340B Program Compliance and Oversight**

20.     Every covered entity participating in the 340B Program is subject to two statutory prohibitions: the "diversion" prohibition and the "duplicate discount" prohibition. *Id.* § 256b(a)(5).

21.     The diversion prohibition prevents a covered entity from reselling or transferring a drug purchased through the 340B Program to anyone other than a "patient" of the covered entity. *See id.* § 256b(a)(5)(B). Section 340B places no restriction on the type of outpatient drugs that may be prescribed for a 340B patient.

22.     The duplicate discount prohibition prevents a covered entity from billing fee-for-service Medicaid for a 340B drug if the state Medicaid agency will request a rebate from the manufacturer for the drug. *See id.* § 256b(a)(5)(A).

23.     A covered entity's records related to its compliance with the diversion and duplicate discount prohibitions are subject to audit by HRSA and manufacturers. *See id.* § 256b(a)(5)(C). If, "after audit . . . and after notice and hearing," HRSA determines that the covered entity violated either prohibition, the covered entity "shall be liable" to an affected manufacturer for repayment of an amount equal to the discount received on a 340B drug. *Id.* § 256b(a)(5)(D).

24.     A manufacturer's sole remedy against a covered entity is to initiate an administrative dispute resolution proceeding to adjudicate a claim that the covered entity violated the diversion or duplicate discount prohibition. *See id.* § 256b(d)(3)(A). An audit is a "prerequisite to initiating administrative dispute resolution proceedings against a covered entity . . . ." *Id.* § 256b(d)(3)(B)(iv).

**3. Removal from the 340B Program**

25.     In addition to requiring repayment to manufacturers, HRSA may "remov[e]" a covered entity from the 340B Program if HRSA finds that the covered entity committed a diversion

violation that is "systematic and egregious as well as knowing and intentional . . . ." *Id.* § 256b(d)(2)(B)(v)(II).

26.    HRSA interprets its statutory removal authority to apply when the agency makes "[a] finding of non-compliance with the diversion prohibition in two or more audits, depending on the nature of the violation . . . ."[7]

27.    Section 340B does not authorize HRSA to require a covered entity to repay a manufacturer absent an audit, notice and a hearing, and finding of a violation of either the diversion or duplicate discount prohibition. *Id.* § 256b(a)(5)(d).

28.    Section 340B does not authorize HRSA to impose a "monetary penalty" on a covered entity absent a covered entity's "knowing[ ] and intentional[ ]" violation of the diversion prohibition. *Id.* § 256b(d)(2)(B)(v)(I).

29.    Section 340B does not authorize HRSA to remove a covered entity from the 340B Program absent a covered entity's "systemic and egregious as well as knowing and intentional" violation of the diversion prohibition. *Id.* § 256b(d)(2)(B)(v)(II).

30.    Section 340B does not authorize HRSA to remove a covered entity from the 340B Program due to violation of the duplicate discount prohibition or, in fact, for any reason other than the "systemic and egregious as well as knowing and intentional" violation of the diversion prohibition. *See generally id.* § 256b.

**B.    Sagebrush**

31.    Sagebrush is a Nevada nonprofit foundation that is affiliated with specialty care clinics in Nevada, Connecticut, and South Carolina. It is the recipient of two subawards focused on the prevention, screening, detection, and treatment of STDs. One was issued by the Nevada

---

[7] https://www.hrsa.gov/opa/program-integrity.

Department of Health and Human Services ("NHHS") (the "NHHS Subaward"); the other by the Connecticut Department of Public Health ("CDPH") (the "CDPH Subaward," together with the NHHS Subaward, the "Subawards"). The Subawards derive from Section 318 awards made by the CDC to NHHS and CDPH.

32.     Due to its receipt of funds that trace back to Section 318 grants to state agencies, Sagebrush is a Section 318 Subrecipient that qualifies as a covered entity in the 340B Program.

33.     To ensure effective implementation of the Subawards, Sagebrush developed a comprehensive sexual health care services program (the "STD Program"). A key component of the STD Program is care collaboration with medical specialists (the "Providers"), including infectious disease and rheumatology providers, many of whom treat patients who are immunocompromised or otherwise may be at increased risk of contracting STDs (the "Patients").

34.     The STD Program care collaboration model integrates STD education, screening, testing, and treatment with the medical services in which the Providers specialize. With resources funded by the Subawards, the Providers coordinate with Sagebrush to conduct programmatic functions and STD-related services within the scope of the Subawards ("Subaward Services") for Patients at the Providers' respective outpatient clinics (the "Sites").

35.     At Nevada Sites, the Subaward Services include sexual health screening and distribution of STD education materials and condoms.

36.     At Connecticut Sites, the Subaward Services include sexual health screening and administration of human immunodeficiency virus ("HIV") and hepatitis C tests.

37.     The care that Patients receive at the Sites includes the use or prescribing of outpatient drugs for a variety of health conditions.

**C.    Sagebrush's Participation in the 340B Program**

38.    After receiving the initial qualifying Subawards, Sagebrush registered multiple Sites as Sagebrush's "subdivisions." These Sites included nineteen Sites in Nevada that were each listed on the NHHS Notice of Subaward as being approved by NHHS for use of Subaward funds. They also included Sites in Connecticut where Providers administered CDPH-purchased HIV and hepatitis C tests.

39.    OPA reviewed each Site and determined that all met the eligibility requirements for participation in the 340B Program, as evidenced by each Site's receipt of a 340B identification number. After OPA approved the Sites, Sagebrush purchased 340B drugs that Providers used or prescribed to Patients at the Sites.

40.    From time to time, Sagebrush removed Sites from the 340B Program via OPAIS (at its own discretion) when Subaward Services ceased based on operational necessities or efficiencies.

41.    Sagebrush's ability to operate the STD Program is contingent on the availability of financial resources derived from Sagebrush's participation in the 340B Program. The drug discount savings that Sagebrush realizes on purchases of drugs that Providers use or prescribe to Patients at the Sites fund many of the STD Program's activities and other community benefit programs, including STD screening and treatment services that are not directly funded by the Subawards.

**D.    The Instant Litigation**

42.    On February 2, 2024, HRSA notified Sagebrush that the agency had initiated a programmatic review of fifty-three Sagebrush Sites for "compliance with 340B Program requirements with a focus on the sites' receipt of grant funding from the Centers for Disease Control and Prevention ("CDC"), and determinations of patient eligibility." HRSA requested responses to

eleven questions and document requests by Saturday, March 2, 2024. The deadline was subsequently extended to Monday, March 4, 2024.

43.    On March 4, 2024, Jami Dybik, Sagebrush's then-340B Program Authorizing Official, responded to HRSA's requests and provided 8,135 pages of responsive documents.

44.    On July 3, 2024, HRSA requested responses to eight additional questions and requested additional documents. Sagebrush provided answers and documents on August 2, 2024.

45.    On September 19, 2024, HRSA informed Sagebrush that, due to the expiration of the CDPH Subaward, three Sites in Connecticut were no longer "eligible to participate." HRSA based this decision on the expiration of the CDPH Subaward (supported via CDC grant number NU62PS924521) on July 31, 2024, and stated that it would "terminate these sites from the 340B Program . . . if Sagebrush is unable to demonstrate its current eligibility, including the submission of documentation to show compliance."

46.    On September 25, 2024, Sagebrush provided to HRSA communications from CDPH that showed the three Sites at issue remained eligible to participate in the 340B Program due to their receipt of a new Subaward (supported via CDC grant number NU62PS924812).

47.    These communications included a September 3, 2024, email from Lynn Sosa, M.D., Director of Infectious Disease and State Epidemiologist at CDPH, to Ms. Dybik. In that email, Dr. Sosa stated that CDPH was "happy to provide rapid HIV and HCV test kits" to Sagebrush and asked that Sagebrush provide data about the tests that it administered at its Sites in Connecticut "so we can demonstrate the impact of this testing for the CDC grant that supports the purchase of these test kits."

48.    On December 20, 2024, HRSA determined that fifty-five Sagebrush Sites, currently or previously registered in OPAIS, "have not been eligible to participate in the 340B Program as

STD covered entities under Section 340B(a)(4)(K) of the PHSA." HRSA explained that the Sites "failed to comply with this statutory eligibility requirement and failed to provide documentation to demonstrate receipt of Section 318 funding or support."

49.    HRSA provided no information or justification for how the Sites, each of which HRSA had previously approved, were now suddenly ineligible. Since its entry into the 340B Program, no Site had experienced substantial changes in funding sources, its patient population, or any other aspect of operation relevant to its 340B Program eligibility.

50.    Based on this determination, HRSA demanded that Sagebrush terminate twenty actively registered Sites in OPAIS by December 27, 2024. These sites included nineteen Sites in Nevada that the NHHS Subaward, as memorialized in a Notice of Subaward executed by NHHS and Sagebrush, identified as locations where the "use of grant funds" may occur. HRSA forewarned that it would unilaterally terminate the Sites by December 30, 2024, should Sagebrush fail to comply with the termination demand.

51.    HRSA further demanded that Sagebrush "provide a statement that Sagebrush has determined the full scope of non-compliance and worked with affected manufacturers regarding repayment." Only after Sagebrush "is able to demonstrate that it determined the full scope of non-compliance, repaid affected manufacturers, can demonstrate that it meets the covered entity eligibility requirements set forth in Section 340B(a)(4) of the PHSA, and meets all other 340B Program requirements" would HRSA allow Sagebrush to re-register the Sites.

52.    Sagebrush responded on the same day, providing documentation regarding the Subawards and their active status. Sagebrush further requested that HRSA afford an additional thirty days to demonstrate any other the eligibility criteria that were in question.

53.    Separately, Sagebrush's legal counsel emailed HRSA on December 20, 2024, to request that HRSA extend its deadline for terminating the Sites to January 31, 2025.

54.    That same day HRSA responded to Sagebrush, stating that it would "pause the date that we requested Sagebrush terminate its sites in our letter dated Dec. 20, 2024, until we have had a chance to review this information."

55.    On January 9, 2025, Sagebrush's legal counsel sent HRSA a letter expressing concern that HRSA's findings, as stated in its December 20, 2024, letter, were "not in compliance with HRSA's own policies and procedures as stated in its Program Integrity Materials (the "Policy")." Thus, it was unclear whether HRSA's letter "trigger[ed] the dispute resolution process as provided in the Policy," including the potential opportunity to submit a corrective action plan for HRSA's approval.

56.    On January 13, 2025, HRSA notified Sagebrush that the additional materials failed to show the Sites' receipt of Section 318 funding. HRSA claimed that it "confirmed with Connecticut Department of Public Health and Nevada Department of Health and Human Services that these sites do not receive 318 funding."

57.    HRSA failed to address with any particularity the substantial documentation that Sagebrush produced demonstrating that the affected Sites, in fact, received such funding. This documentation included communications between those agencies and Sagebrush, as well as the NHHS Notice of Subaward, which explicitly authorized the "use of grant funds" at nineteen Nevada Sites.

58.    HRSA further determined that "there are a number of other deficiencies in much of the documentation, such as, not being specific to the sites being terminated [by Sagebrush] and not being specific to the time periods covered."

59.    However, HRSA did not provide further information regarding these "deficiencies," nor did it provide Sagebrush with information regarding how to resolve the situation.

60.    On the same day, HRSA also responded to Sagebrush's legal counsel's January 9, 2025 letter. In its response, HRSA stated that its review of Sagebrush "was not part of a HRSA conducted audit, but rather is part of ongoing program integrity initiatives and aligns with HRSA's function to oversee and ensure the integrity of the 340B Program."

61.    Despite these exchanges, HRSA terminated the twenty Sites on January 14, 2025. Their termination is evidenced by the inclusion of a January 14, 2025, termination date in their respective OPAIS profiles.

62.    On February 21, 2025, Sagebrush requested reinstatement of the Sites, providing an additional twelve documents that countered HRSA's erroneous claims that eighteen of the twenty Sites were not receiving funding from NHHS. This documentation included copies of reimbursement checks from NHHS, receipts of items that Sagebrush purchased with NHHS Subaward monies, and an amendment to the then-current Notice of Subaward showing that the Subaward term continued through February 28, 2025. Sagebrush requested a response to its letter by March 7, 2025.

63.    On March 21, 2025, HRSA responded to this request by not only declining to reinstate the Sites, but also by declaring its intent to remove the only two Sagebrush Sites still participating in the 340B Program.

64.    HRSA claimed that the last remaining Site in Connecticut, Site No. STD06489, had not received Section 318 funding or support from CDPH since August 1, 2024. While HRSA appeared to acknowledge that this Site did received funding from CDPH prior to August 1, 2024, and that CDPH was receiving funding from the CDC via an eligible grant valid until December 31,

2029 (i.e., NU62PS924812), HRSA determined that the actual HIV test kits and controls that Sagebrush received from CDPH since August 1, 2024, were "purchased with state funds, not section 318 funding." Thus, HRSA concluded that this Site was ineligible to participate in the 340B Program as of August 1, 2024. HRSA did not acknowledge the September 3, 2024, email from CDPH that Sagebrush previously produced with its September 25, 2024, letter to HRSA, in which Dr. Sosa of CDPH referred to the "CDC grant that supports the purchase of . . . test kits" that CDPH provided to Sagebrush after August 1, 2024.

65.    In the same communication, HRSA informed Sagebrush that the last remaining Site in Nevada, Site No. STD891132, must also be removed from the 340B Program due to its ineligibility. According to HRSA, this Site "did not receive section 318 funding from NHHS as of March 1, 2025." HRSA noted that the Section 318 grant from the CDC to NHHS that supported Sagebrush's most recent Subaward (i.e., NH25PS005179) expired on February 28, 2025, and that NHHS had not yet received a Notice of Award from the CDC for a new Section 318 grant beginning March 1, 2025 (a delay that is far from unusual in the world of federal grant funding). HRSA appeared to concede that the NHHS Subaward conferred Site No. STD891132 with eligibility to participate in the 340B Program while the Subaward term, as documented in the Notice of Subaward, was active. However, HRSA offered no explanation for why the Subaward was insufficient to confer eligibility on the other eighteen Sites in Nevada that HRSA terminated on January 14, 2025, notwithstanding their inclusion in the then-current Notice of Subaward.

66.    HRSA instructed Sagebrush to terminate the two remaining Sites by March 28, 2025, or HRSA would terminate them on March 31, 2025. As in its December 20, 2024, letter, HRSA further directed Sagebrush to "determine the full scope of non-compliance" and "repay affected manufacturers accordingly."

67.    On March 25, 2025, Sagebrush's legal counsel sent HRSA a letter stating that Sagebrush had not received a satisfactory response from HRSA explaining the agency's rationale for finding that the terminated Sites had not received Section 318 funds, despite considerable evidence to the contrary produced by Sagebrush. Counsel also communicated that Sagebrush was deeply concerned by HRSA's decision to terminate Site Nos. STD06489 and STD891132. As counsel explained, HRSA's determination that these Sites ceased to be eligible covered entities was based on "on erroneous and outdated information . . . ."

68.    With respect to Site No. STD06489, counsel furnished to HRSA a copy of the September 3, 2024, email from CDPH that Sagebrush previously shared with its September 25, 2024, letter to HRSA. Counsel noted that this email, in which CDPH communicated that it was "happy to provide rapid HIV and HCV test kits" to Sagebrush that were purchased with a "CDC grant," contradicted HRSA's allegation that the HIV test kits that Sagebrush received from CDPH since August 1, 2024 "were purchased with state funds, not section 318 funding."

69.    With respect to Site No. STD891132, counsel furnished a March 21, 2025, memorandum from Samm Warfel, the STD and Hepatitis Program Manager at NHHS. The memorandum confirms NHHS's "continued partnership with Sagebrush," stating that "[t]his collaboration will be maintained through a subaward agreement, which will have a retroactive start date of March 1, 2025." The retroactive start date was necessary because NHHS had not received the operative Notice of Award from the CDC until March 14, 2025 "due to delays arising from the Congressional Continuing Resolution under which the CDC is currently operating as well as a renegotiation process for the subaward amounts." Further, NHHS expected to have an executed subaward agreement with Sagebrush, in a form similar to the prior Notice of Subaward that

Sagebrush received, by March 28, 2025. NHHS cautioned that failure to implement a retroactive subaward agreement with Sagebrush "would result in a gap in STD services for the community."

70.    Ms. Warfel's memorandum is consistent with publicly available information on HHS's Tracking Accountability in Government Grants System website. That database shows that, as of March 13, 2025, $420,113 have been set aside or committed to NHHS in support of the CDC's "Strengthening STD Prevention and Control for Health Departments (STD PCHD)" initiative (via CDC grant number NH25PS005179)—the same grant program, authorized by Section 318, under which Sagebrush received Subaward funds from NHHS in prior years.

71.    These materials undermine the findings on which HRSA concluded that Site No. STD891132 "did not receive section 318 funding from NHHS as of March 1, 2025."

72.    On March 27, 2025, HRSA responded to Sagebrush's March 25, 2025, letter via email. HRSA claimed to have received information on February 11, 2025, from CDPH indicating that the funds used to purchase the HIV testing kits for Site No. STD06489 were purchased with state funds rather than section 318 funding. HRSA failed to provide any proof or documentation of this report or any other support for CDPH's apparent reversal of position.

73.    In the same email, HRSA continued to claim that Site No. STD891132 would be ineligible for participation in the 340B Program until a new Notice of Award was provided. HRSA failed to address the fact that the expected Notice of Award would be retroactive to March 1, 2025, and would therefore prevent any periods of ineligibility.

74.    HRSA's actions to remove every Sagebrush Site from the 340B Program have had immediate, severe, and ongoing adverse consequences for Sagebrush, including, without limitation, disruption to Patients' access to Subaward Services and other health care services at the Sites.

75.     To mitigate the harms that HRSA's actions have caused, Sagebrush filed a Complaint and a Motion for Temporary Restraining Order and Preliminary Injunction against Defendants on January 16, 2025, arguing that HRSA's failure to utilize the proper statutory audit procedure to review the eligibility of the sites referenced in its December 20, 2024, letter was arbitrary and capricious, and a violation of Sagebrush's due process rights. This Court denied Sagebrush's motion for a temporary restraining order, and Sagebrush voluntarily dismissed the underlying action on February 21, 2025.

76.     Post-dismissal developments, including HRSA's declaration that it will terminate Sagebrush's two remaining Sites, have forced Sagebrush to reinitiate this litigation.

77.     Without the benefit of the 340B Program, Sagebrush will have no choice but to cease the STD Program in its entirety, along with the Subaward Services to Patients. This will impair Patients' access to health care services, including pre- and post-exposure prophylaxis treatment that Sagebrush provides to Patients to prevent HIV infection, and Sagebrush's ability to fulfill its Subaward obligations.

## COUNT 1
### Violation of the Administrative Procedure Act
### (Declaratory and Injunctive Relief – HRSA's Decision to Remove the Sites from the 340B Program Exceeds the Agency's Statutory Authority.)

78.     Plaintiff repeats and realleges the factual allegations of the preceding paragraphs as if fully set forth herein.

79.     Defendants' decision to remove Sagebrush Sites from the 340B Program is a final agency action made reviewable by 5 U.S.C. § 706(2).

80.     The APA requires courts to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations," *Id.* § 706(2)(C).

81.    An administrative agency "may not act in excess of its statutory authority." *Buitrago v. D.C. Dep't of Emp. Servs.*, 320 A.3d 332, 338 (D.C. 2024). "Federal agencies . . . are creatures of statute and as such 'literally ha[ve] no power to act' except to the extent Congress authorized them." *Marin Audubon Soc'y v. FAA*, 121 F.4th 902, 911–12 (D.C. Cir. 2024) *quoting FEC v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022).

82.    Courts must also set aside agency action that is ultra vires and beyond that which the agency is authorized to perform by the enabling statute. *See City of Arlington v. FCC*, 569 U.S. 290, 297–98 (2013); *Nat'l Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 970 (D.C. Cir. 2022).

83.    Sagebrush is irreparably damaged by Defendants' actions.

84.    The Sites that HRSA has removed or declared that it will remove were all duly registered and approved as covered entities in the 340B Program when HRSA took such action against them.

85.    HRSA's authority to remove a covered entity from the 340B Program is contingent upon a finding that the covered entity committed a violation of the diversion prohibition that is "systematic and egregious as well as knowing and intentional . . . ." 42 U.S.C. § 256b(d)(2)(B)(v)(II).

86.    As HRSA admitted in its January 13, 2025, response to Sagebrush's legal counsel, Defendants did not conduct an audit of the twenty Sites that HRSA removed on January 14, 2025. Further, Defendants' basis for removing those Sites was not a finding of a violation of the diversion prohibition. Rather, Defendants removed the Sites because Sagebrush allegedly failed to "demonstrate receipt of Section 318 funding or support."

87.    Similarly, Defendants did not conduct an audit before deciding to remove Site Nos. STD06489 and STD891132 effective March 31, 2025. Defendants' basis for removing these Sites

was that Sagebrush allegedly failed to "demonstrate receipt of Section 318 funding or support," not a finding of a violation of the diversion prohibition.

88.    In these respects, Defendants exceeded the scope of their authority under 42 U.S.C. §§ 256b(a)(5) and 256b(d)(2)(B)(v) and are in violation of 5 U.S.C. § 706(2)(C).

89.    Sagebrush has suffered and will continue to suffer harm, including, without limitation, repayment liability in the millions of dollars, because of Defendants' violations of 5 U.S.C. § 706(2)(C).

90.    Sagebrush is entitled to declaratory and injunctive relief to remedy Defendants' unlawful conduct, as well as all other relief as set forth in its Prayer for Relief. *Id.* § 705.

**COUNT 2**
**Violation of the Administrative Procedure Act**
**(Declaratory and Injunctive Relief – HRSA's Decision to Order Sagebrush to Repay Discounts Received from Manufacturers of 340B Drugs Exceeds the Agency's Statutory Authority.)**

91.    Plaintiff repeats and realleges the factual allegations of the preceding paragraphs as if fully set forth herein.

92.    Defendants' decision to require Sagebrush to repay manufacturers all discounts that it received on purchases of 340B drugs during the periods when the Sites were allegedly ineligible to participate in the 340B Program is a final agency action made reviewable by 5 U.S.C. § 706(2).

93.    The APA requires courts to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations," *Id.* § 706(2)(C).

94.    An administrative agency "may not act in excess of its statutory authority." *Buitrago*, 320 A.3d at 338. "Federal agencies . . . are creatures of statute and as such 'literally ha[ve] no power to act' except to the extent Congress authorized them." *Marin Audubon Soc'y*, 21 F.4th at 911–12 (D.C. Cir. 2024) *quoting FEC v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022).

95.    Courts must also set aside agency action that is ultra vires and beyond that which the agency is authorized by the enabling statute. *See City of Arlington*, 569 U.S. at 297–98; *Nat'l Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 970 (D.C. Cir. 2022).

96.    Sagebrush is irreparably damaged by Defendants' actions.

97.    The Sites for which HRSA has required Sagebrush to repay manufacturers were all duly registered and approved as covered entities in the 340B Program when HRSA took such action against them.

98.    HRSA's authority to demand that a covered entity repay a manufacturer the discounts the covered entity received on 340B drugs is contingent upon a finding that the covered entity committed a violation of the diversion or duplicate discount prohibition. *See* 42 U.S.C. § 256b(a)(5)(D). A prerequisite to any such finding is that HRSA conducts an "audit" and provides "notice and hearing . . . ." *Id.*

99.    As HRSA admitted in its January 13, 2025, response to Sagebrush's legal counsel, Defendants did not conduct an audit of any Sites. Further, Defendants' basis for demanding that Sagebrush repay applicable manufacturers was not a finding that Sagebrush violated the diversion or duplicate discount prohibition. Rather, Defendants took such action because Sagebrush allegedly failed to "demonstrate receipt of Section 318 funding or support."

100.    Similarly, Defendants did not conduct an audit before demanding that Sagebrush repay applicable manufacturers for the discounts that Site Nos. STD06489 and STD891132 received on 340B drugs during the ineligibility period that Defendants alleged. Defendants' basis for demanding that Sagebrush repay applicable manufacturers was that Sagebrush allegedly failed to "demonstrate receipt of Section 318 funding or support," not a finding of a violation of the diversion or duplicate discount prohibition.

101.    In these respects, Defendants exceeded the scope of their authority under 42 U.S.C. § 256b(a)(5) and thus are in violation of 5 U.S.C. § 706(2)(C).

102.    Sagebrush has suffered and will continue to suffer harm, including, without limitation, repayment liability in the millions of dollars, because of Defendants' violations of 5 U.S.C. § 706(2)(C).

103.    Sagebrush is entitled to declaratory and injunctive relief to remedy Defendants' unlawful conduct, as well as all other relief as set forth in its Prayer for Relief. 5 U.S.C. § 705.

**COUNT 3**
**Violation of the Administrative Procedure Act**
**(Declaratory and Injunctive Relief – HRSA's Decisions to Remove Sagebrush Sites from the 340B Program and to Order Sagebrush to Repay Discounts Received from Manufacturers of 340B Drugs Are Arbitrary, Capricious, and an Abuse of Discretion.)**

104.    Plaintiff repeats and realleges the factual allegations of the preceding paragraphs as if fully set forth herein.

105.    The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

106.    "[A]n agency acts arbitrarily when it departs from its precedent without giving any good reason." *N. Calif. Power Agency v. FERC*, 37 F.3d 1517, 1522 (D.C. Cir. 1994). "Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy . . . could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).'" *INS v. Yueh–Shaio Yang*, 519 U.S. 26, 32 (1996).

107.    Defendants' decisions to remove Sagebrush Sites from the 340B Program and to require Sagebrush to repay discounts that it received on purchases of 340B drugs are final agency actions made reviewable by 5 U.S.C. § 706(2).

108.    HRSA's decisions were the direct result of HRSA's incorrect determination that the Sites "failed to provide documentation to demonstrate receipt of section 318 funding or support." This rendered Sites that HRSA previously approved as eligible covered entities suddenly ineligible to participate in the 340B Program.

109.    The funding sources, and accompanying documentation that HRSA determined to be insufficient to prove covered entity eligibility, were the same funding sources in place when HRSA initially approved the Sites as eligible to participate in the 340B Program.

110.    Some of the Sites had recertified their eligibility as a Section 318 Subrecipient, without challenge from HRSA.

111.    Defendants failed to reconcile their actions with their initial approval of the Sites as eligible covered entities.

112.    Defendants failed to engage in reasoned decision-making or to provide an adequate and reasonable explanation for their actions. For example, Defendants failed to:

    a.    Explain with sufficient particularity the "number of . . . deficiencies," as alleged in HRSA's January 13, 2025 letter, in the thousands of pages of responsive documents that Sagebrush produced per HRSA's requests.

    b.    Acknowledge the September 3, 2024 email from CDPH, which contradicts HRSA's assertion in its March 23, 2025 letter that the HIV test kits that Sagebrush received from CDPH since August 1, 2024 "were purchased with state funds, not section 318 funding."

    c.     Account for new evidence that showed that NHHS received a new Notice of Award from the CDC for the period beginning March 1, 2025, pursuant to which Sagebrush will receive a new Subaward retroactive to March 1, 2025.

    d.     Reconcile their express or implied acknowledgment that Site No. STD891132 was an eligible covered entity, at least prior to March 1, 2025, but that the other eighteen Sites in Nevada that HRSA removed on January 14, 2025, were not, despite NHHS explicitly authorizing the "use of grant funds" at those Sites in the operative Notice of Subaward.

113.    In these respects, Defendants' actions are arbitrary, capricious, and an abuse of discretion and thus in violation of 5 U.S.C. § 706(2)(A).

114.    Sagebrush has suffered and will continue to suffer harm, including, without limitation, repayment liability in the millions of dollars, because of Defendants' violations of 5 U.S.C. § 706(2)(A).

115.    Sagebrush is entitled to declaratory and injunctive relief to remedy Defendants' unlawful conduct, as well as all other relief as set forth in its Prayer for Relief. *See* 5 U.S.C. § 705.

**COUNT 4**
**Violation of the Administrative Procedure Act**
**(Declaratory and Injunctive Relief – HRSA's Decisions to Remove Sagebrush Site Nos. STD06489 and STD891132 from the 340B Program and to Order Sagebrush to Repay Discounts Received from Manufacturers of 340B Drugs Are Arbitrary, Capricious, and an Abuse of Discretion.)**

116.    Plaintiff repeats and realleges the factual allegations of the preceding paragraphs as if fully set forth herein.

117.    The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

118.    "The APA's arbitrary and capricious standard requires agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency's decision is arbitrary and capricious when the available record does not "include a rational connection between the facts found and the choice made and indicates [the agency] entirely failed to consider an important aspect of the problem" *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378, at *11 (D.D.C. Mar. 10, 2025).

119.    Defendants' decisions to remove Sagebrush Site Nos. STD06489 and STD891132 from the 340B Program and to require Sagebrush to repay discounts that it received on purchases of 340B drugs are final agency actions made reviewable by 5 U.S.C. § 706(2).

120.    HRSA justified its decision to terminate Site Nos. STD06489 and STD891132 with reasoning that is directly contradicted by the available evidence.

121.    In these respects, Defendants' actions are arbitrary, capricious, and an abuse of discretion and thus in violation of 5 U.S.C. § 706(2)(A).

122.    Sagebrush has suffered and will continue to suffer harm, including, without limitation, repayment liability in the millions of dollars, because of Defendants' violations of 5 U.S.C. § 706(2)(A).

123.    Sagebrush is entitled to declaratory and injunctive relief to remedy Defendants' unlawful conduct, as well as all other relief as set forth in its Prayer for Relief. *See* 5 U.S.C. § 705.

**WHEREFORE,** Sagebrush prays that this Court enjoin Defendants and remand this matter to HRSA for further consideration. Additionally, Sagebrush requests the Court to:

    a.    Declare that:

       - Defendants' termination or imminent termination of Sagebrush's Sites from the 340B Program and its determination that the Sites referenced in HRSA's

December 20, 2024, and March 21, 2025, letters were ineligible to participate in the 340B Program are in excess of Defendants' statutory jurisdiction and authority, and in violation of 5 U.S.C. § 706(2)(C); and

    - Defendants' requirement that Sagebrush repay savings realized from the 340B Program is in excess of Defendants' statutory jurisdiction and authority, and in violation of 5 U.S.C. § 706(2)(C);

b.    Order HRSA to remove the January 14, 2025, termination date for the twenty Sites as stated on OPAIS, and to remove HRSA's December 20, 2024, and January 13, 2025, letters to Sagebrush that are posted on HRSA's Program Integrity website;

c.    Award Sagebrush its reasonable attorney's fees and costs, as permitted by law; and

d.    Grant such other further relief as this Court deems just, equitable, and proper.

Dated: March 27, 2025

**ARENTFOX SCHIFF LLP**

By: /s/ James H. Hulme
    James H. Hulme (Bar No. 323014)
    Douglas A. Grimm (Bar No. 495805)
    ArentFox Schiff LLP
    1717 K Street, NW
    Washington, DC 20006-5344
    Ph: 202.857.6000
    Fax: 202.857.6395
    james.hulme@afslaw.com
    douglas.grimm@afslaw.com
    *Counsel for Plaintiff Sagebrush Health Services*