IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES, a Nevada nonprofit foundation<br>8379 West Sunset Road, Suite 210<br>Las Vegas, NV 89113<br><br>      *Plaintiff,*<br><br>  v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity, and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201<br><br>and<br><br>Thomas J. Engels, in his official capacity, and HEALTH RESOURCES AND SERVICES ADMINISTRATION,<br>5600 Fishers Lane<br>Rockville, MD 20857<br><br>      *Defendants.* | Civil Action No. _____ |

**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff Sagebrush Health Services ("Sagebrush"), through counsel, hereby moves for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rules 7 and 65.1. In support of this Motion, Sagebrush has concurrently filed its Verified Complaint for Injunctive and Other Relief, as well as its Memorandum of Points and Authorities in Support of its Motion for a Temporary Restraining Order and Declaration of Guru Charan in Support of Temporary Restraining Order.

As described in the Verified Complaint and Memorandum, Defendants exceeded their statutory authority in removing Sagebrush from the federal 340B Drug Discount Program (the "340B Program"), violating 5 U.S.C. § 706(2)(C). Defendants' decision to do so was arbitrary, capricious, and not in accordance with the law, violating 5 U.S.C. § 706(A). In so doing, Defendants have caused substantial harm to Plaintiff by effectively depriving Sagebrush of its primary source of funding, ensuring Plaintiff's closure prior to the conclusion of this litigation.

In accordance with Local Civil Rule 65.1(c), Sagebrush has filed a Verified Complaint contemporaneously with this request for injunctive relief. Verified factual allegations in a verified complaint are the legal equivalent of an affidavit. *See* Local Civil Rule 5.1(f); *see also Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992) ("[T]he complaint was verified and [thus] constituted an affidavit."); *Mallick v. Int'l Broth. of Elec. Workers*, 814 F.2d 674, 680 (D.C. Cir. 1987).

The evidence establishes that Sagebrush is likely to succeed on the merits of its claims, that Sagebrush will suffer irreparable harm absent judicial intervention, that the balancing of hardships weighs in Sagebrush's favor, and that the public interest favors entry of a temporary restraining order. Sagebrush therefore seeks a temporary restraining order to preserve the status quo ante pending a final resolution on the merits. A proposed order is attached hereto.

If the court is unable to render a decision on this temporary restraining order on or prior to March 31, 2025, Plaintiff requests that the court issue an administrative stay until such time as the court is able to conduct such a hearing.

Pursuant to LCvR 7(f), Sagebrush respectfully requests an oral hearing on this Motion at the Court's earliest convenience. Pursuant to LCvR 65.1(a), the undersigned counsel certifies that actual notice of the time of making this Motion, and copies of all pleadings and papers filed in the action to date or to be presented to the Court at the hearing, have been sent to the Defendants.

Dated: March 27, 2025                    **ARENTFOX SCHIFF LLP**

By: /s/ James H. Hulme
    James H. Hulme (Bar No. 323014)
    Douglas A. Grimm (Bar No. 495805)
    ArentFox Schiff LLP
    1717 K Street, NW
    Washington, DC 20006-5344
    Ph: 202.857.6000
    Fax: 202.857.6395
    james.hulme@afslaw.com
    douglas.grimm@afslaw.com
    *Counsel for Plaintiff Sagebrush Health Services*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES, a Nevada nonprofit foundation<br>8379 West Sunset Road, Suite 210<br>Las Vegas, NV 89113<br><br>    *Plaintiff,*<br><br>  v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity, and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201<br><br>and<br><br>Thomas J. Engels, in his official capacity, and HEALTH RESOURCES AND SERVICES ADMINISTRATION,<br>5600 Fishers Lane<br>Rockville, MD 20857<br><br>    *Defendants.* | Civil Action No. _____ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

    Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Civil Rules 7 and 65.1, Plaintiff Sagebrush Health Services ("Sagebrush" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in Support of its Motion for a Temporary Restraining Order.

1

**PRELIMINARY STATEMENT**

This case requires the Court's urgent attention to stave off irreparable harm to Sagebrush, caused by Defendant Health Resources and Services Administration's ("HRSA") wrongful conduct. HRSA has exceeded its statutory authority in ordering the removal of Sagebrush's only two remaining clinic sites—Site No. STD06489, located in Connecticut, and Site No. STD891132, located in Nevada (each a "Site" and, together, the "Sites")—from the 340B Drug Discount Program. Furthermore, HRSA's decision was made in the face of evidence definitively contradicting its stated reasoning and is therefore arbitrary, capricious, and not in compliance with the law. Sagebrush, a non-profit entity that provides substantial benefits to the communities it serves, relies almost entirely on savings realized from its participation in the 340B Program and will be forced to cease operations absent preliminary relief in this matter.

To prevent HRSA's unlawful actions from causing irreparable harm to Sagebrush, the Court should enter preliminary relief to restore the status quo. HRSA's power to remove entities from the 340B Program is statutorily limited to specific circumstances not present here. *See* 42 U.S.C. § 256b. HRSA has exceeded its statutory authority by threatening to remove the Sites from the 340B Program. As a result, HRSA's actions violate the Administrative Procedures Act ("APA").

**BACKGROUND**

**A. The 340B Program**

The 340B Program is a federal drug discount program that allows certain types of health care providers and organizations ("covered entities"), to purchase outpatient drugs for provision to their patients at substantially reduced prices. *See* 42 U.S.C. § 256b. Congress created this program to increase access to medical care and stretch federal resources as far as possible. *See* H.R. Rep. 102-384(II) at 12 (1992).

2

Section 340B of the Public Health Service Act ("Section 340B" and "PHSA," respectively) authorizes the Department of Health and Human Services ("HHS") (and, by extension, HRSA) to administer the 340B Program. *See* 42 U.S.C. § 256b. HHS determines an entity's eligibility as a covered entity, oversees a certification and recertification process for certain categories of covered entities, conducts audits to ensure compliance with statutory requirements, and terminates entities from the 340B Program under statutorily permissible circumstances.

**1. Participation in the 340B Program**

To effectuate the purpose of the 340B Program (expanding access to medical resources), Congress expressly provided for the participation of a wide range of entities. Eligible participants authorized under the statute are not limited to traditional healthcare institutions and instead include community-oriented entities, like urban Indian organizations and rural referral centers. 42 U.S.C. § 256b(a)(4).

An "entity receiving funds . . . through a State or unit of local government" under Section 318 of the PHSA ("Section 318") "relating to treatment of sexually transmitted diseases" (a "Section 318 Subrecipient") is a covered entity under the statute. *Id*. § 256b(a)(4)(K). Section 318 Subrecipients are eligible for participation in the 340B Program only after they undergo a certification process that HRSA oversees. *See id*. § 256b(a)(7)(A). Thereafter, they must annually recertify their eligibility with HRSA to remain in the 340B Program. *See id*. § 256b(a)(7)(E).

Certification requires registration via HRSA's Office of Pharmacy Affairs Information System ("OPAIS"), review of all necessary information by HRSA's Office of Pharmacy Affairs ("OPA"), and confirmation of eligibility by OPA via conferral with the appropriate granting

3

agency.[1] The certification process can be extensive, involving review and confirmation of each aspect of an entity's eligibility for the 340B Program. HRSA may not conduct recertification of a covered entity more than once a year. 42 U.S.C. § 256b(a)(7)(E).

In addition to meeting the above requirements, Section 318 Subrecipients (and all covered entities) must comply with two statutory prohibitions: (1) The "diversion" prohibition, which prevents a covered entity from reselling or transferring a drug purchased through the 340B Program to anyone other than a patient of the covered entity; and (2) the "duplicate discount" prohibition, which prevents a covered entity from billing fee-for-service Medicaid for a 340B drug if the state Medicaid agency will request a rebate from the manufacturer. *See* 42 U.S.C. § 256b(a)(5)(A)-(B).

**2. HRSA's Power to Require Removal from the 340B Program**

Section 340B does not authorize HRSA's removal of a covered entity from the 340B Program absent a violation of the diversion prohibition that is "systemic and egregious as well as knowing and intentional." *Id*. § 256b(d)(2)(B)(v)(II).

Section 340B does not authorize HRSA's removal of a covered entity due to a violation of the duplicate discount prohibition or, in fact, for any reason other than the "systemic and egregious as well as knowing and intentional" violation of the diversion prohibition mentioned above. *See generally id.* § 256b.

**B. Sagebrush**

Sagebrush is a Nevada nonprofit foundation that is affiliated with specialty care clinics in Nevada, Connecticut, and South Carolina. (Charan Decl. ⁋ 3). It is the recipient of two subawards focused on the prevention, screening, detection, and treatment of sexually transmitted diseases

---

[1] *See* FAQ ID: 1213 at www.340bpvp.com/search#tab=faq&cfp_faq_category_hierarchy=Eligibility%2FRegistration&firstResult=20

("STDs"). (Charan Decl. ¶ 4). One was issued by the Nevada Department of Health and Human Services ("NHHS") (the "NHHS Subaward"); the other by the Connecticut Department of Public Health ("CDPH") (the "CDPH Subaward," together with the NHHS Subaward, the "Subawards"). (Charan Decl. ¶ 4). The Subawards derive from Section 318 awards made by the Centers for Disease Control and Prevention ("CDC") to NHHS and CDPH. (Charan Decl. ¶ 4). Due to its receipt of funds that trace back to Section 318 grants to state agencies, Sagebrush is a Section 318 Subrecipient that qualifies as a covered entity in the 340B Program. *See* 42 U.S.C. § 256b(a)(4)(K).

Using savings on drug purchases through the 340B Program, Sagebrush provides a comprehensive sexual health care services program (the "STD Program") to local communities. (Charan Decl. ¶ 3). A key component of Sagebrush's STD Program is care collaboration with medical specialists (the "Providers"), including oncology and rheumatology providers, many of whom treat patients who are immunocompromised or otherwise may be at increased risk of contracting STDs (the "Patients"). (Charan Decl. ¶ 3).

Sagebrush's STD Program care collaboration model integrates education, screening, testing, and treatment of STDs with the medical services in which the Providers specialize. (Charan Decl. ¶ 3). With resources funded by the Subawards, the Providers coordinate with Sagebrush to carry out programmatic functions and STD-related services within the scope of each subaward ("Subaward Services") for Patients at the Providers' respective outpatient clinics, including the Sites. (Charan Decl. ¶ 3).

**C. Sagebrush's Participation in the 340B Program**

Each Site was approved through HRSA's certification process and determined to be eligible for participation in the 340B Program. (Charan Decl. ¶ 5). The Sites are the only two Sagebrush sites

still participating in the 340B Program. (Charan Decl. ¶ 20). Both were recertified in June of 2024.[2] (Charan Decl. ¶ 20). The NHHS Subaward provides Site STD891132 with the Section 318 funds to be eligible as a covered entity in the 340B Program. The NHHS Subaward is memorialized in a Notice of Award, which specifically lists by address and 340B identification number Site No. STD891132 and eighteen other sites in Nevada. (Charan Decl. ¶ 23).

**D. This Litigation**

On February 2, 2024, HRSA notified Sagebrush that the agency had initiated a programmatic review of fifty-three sites for "compliance with 340B Program requirements with a focus on the sites' receipt of grant funding from the Centers for Disease Control and Prevention (CDC), and determinations of patient eligibility." (Charan Decl. ¶ 6, Ex. A).

Sagebrush cooperated with the investigation, providing more than 8,000 pages of responsive documents to HRSA, including proof of relevant Section 318 funding streams that Sagebrush had received when HRSA originally approved each site. (Charan Decl. ¶¶ 7, 9, 11, Exs. B, D, F).

Despite this cooperation, HRSA removed twenty actively registered Sagebrush sites on January 14, 2025, determining that the previously approved sites were not eligible to participate in the 340B Program. (Charan Decl. ¶¶ 18–19, Ex. M). HRSA also determined that dozens of other sites, which Sagebrush had previously removed itself (at its own discretion) when Subaward Services ceased based on operational necessities or efficiencies, were ineligible for some or all of the period in which they participated in the 340B Program. (Charan Decl. ¶ 18, Ex. M). HRSA failed to provide details as to why each site was ineligible, despite numerous requests by Sagebrush for this information. (Charan Decl. ¶¶ 9–18, Exs. B-M). After this mass removal of sites, only the two Sites remained in the 340B Program (Charan Decl. ¶ 20).

---

[2] *See* https://340bopais.hrsa.gov/cedetails/96823 and https://340bopais.hrsa.gov/cedetails/92162.

On March 21, 2025, HRSA informed Sagebrush that on March 31, 2025, it would be removing the Sites from the 340B Program due to their ineligibility. (Charan Decl. ¶ 22, Ex. O). In its letter to Sagebrush explaining its decision, HRSA stated that Site No. STD06489 would be removed because the HIV Test Kits delivered to the site after August 1, 2024, were actually purchased with state funds and not section 318 funding. (Charan Decl. ¶ 22, Ex. O). HRSA further stated that Site No. STD891132 would be removed because NHHS had not yet received a Notice of Award from the CDC for the period starting on March 1, 2025, and the prior grant expired as of February 28, 2025. (Charan Decl. ¶ 22, Ex. O).

On March 25, 2025, Sagebrush provided documentary evidence to HRSA contradicting HRSA's reasoning. Section 318 funding was, in fact, used to purchase the test kits for Site No. STD06489, as evidenced by the September 3, 2024, correspondence with Lynn Sosa – the Director of Infections Disease and State Epidemiologist at CDPH. (Charan Decl. ¶ 23, Ex. P). Site No. STD891132 also did not have a lapse in eligibility because the Notice of Award, once signed by NHHS, would be retroactive to March 1, 2025. (Charan Decl. ¶ 23, Ex. P). Sagebrush supported this position with a memorandum from Samm Warfel, the STD and Hepatitis Program Manager at NHHS. (Charan Decl. ¶ 23, Ex. P).

On March 27, 2025, HRSA sent an email to Sagebrush, claiming that CDPH reported to HRSA that the 50 HIV test kits CDPH provided to Sagebrush after August 1, 2024, were purchased with state funds and not CDC grant funds (Grant No. NU62PS92812). (Charan Decl. ¶ 24 Ex. Q). No documents or other evidence was provided to support this claim, which directly contradicted what Sagebrush had been advised in writing by CDPH. (Charan Decl. ¶ 23, Ex. P). HRSA also informed Sagebrush that Site No. STD891132 was considered by HRSA to be ineligible for the 340B Program until a new Notice of Award was received. (Charan Decl. ¶ 23, Ex. P). HRSA failed

7

to address the fact that the NHHS subaward to Site No. STD891132 will be retroactive to March 1, 2025—thereby eliminating any period of ineligibility. (Charan Decl. ¶ 23, Ex. P).

HRSA's unwarranted removal of the remaining two Sites from the 340B Program will have immediate and severe adverse consequences for Sagebrush, exacerbating the adverse consequences that Sagebrush has already suffered from HRSA's termination of the other twenty sites on January 14, 2025. (Charan Decl. ¶ 24). Without the benefit of the 340B Program, Sagebrush will have no choice but to close the STD Program in its entirety, along with the provision of Subaward Services to Patients. (Charan Decl. ¶ 24). This will impair Patients' access to health care services, including pre- and post-exposure prophylaxis treatment that Sagebrush provides to Patients to prevent human immunodeficiency virus infection, and Sagebrush's ability to fulfill its Subaward obligations. (Charan Decl. ¶ 24).

## LEGAL STANDARD

Courts award temporary restraining orders to preserve the object of a controversy in its then-existing condition. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). A party seeking preliminary relief must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *J.D. v. Azar*, 925 F.3d 1291, 1325 (D.C. Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

"The four factors have typically been evaluated on a sliding scale." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). Under this sliding scale framework, "i[f] the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291–92. Under this approach, when a movant makes a strong showing that it is likely to suffer irreparable harm in the absence of preliminary

relief, for example, then it must show only a "serious legal question" on the merits rather than a likelihood of success. *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011).

For the following reasons, Sagebrush has established that it is entitled to a temporary restraining order.

## ARGUMENT

**A. Sagebrush Is Likely to Succeed on Its APA Claims.**

The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. On judicial review, the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" 5 U.S.C. § 706(2)(C).

Sagebrush is likely to succeed on its APA claims because HRSA has stepped well beyond its statutory authority in taking imminent action to terminate the Sites.

**1. HRSA's Imminent Termination of the Sites Exceeds HRSA's Statutory Authority.**

HRSA's power to remove a covered entity from the 340B Program is limited to those instances where the covered entity committed a violation of the diversion prohibition that is "systematic and egregious as well as knowing and intentional . . . ." 42 U.S.C. § 256b(d)(2)(B)(v)(II). HRSA does not possess general rulemaking authority over the section 340B Program, nor does it have any power beyond that conveyed to it by Congress. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 459 (D.C. Cir. 2024); *see also Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 911–12 (D.C. Cir. 2024).

The APA was created expressly to "check . . . administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 371 (2024) (internal quotations omitted). In deciding

9

whether an agency has acted within its authority under a statute, courts must exercise their independent judgment to determine the best reading of the statute. *Id*.

HRSA's authority over the 340B Program is detailed in the PHSA, its authorizing statute. Congress set a high bar for removal from the 340B Program, authorizing HRSA to remove a covered entity only where a violation of the diversion prohibition was "systemic and egregious ***as well as*** knowing and intentional." 42 U.S.C. § 256b(d)(2)(B)(v)(II) (emphasis added). HRSA may not remove a covered entity for a violation of the diversion prohibition that does not meet these heightened criteria, a violation of the duplicate discount prohibition, or any other misconduct. *See generally id.* § 256b.

HRSA has never asserted that Sagebrush has violated the diversion prohibition to any extent, and certainly not in a way that was "systemic and egregious as well as knowing and intentional." In fact, HRSA's only stated reasoning for its decision to terminate the Sites consists of vague and general objections to the Sites' eligibility—a puzzling finding when each Site was separately certified (and recertified) through HRSA's own process to determine eligibility.

Furthermore, HRSA's attempts to remove the Sites undermine the intent of the safeguards in the statute. The provisions of the statute evidence Congress's intent to create a progressive disciplinary system, with removal—the harshest sanction—reserved for the worst and rarest cases. Specifically, Congress explicitly and intentionally reserved removal from the 340B Program for one very specific and egregious circumstance—the "systemic and egregious as well as knowing and intentional" violation of the diversion prohibition. 42 U.S.C. § 256b(d)(2)(B)(v)(II). Here, HRSA's first course of action was to remove the Sites from the 340B Program.

Because HRSA failed to make any finding of a violation of either the diversion or duplicate discount prohibition, HRSA has exceeded its statutory authority in ordering the removal of the Sites

10

from the 340B Program.

Accordingly, Sagebrush is likely to prevail on the merits of its APA claim that HRSA exceeded its statutory authority.

### 2. HRSA's Imminent Termination of the Sites is Arbitrary, Capricious, and Not in Accordance with the Law.

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.§ 706(2)(A). "The APA's arbitrary and capricious standard requires agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). When conducting judicial review of an administrative agency's decision, "the court 'must confirm that the agency has fulfilled its duty to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378, at *10 (D.D.C. Mar. 10, 2025) (quoting *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016)). An agency's decision is arbitrary and capricious when the available record does not "include a rational connection between the facts found and the choice made and indicates [the agency] entirely failed to consider an important aspect of the problem." *Id*. at *11.

HRSA's reasoning in terminating the Sites from the 340B Program is directly contradicted by the available evidence. To justify the termination of Site No. STD06489, HRSA relies on its incorrect finding that the HIV testing kits shipped to the Site after August 1, 2024, were "purchased with state funds, not section 318 funding." (Charan Decl. ¶ 22, Ex. O). This reasoning runs contrary to documentation demonstrating that those kits were purchased using a grant from the CDC, rather than state funds. (Charan Decl. ¶ 23, Ex. P). HRSA claims to have received more recent reports from the CDPH supporting its reasoning but HRSA has failed to provide any documentation or

11

other evidence to support this. (Charan Decl. ¶ 24, Ex. Q). Similarly, HRSA's reasoning for terminating Site No. STD891132 is rooted in its finding that the eligible grant expired prior to March 1, 2025, and its apparent refusal to acknowledge the retroactivity of the expected Notice of Award. (Charan Decl. ¶¶ 22, 24, Exs. O, Q). Sagebrush has provided documentation proving that the grant's notice of award is expected to apply retroactively to March 1, 2025, eliminating any period of ineligibility. (Charan Decl. ¶ 23, Ex. P).[3]

Because the reasoning provided by HRSA to justify the decision to remove the Sites from the 340B Program runs directly counter to the evidence in this case, there is no "rational connection between the facts found and the choice made." *Aids Vaccine v. United States*, at *10. Therefore, Sagebrush is likely to prevail on the merits of its APA claim that HRSA's decision was arbitrary, capricious, and not in compliance with the law.

**B. Sagebrush will Suffer Irreparable Harm Absent a Preliminary Injunction.**

As an initial matter, economic harm caused by agency action is always irreparable "because the APA's waiver of sovereign immunity does not extend to damages claims," making them "unrecoverable." *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 34 (D.D.C. 2020) (citing 5 U.S.C. § 702 (allowing relief "other than money damages")); *see California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (stating that economic harm caused by federal agency action "is irreparable . . . because the states will not be able to recover monetary damages"); *Clarke v. Off. of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 66 (D.D.C. 2004) (finding irreparable harm because agency was likely immune from suit and resulting losses were therefore

---

[3] Incidentally, the timing issue with the Nevada grant extends to other sites in Nevada operated by other entities. Unless, HRSA is acting to terminate all sites subject to the Nevada grant on March 31, 2025, singling out Sagebrush's site would be further evidence of arbitrary and capricious action.

unrecoverable).[4]

In this case, the economic harm to Sagebrush will be fatal. Sagebrush is a nonprofit entity that relies on the revenues it generates on 340B drugs as its primary revenue source. Sagebrush reinvests most of the savings on its 340B drug purchases back into the communities it serves in the form of free STD testing and other services that are not directly financially supported by the Subawards. If Sagebrush is no longer able to achieve these savings because it lacks access to 340B drugs, it will cease these community benefits and close its doors. Without preliminary relief, Sagebrush simply will not exist long enough to see the end of this litigation.

Accordingly, Sagebrush has demonstrated that it will suffer irreparable harm absent preliminary relief.

## C. The Balance of Equities and Public Interest Weighs in Sagebrush's Favor.

The balance of equities and the public interest also weigh in favor of preliminary relief. Because this case is against the government, the balance of equities and public interest factors "merge into a single inquiry." *Luokung Tech. Corp. v. U.S. Dep't. of Defense*, 538 F. Supp. 3d 174, 194 (D.D.C. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). That is because "the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original) (citing *Nken*, 556 U.S. at 435).

There is a "substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of United States v.*

---

[4] *See also Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) ("The threat of unrecoverable economic loss, however, does qualify as irreparable harm."); *Pennsylvania v. Trump*, 930 F.3d 543, 574 (3d Cir. 2019) ("Because the States cannot collect money damages under the APA . . . the States will suffer irreparable harm if the Rules are enforced." (cleaned up)), *rev'd on other grounds sub nom. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020).

*Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (*quoting Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)); *see id*. (holding "[t]here is generally no public interest in the perpetuation of unlawful agency action."); *see also N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("The public interest is served when administrative agencies comply with their obligations under the APA."); *Luokung Tech. Corp.*, 538 F. Supp. 3d at 195. There is significant public interest in the continued participation of covered entities in the 340B Program as well—participation that may be in jeopardy if HRSA is permitted to remove and impose repayment obligations on covered entities in circumstances other than those that Section 340B permits.

In the instant case, there is negligible cost to Defendants if preliminary relief is provided. When balanced with the significant, likely fatal, cost to Plaintiff, any potential costs incurred by Defendants are unquestionably outweighed.

## CONCLUSION

The Court should grant Sagebrush's motion and issue a temporary restraining order enjoining HRSA from terminating the Sites from the 340B Program. If the Court cannot conduct a hearing on this motion for a temporary restraining order prior to Monday, March 31, 2025, Plaintiff asks that the Court issue an administrative stay preserving the *status quo* until such a time as the matter can be heard by the Court.

Dated:                            **ARENTFOX SCHIFF LLP**

                           By: /s/ James H. Hulme
                               James H. Hulme (Bar No. 323014)
                               Douglas A. Grimm (Bar No. 495805)
                               ArentFox Schiff LLP
                               1717 K Street, NW
                               Washington, DC 20006-5344
                               Ph: 202.857.6000
                               Fax: 202.857.6395
                               james.hulme@afslaw.com
                               douglas.grimm@afslaw.com
                               *Counsel for Plaintiff Sagebrush Health Services*