UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

        Plaintiff,

   v.

ROBERT F. KENNEDY, JR., Secretary of
Health and Human Services et al.,

        Defendants.

Civil Action No. 25-0915 (JEB)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY
<u>RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Statutory Background ...................................................................................................... 1

     I.     The 340B Program. ............................................................................ 1

     II.    Sagebrush's Inability to Confirm Program Eligibility. ...................... 3

     III.   The Instant Civil Action. ..................................................................... 5

Legal Standard ................................................................................................................ 5

Argument ........................................................................................................................ 6

     I.     Plaintiff is Unlikely to Succeed on the Merits of the Underlying Complaint. ........ 6

          A.    Plaintiff is Unlikely to Prevail on its APA Claim. ....................................... 7

     II.    Plaintiff is Unable to Demonstrate Immediate Irreparable Harm Absent Court Intervention. ............................................................................................................. 8

     III.   The Balance of Equities and the Public Interest Weigh Against Injunctive Relief. ..................................................................................................................... 11

Conclusion .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  38 F. Supp. 2d 114 (D.D.C. 1999) ........................................................................... 7
*Apex, Inc. v. FDA*,
  449 F.3d 1249 (D.C. Cir. 2006) ............................................................................... 6
*Ashland Oil, Inc. v. FTC*,
  409 F. Supp. 297 (D.D.C. 1976) ............................................................................ 11
*Biovail Corp. v. FDA*,
  448 F. Supp. 2d 154, (D.D.C. 2006) ....................................................................... 7
*Bowen v. Am. Hosp. Ass'n*,
  476 U.S. 610 (1986) ................................................................................................. 7
*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ............................................................................... 6
*Colo. Wild Horse v. Jewell*,
  130 F. Supp. 3d 205 (D.D.C. 2015) ...................................................................... 11
*Damus v. Nielsen*, Civ. A.,
  No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ............................... 6
*Davis v. Pension Ben. Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) ............................................................................... 6
*Emily's List v. FEC*,
  362 F. Supp. 2d 43 (D.D.C. 2005) ........................................................................... 9
*Hall v. Johnson*,
  599 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................. 5
*Hospitality Staffing Sols., LLC v. Reyes*,
  736 F. Supp. 2d 192 (D.D.C. 2010) ......................................................................... 6
*Katz v. Georgetown,*
  *Uni.*, 246 F.3d 685 (D.C. Cir. 2001) ....................................................................... 6
*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .............................................................................. 6, 12
*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360, (1989) ................................................................................................. 7
*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................................... 11
*Novartis Pharms. Corp. v. Johnson*,
  102 F.4th 452 (D.C. Cir. 2024) .............................................................................. 12
*Power Mobility Coal. v. Leavitt*,
  404 F. Supp. 2d 190 (D.D.C. 2005) ......................................................................... 9
*Privacy Info. Ctr. v. Dep't of Just.*,
  15 F. Supp. 3d 32 (D.D.C. 2014) ............................................................................. 9
*Pursuing Am.'s Greatness v. FEC*,
  831 F.3d 500 (D.C. Cir. 2016) ................................................................................. 6

*Save Jobs USA v. Dep't of Homeland Sec.*,
   105 F. Supp. 3d 108 (D.D.C. 2015) ........................................................................... 9
*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ................................................................................... 6
*Small v. Avanti Health Sys, LLC*,
   661 F.3d 1180 (9th Cir. 2011) ................................................................................. 11
*Texas v. United States*,
   86 F. Supp. 3d 591 (S.D. Tex. 2015) ...................................................................... 12
*Tourus Records, Inc. v. DEA*,
   259 F.3d 731 (D.C. Cir. 2001) ................................................................................... 7
*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006) ................................................................................... 6
*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 .............................................................................................................. 9
*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ........................................................................................... 11, 12
*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) ........................................................................................... 5, 9, 12
*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ............................................................................. 9, 11

**Statutes**

5 U.S.C. § 702 ................................................................................................................. 7
5 U.S.C. § 706 ................................................................................................................. 7
42 U.S.C. § 247c ..................................................................................................... passim
42 U.S.C. § 256b ............................................................................................................. 1
42 U.S.C. § 256b(a)(4)(K) ........................................................................................... 1, 8
42 U.S.C. § 256b(a)(5)(A) ............................................................................................... 2
42 U.S.C. § 256b(a)(5)(B) ............................................................................................ 2, 7
42 U.S.C. § 256b(a)(5)(C) ............................................................................................ 2, 3
42 U.S.C. §§ 256b(d)(2)(B) ............................................................................................. 2

Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services, the Department of Health and Human Services (the "Department"), the Health Resources and Services Administration (the "Administration" or "HRSA"), and its Administrator (collectively, "Defendants"), through undersigned counsel, respectfully submit this opposition to the motion for temporary restraining order and preliminary injunction (ECF No. 2, "TRO Motion") filed by Plaintiff Sagebrush Health Service ("Plaintiff" or "Sagebrush").

## STATUTORY BACKGROUND

### I.     The 340B Program.

In 1992, Congress established the 340B Program, whereby certain statutorily defined healthcare providers ("covered entities") purchase certain drugs ("covered outpatient drugs") at a discount from participating drug manufacturers. 42 U.S.C. § 256b. The drugmakers participate in the program because it is a condition for their products to be reimbursable under Medicare Part B and Medicaid. The statute defines the parameters of eligible providers in section 256b(a)(4).  As relevant here, one category of eligible covered entities are those that receive "funds [under Section 318 of the Public Health Service Act, 42 U.S.C. § 247c] (relating to treatment of sexually transmitted diseases) . . . through a State or unit of local government." 42 U.S.C. § 256b(a)(4)(K).

Under the 340B Program, one category of eligible covered entity is "[a]n entity receiving funds under section 247c of this title (relating to treatment of sexually transmitted diseases) . . . *through* a State or unit of local government, but only if the entity is certified by the Secretary pursuant to paragraph [(a)](7)."  42 U.S.C. § 256b(a)(4)(K) (emphasis added).  Section 247c, in turn, allows the Secretary to make "grants" to States and local government units for the prevention and control of sexually transmitted diseases.  42 U.S.C. § 247c.  Thus, in order for an entity to qualify as a covered entity under section 256b(a)(4)(K), that entity must receive federal funds, which includes good or services, that were provided to the State or local government (i.e., "through

a State or unit of local government") for STD treatment or control.  In other words, the source of the funds from the State or local government must be a federal grant, as opposed to the covered entity simply receiving funds directly from the State or local government from non-federal funds.

Such fund recipients may participate in the 340B Program if they are verified to be eligible for the Program. *See* 42 U.S.C. §§ 256b(d)(2)(B) (requiring the Department to develop procedures to verify all 340B participating covered entities and to establish an identification system for covered entity sites), 256b(a)(7) (certification requirement for specific covered entity types, including covered entities under § 256b(a)(4)(K)), 256b(a)(9) (requiring the Department to notify participating manufacturers of the identity of participating covered entities, as well as those who are no longer certified under § 256b(a)(7)).

In addition to the basic parameters of eligibility set forth in section 256b(a)(4), the statute also imposes certain obligations and restrictions on participating covered entities. First, the covered entity can only resell or otherwise transfer the discount drugs to its patients. *See* 42 U.S.C. § 256b(a)(5)(B). Second, covered entities must help ensure that drugmakers are not subject to a "duplicate discount" for covered outpatient drugs. *See* 42 U.S.C. § 256b(a)(5)(A). These are known as the prohibitions on "diversion" and "duplicate discounting," respectively.

The 340B Program is administered by the Administration, and its day-to-day operations are handled by a component called the Office of Pharmacy Affairs. The Office of Pharmacy Affairs uses its database named Office of Pharmacy Affairs Information System ("OPAIS" or the "Pharmacy Affairs System") to help track and oversee covered entities participating in the 340B Program. The statute provides the Secretary and the Office of Pharmacy Affairs various tools and procedures to ensure program integrity, including that the Secretary may audit covered entities to ensure compliance with the prohibitions on diversion and duplicate discounting. *See* 42 U.S.C. §

256b(a)(5)(C). Similarly, manufacturers of covered outpatient drugs may, at the Secretary's or the manufacturers' expense, audit covered entities, "acting in accordance with procedures established by the Secretary relating to the number, duration, and scope of audits." *Id.* Following an audit of potential violations of the diversion and duplicate discount provisions, the Secretary may, after notice and a hearing, find a covered entity liable to a drugmaker for repayment of the improper discount amounts. *See id.* § 256b(a)(5)(D).

## II.    <u>Sagebrush's Inability to Confirm Program Eligibility.</u>

By letter dated February 2, 2024, the Administration informed Sagebrush that it was conducting a review of multiple Sagebrush sites for compliance with the 340B Program requirements, with a focus on grant funding by the Centers for Disease Control and Prevention ("CDC"). Health Resources & Services Admin. Letter of Feb. 2, 2024 (ECF No. 4 at 11–13). This letter included eleven inquiries requiring responses from Sagebrush to show Program eligibility and compliance. *See id.* Sagebrush responded to this inquiry in part on March 4, 2024. *See* Sagebrush Letter of Mar. 4, 2024 (ECF No. 4 at 16-30). From February 2 to December 20, 2024, the Administration evaluated Sagebrush's documentation regarding grant agreements and notice of funding availability, along with documentation provided to the Administration by the CDC, the Connecticut Department of Public Health, and the Nevada Department of Health and Human Services. *See* Health Resources & Services Admin. Letter of Dec. 20, 2024 (ECF No. 4 at 71–72). Ultimately, Sagebrush did not show that its sites remained eligible to participate in the 340B program by providing proof of the requisite Section 318, *i.e.*, 42 U.S.C. § 247c, funding through a state or local government. *Id.* Accordingly, on January 14, 2025, the Administration terminated eighteen ineligible sites from the 340B program. *See* Compl. (ECF No. 1 at ¶ 61); *see also* Sagebrush Letter of Feb. 21, 2025 (ECF No. 4 at 95).

On March 21, 2025, the Administration informed Sagebrush of its failure to demonstrate that two remaining sites were eligible to participate in the 340B program. Compl. (ECF No. 1 at 63); *see also* Decl. of Chantelle V. Britton (attached) Ex. A (Health Resources & Services Admin. Letter of March 21, 2025).  Specifically, there was no showing that site STD06489 had received funding under the cooperative agreement between the Connecticut Department of Public Health and the CDC that has been in effect since August 1, 2024, and in fact the STD test kits provided in October 2024 to site STD06489 were purchased with state funds, not Section 318 funds. *See id.*; *see also* Britton Decl. Ex. B (Conn. Dept. of Pub. Health Email of Feb. 11, 2025).

With respect to site number STD891132, the Administration noted that the funding for this site expired on February 28, 2025. *See* Britton Decl. Ex. A.  As of the date of the Administration's letter, a notice of award for the period starting on March 1, 2025 had not been issued. *See id*. Because Sagebrush was unable to show program eligibility, Sagebrush was advised to initiate termination of the two sites by March 28, 2025. *Id*.

On March 25, 2025, Counsel for Sagebrush sent a letter to the Administration reiterating its position that site STD06489 remained eligible because its STD kits were purchased with state funds. *See* Sagebrush Letter (March 25, 2025) (ECF No. 4 at 173-174). Sagebrush also informed the Administration that the notice of award in connection with the Section 318 funding for site STD891132 was expected to be executed on March 28, 2025, and would be retroactive to cover funding for March 1, 2025 onward. *See id*.

On March 27, 2025, the Administration informed Sagebrush that, on February 11, 2025, the Connecticut Department of Public Health confirmed that the STD kits for site STD06489 were purchased with state funds. *See* Health Resources & Services Admin. Email to Sagebrush (March 27, 2025) (ECF No. 4 at 183). Accordingly, this site will be terminated due to ineligibility. *Id*.

Separately, because Sagebrush expected to receive a notice of award on March 28, 2025, that would retroactively provide Section 318 Funding for site STD891132 for the period beginning on March 1, 2025, the Administration advised Sagebrush to show eligibility in order to prevent the site from being terminated starting on March 31, 2025. *Id.* Significantly, Sagebrush still has the opportunity to furnish proof of the executed notice of funding or advise the Administration of any update regarding the anticipated subaward execution date, and, to allow Sagebrush a further opportunity to come into compliance, site STD891132 will not be terminated before April 14, 2025. Britton Decl. ¶ 9.

### III.    The Instant Civil Action.

On March 27, 2025, Plaintiff initiated the instant action under the Administrative Procedure Act ("APA"), alleging that the Administration's decision to terminate the ineligible sites and the Administration's alleged requirement for Sagebrush to repay discounts it received while ineligible exceeded its statutory authority, failed to observe procedure required by law, and was arbitrary and capricious. *See* Compl. (ECF No. 1) ¶¶ 88, 101,113 and 119.

Plaintiff contemporaneously filed a motion for a temporary restraining order, seeking injunctive relief from the Court, purportedly to maintain the status quo pending final resolution on the merits. TRO Mot. (ECF No. 2) at 2.

For the reasons outlined below, Plaintiff is not entitled to this extraordinary relief because Plaintiff cannot show that it will suffer irreparable harm, Plaintiff is unlikely to succeed on its APA claims, and the balance of equities and public interest do not support Plaintiff's continued participation in the 340B Program through ineligible sites.

### LEGAL STANDARD

A preliminary injunction or a temporary restraining order "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008); *see Hall v.*

*Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions").  A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest."  *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted.  *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another.  *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)).  The D.C. Circuit has hinted, though not held, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*).

## ARGUMENT

### I.    Plaintiff is Unlikely to Succeed on the Merits of the Underlying Complaint.

A plaintiff that cannot demonstrate a significant likelihood of success on the merits has no hope of obtaining preliminary injunctive relief.  *See Trudeau v. FTC*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006); *Katz v. Georgetown Uni.*, 246 F.3d 685, 688 (D.C. Cir. 2001); *Apex, Inc. v. FDA*, 449

F.3d 1249, 1253–54 (D.C. Cir. 2006). "[A]bsent a 'substantial indication' of likelihood of success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, (D.D.C. 2006) (quoting *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)). Here, Plaintiff's APA claims will fail as a matter of law.

      **A.     Plaintiff is Unlikely to Prevail on its APA Claim.**

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is arbitrary, capricious, exceeds statutory authority, or was taken without observance of the procedure required by law. 5 U.S.C. § 706. The reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378, (1989) (internal quotations omitted). At a minimum, agencies must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001).

Sagebrush alleges that the Administration's power to remove covered entities from the 340B Program is limited to systemic and egregious violations of the statutory prohibition regarding diversion. *See* Pl. Br. (ECF No. 2 at 9). The portions of the statute that Plaintiff identifies, however, are irrelevant to the termination of ineligible sites.

Plaintiff points to the section of the statute that outlines compliance, auditing, and a process for sanctioning entities that engage in diversion or duplicate discounting, set forth in 42 U.S.C. § 256b(a)(5)(B) and (a)(5)(A), respectively. *See* Pl. Br. (ECF No. 2 at 10); *see also* Compl. (ECF No. 1) ¶¶ 88, 98-101. Plaintiff's sites were not terminated for diversion or duplicate discounting,

however. Plaintiff's entities were terminated from the Program because Plaintiff failed to show that its sites satisfied the applicable threshold statutory eligibility requirement for the sites to participate in the 340B Program, as required by 42 U.S.C. § 256b(a)(4)(K).

Defendants' actions were not arbitrary or capricious. To the contrary, the relevant factors were considered. The part of the 340B statute applicable to Plaintiff's sites unquestionably requires them to "receiv[e] funds . . . through a State or unit of local government" pursuant to Section 318, 42 U.S.C. § 247c. *See id*. Defendants engaged with Plaintiff to allow Plaintiff to show that it received the required funding for the sites. Defendants also obtained information from the Connecticut Department of Public Health confirming that site STD6489 did not receive STD kits purchased with Section 318 Funding, contrary to Plaintiff's assertions. *See* Britton Decl. Ex. B. Further, the communications between the Administration and Sagebrush confirmed that the Section 318 funding for site STD891132 expired on February 28, 2025 and to date has not been renewed, although Defendants are affording Sagebrush extra time, until April 14, 2025, to show that it has come into statutory compliance for that site.

Thus, the relevant facts before the Administration demonstrate that neither site STD6489 nor site STD891132 meets the threshold statutory eligibility requirement, and therefore at this time are not covered entities. By the plain terms of the statute, the two sites are ineligible to participate in the Program, and the Defendants carefully considered all relevant factors and provided appropriate time and opportunity for Sagebrush to establish eligibility. In short, Plaintiff's APA claim fails on the merits.

## II. Plaintiff is Unable to Demonstrate Immediate Irreparable Harm Absent Court Intervention.

The standard for irreparable harm is particularly high in this jurisdiction. "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is *certain,*

*great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (cleaned up; emphasis in original; quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *see also Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112-13 (D.D.C. 2015).

Further, purely economic loss, even when large sums of money are involved, typically will not constitute irreparable injury. *See Wis. Gas*, 758 F.2d at 674 (holding that it is "well settled that economic loss does not in and of itself constitute irreparable harm"); *Emily's List v. FEC*, 362 F. Supp. 2d 43, 52 (D.D.C. 2005). Monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business. *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C. Cir. 1977). The movant may not, however, rely on "bare allegations" that the business will not survive absent a preliminary injunction. *Wis. Gas Co.*, 758 F.2 at 674. Instead, the movant must provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* at 674 (internal quotation marks and citation omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Privacy Info. Ctr. v. Dep't of Just.* 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (citation omitted). Thus, legal authority is clear that, to meet

the standard for irreparable harm, the movant must present sufficient evidence that the purported

injury is certain, great, actual, imminent, and beyond remediation.

      Plaintiff has not shown that it will suffer an "irreparable" injury absent a preliminary

injunction. Sagebrush claims it "relies on the revenues it generates on 340B drugs as its primary

revenue source" and, if Sagebrush is no longer able to achieve these savings, it will "close its

doors." Pl. Br. (ECF No. 2 at 13). In terms of financial loss, the 340B Program allows eligible

covered entities to purchase covered outpatient drugs at a discount. While it may harm Plaintiff

that it can no longer make purchases at a discount, it does not follow that the alleged financial

harm is irreparable, as discounted drug purchasing is not the Plaintiff's only form of funding. This

is confirmed by the fact that Plaintiff has terminated multiple sites on its own and remained

operational. *See* Health Resources & Services Admin. Letter, July 3, 2024 (ECF No. 4 at 32)

(noting that Sagebrush self-terminated three sites); *see also* Compl. (ECF No. 1 ¶ 40) ("From time

to time, Sagebrush has removed [Pharmacy Affairs System] Sites (at its own discretion) when

Subaward Service ceased based on operational necessities or efficiencies."). Moreover, because

the loss Plaintiff has identified is for the most part financial, it cannot support an irreparable harm

finding unless Plaintiff establishes that these losses will indeed threaten the continued existence of

its businesses. All that Plaintiff has offered is *ipse dixit*, and indeed Plaintiff's own self-termination

of sites strongly suggests that Plaintiff's assertions of imminent closures are overblown.

      That is, the fact that Plaintiff remains operational despite the self-terminations belies any

suggestion that absent an injunction Plaintiff's ability to continue operations will be immediately

affected. For its part, Plaintiff has offered only bare allegations that, absent an injunction, the

entities will not survive. Plaintiff has not submitted audited financial statements or other detailed

materials to demonstrate the impact the injunction would have on their viability or the dollar deficit

that allegedly would force it to close the doors in a matter of days. Such "bare allegations" that, absent an injunction, Plaintiff will suffer a debilitating loss or that it will be forced to repay some yet to be identified sum to manufactures at some indefinite time in the future is insufficient to support a finding of irreparable harm. *See Wis. Gas*, 758 F.2d at 654.

Thus, it is far from certain that the site terminations at issue in this action will cause Plaintiff to reach a financial deficit so high that the sites will be driven out of business or that Plaintiff will suffer irreparable harm during the pendency of the lawsuit. And in all events, because site STD891132 will not be terminated from the 340B program until April 14, 2025, in order to provide Plaintiff more time to establish that site's eligibility, harm as to that site in particular is not "imminent," and accordingly preliminary injunctive relief as to that site is not warranted. *See Wis. Gas Co.*, 758 F.2d at 674 (injury complained of must be "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm" (emphasis in original; quoting *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C. 1976)).

## III.    The Balance of Equities and the Public Interest Weigh Against Injunctive Relief.

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015). Courts must "[give] particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). In this case, the balance of equities and the public interest tip strongly in favor of the Government, as "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys, LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).

Government entities and 340B Program participants—including drug manufacturers—have a significant interest in Program integrity. Manufacturers' interest is demonstrated by the fact

that they have sued the United States Department of Health and Human Services, alleging that the Department wrongly allowed Sagebrush sites that were ineligible to participate in the 340B Program to make discounted drug purchases. *See Amgen, Inc. v. Becerra*, Civ. A. No. 24-3571 (JEB) (D.D.C.). State and local governments likewise have an interest in the integrity of their grant programs and abiding by the statutory requirements for the 340B Program. This concern is underscored by the litigation upon which Plaintiff relies in questioning the Administration's ability to ensure compliance with the statutory program eligibility requirements. *See* Pl. Br. at 9 (citing *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452 (D.C. Cir. 2024)).

Accordingly, Plaintiffs cannot meet their burden of establishing "that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *Texas v. United States*, 86 F. Supp. 3d 591, 675 (S.D. Tex. 2015) ("If no public interest supports granting preliminary relief, such relief should ordinarily be denied, even if the public interest would not be harmed by one." (cleaned up)), *aff'd*, 809 F.3d 134 (5th Cir. 2015) ; *see also Weinberger*, 456 U.S. at 312 ("[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). Any claim that Defendants failed to "abide by the federal laws that govern their existence and operations" is meritless, as shown herein and as this Court previously concluded in another action brought by Sagebrush. *See* Pl. Br. at 13 (ECF No. 2) (quoting *League of Women Voters*, 838 F.3d 1); *see also* Min. Order of Jan. 31, 2025 & Tr. of Jan. 31, 2025 Hr'g (ECF No. 27), *Sagebrush v. Fink*, Civ. A. No. 25-0127 (JEB) (D.D.C.). Here, the public interest weighs heavily against Plaintiff's attempt to sustain ineligible entities' participation in the 340B program through preliminary injunctive relief.

\*   \*   \*

## CONCLUSION

For these reasons, Plaintiff's motion for a temporary restraining order should be denied.

Dated: March 30, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:  ___/s/Kimberly A. Stratton___
　　　KIMBERLY A. STRATTON
　　　P.A. Bar #327725
　　　Assistant United States Attorney
　　　601 D Street, NW
　　　Washington, DC 20530
　　　(202) 417-4216
　　　kimberly.stratton@usdoj.gov

　　　*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

     Plaintiff,

     v.

ROBERT F. KENNEDY, JR., Secretary of
Health and Human Services et al.,

        Defendant.

Civil Action No. 25-0915 (JEB)

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for a temporary restraining order, Defendant's opposition thereto, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is denied.


SO ORDERED:


_____                    _____
Date                                       CHIEF JUDGE JAMES E. BOASBERG
                                           United States District Judge