IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

*Plaintiff,*

v.

ROBERT F. KENNEDY, JR., Secretary of Health and Human Services, et al.,

*Defendants.*

Civil Action No. 1:25-cv-00915-JEB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Civil Rules 7 and 65.1, Plaintiff Sagebrush Health Services ("Sagebrush" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in Support of its Motion for Preliminary Injunction.

## PRELIMINARY STATEMENT

This case requires the Court's urgent attention to prevent irreparable harm to Sagebrush caused by Defendant Health Resources and Services Administration's ("HRSA") wrongful conduct. HRSA has exceeded its statutory authority by removing, or attempting to remove, Sagebrush and its participating clinics ("Sites") from the 340B Drug Discount Program ("340B Program") even though they receive the requisite support under Section 318 of the Public Health Service Act ("PHSA"). In addition, HRSA's decisions to terminate these Sites were arbitrary, capricious, not in compliance with the law, and contrary to fundamental notions of due process. Sagebrush, an entity that provides substantial support to the communities it serves, relies almost entirely on savings realized from its participation in the 340B Program and will be forced to cease operations absent preliminary relief in this matter.

To mitigate the irreparable harm HRSA is causing to Sagebrush, the Court should enter preliminary relief both to preserve the status quo as it relates to Sagebrush's remaining two active Sites and to restore the status quo as it relates to all Sites listed in Sagebrush's Notice of Subaward from the Nevada Department of Health and Human Services ("NHHS"). HRSA's power to remove entities from the 340B Program is statutorily limited to specific circumstances not present here. *See* 42 U.S.C. § 256b. Additionally, HRSA's decision to remove these Sites was arbitrary and capricious as it was directly contrary to the evidence at hand. As a result, HRSA has violated the Administrative Procedures Act ("APA") because HRSA's decision exceeded its statutory authority and it was arbitrary, capricious, not in compliance with the law, and contrary to fundamental due process.

## BACKGROUND

### A. The 340B Program

The 340B Program is a federal drug discount program that allows certain types of health care providers and organizations ("covered entities") to purchase outpatient drugs for provision to their patients at substantially reduced prices. *See* 42 U.S.C. § 256b. Congress created this program to increase access to medical care and stretch federal resources as far as possible. *See* H.R. Rep. 102-384(II) at 12 (1992).

Section 340B of the PHSA ("Section 340B") authorizes the Department of Health and Human Services ("HHS") (and, by extension, HRSA) to administer the 340B Program. *See* 42 U.S.C. § 256b. HHS determines an entity's eligibility for qualification as a covered entity, oversees a certification and recertification process for certain covered entities, conducts audits to ensure compliance with statutory requirements, and terminates entities from the 340B Program. HRSA's

authority to perform each of these actions is detailed in, and limited by, the 340B Program's governing statute.

**1. Participation in the 340B Program**

To effectuate the purpose of the 340B Program (expanding access to resources), Congress expressly provided for the participation of a wide range of entities. Eligible participants authorized under the statute include community-oriented entities, such as urban Indian organizations and rural referral centers, as well as children's hospitals and critical access hospitals. 42 U.S.C. § 256b(a)(4).

An "entity receiving funds . . . through a State or unit of local government" under Section 318 of the PHSA ("Section 318") "relating to treatment of sexually transmitted diseases" (a "Section 318 Subrecipient") is also a covered entity under the statute. *Id*. § 256b(a)(4)(K). Section 318 Subrecipients may participate in the 340B Program after undergoing HRSA's registration and certification process. *See id*. § 256b(a)(7)(A). After their initial admission, they must recertify their eligibility with HRSA each year to remain in the 340B Program. *See id.* § 256b(a)(7)(E).

HRSA's certification process requires the review and confirmation of each aspect of an entity's eligibility for the 340B Program. After an eligible entity registers via HRSA's Office of Pharmacy Affairs Information System ("OPAIS"), the Office of Pharmacy Affairs ("OPA") reviews all necessary documentation and confers directly with the appropriate granting agency to confirm the entity's eligibility for participation in the 340B Program.[1] HRSA is prohibited from requiring recertification of a covered entity more than once per year. 42 U.S.C. § 256b(a)(7)(E).

In addition to meeting the above requirements, Section 318 Subrecipients (and all covered entities) must comply with two statutory prohibitions: (1) the "diversion" prohibition, which

1 See FAQ ID: 1213 at https://www.340bpvp.com/search#tab=faq&cf-p_faq_category_hierarchy=Eligibility%2FRegistration&firstResult=20 (last visited Jan. 15, 2025).

prevents a covered entity from reselling or transferring a drug purchased through the 340B Program to anyone other than a "patient" of the covered entity; and (2) the "duplicate discount" prohibition, which prevents a covered entity from billing fee-for-service Medicaid for a 340B drug if the state Medicaid agency will request a rebate from the manufacturer. *See* 42 U.S.C. § 256b(a)(5)(A)–(B). Violations of either prohibition may result in the covered entity's liability to a manufacturer for the drug discounts received under the 340B Program. *Id*. § 256b(a)(5)(D).

**2. HRSA's Power to Sanction Covered Entities**

HRSA's power to sanction covered entities is specifically addressed in Section 340B and limited to three discrete actions:

1) If a covered entity is subject to an audit, HRSA may require a covered entity to pay a monetary penalty to a manufacturer if that entity "knowingly and intentionally" violated the diversion prohibition based on the audit findings. *Id*. § 256b(d)(2)(B)(v)(I).

2) If a covered entity is subject to an audit, HRSA may remove a covered entity from the 340B Program if that entity committed diversion prohibition violations that are both "systematic and egregious" and "knowing and intentional." *Id*. § 256b(d)(2)(B)(v)(II). Again, this must be based on the findings of a formal audit.

3) If a covered entity is subject to an audit, HRSA may refer matters to appropriate federal authorities for consideration of appropriate action. *Id*. § 256b(d)(2)(B)(v)(III). Again, this must be based on the findings of a formal audit.

Section 340B does not authorize HRSA's removal of a covered entity due to violations of the duplicate discount prohibition or for any reason other than the "systemic and egregious as well as knowing and intentional" violation of the diversion prohibition mentioned above. *See generally id.* § 256b. And, again, such a finding may only be based on the results of a formal audit.

**B. Sagebrush**

Sagebrush is a Nevada nonprofit foundation affiliated with specialty care clinics in Nevada and Connecticut. (Declaration of Guru Charan (Charan Decl. ⁋ 3.)) Due to the nature of its work and funding sources, Sagebrush registered multiple Sites in OPAIS and, after completing HRSA's required certification process, received approval for those Sites' participation in the 340B Program. *Id*. § 256b(a)(4)(K). (Charan Decl. ⁋⁋ 4–5).

Sagebrush's eligibility to participate arises from its receipt of two subawards, both deriving from Centers for Disease Control and Prevention ("CDC") Section 318 awards. (Charan Decl. ⁋ 4). The first grant, issued by NHHS (the "NHHS Subaward"), is a grant made on the condition that Sagebrush provide services preventing, screening, detecting, and treating sexually transmitted diseases ("STDs"). (Charan Decl. ⁋ 4). Sagebrush performs these services at the Sites and other locations in accordance with the terms of the NHHS Subaward. The second grant, issued by the Connecticut Department of Public Health ("CDPH") (the "CDPH Subaward"), is in the form of "in-kind support"—human immunodeficiency virus ("HIV") and hepatitis C ("HCV") testing supplies are provided to Sagebrush in return for the reporting of specific information related to the tests, such as the number of tests performed, test results, and basic demographic information of test recipients. (Charan Decl. ⁋ 4). Sagebrush administers these tests at the Sites and other locations. Because Sagebrush receives funding that traces back to Section 318 grants to state agencies, Sagebrush—and by extension, its Sites—is a Section 318 Subrecipient that qualifies as a covered entity in the 340B Program. *See* 42 U.S.C. § 256b(a)(4)(K).

Utilizing savings from the 340B Program, Sagebrush provides a comprehensive sexual health care services program (the "STD Program") to its local communities. (Charan Decl. ⁋ 3). A key component of the STD Program is care collaboration with medical specialists (the "Providers"),

including infectious disease and rheumatology providers, many of whom treat patients who are immunocompromised or otherwise may be at increased risk of contracting STDs (the "Patients"). (Charan Decl. ⁋ 3).

The STD Program care collaboration model integrates education, screening, testing, and treatment of STDs with the Providers' other medical services. (Charan Decl. ⁋ 3). With resources supported by the NHHS Subaward and CDPH Subaward, the Providers coordinate with Sagebrush to provide Patients with services at the Sites that are within the scope of each subaward ("Subaward Services"). (Charan Decl. ⁋ 3).

**C. Sagebrush's Participation in the 340B Program**

Each Site was registered in OPAIS and certified its compliance with the 340B Program requirements. (Charan Decl. ⁋ 5). OPA was then responsible for conferring with each Site's granting agency and confirming the eligibility of each Site's funding sources. Each Site was ultimately approved for participation in the 340B Program. (Charan Decl. ⁋ 5).

**D. The Instant Litigation**

On February 2, 2024, HRSA notified Sagebrush that the agency had initiated a programmatic review of fifty-three Sites for "compliance with 340B Program requirements with a focus on the sites' receipt of grant funding from the Centers for Disease Control and Prevention (CDC), and determinations of patient eligibility." (Charan Decl. ⁋ 6, Ex. A).

Sagebrush cooperated with the investigation, providing more than 8,000 pages of responsive documents to HRSA, including proof of the relevant Section 318 funding in place at the time HRSA initially approved each Site. (Charan Decl. ⁋⁋ 7, 9, 11, Exs. B, D, F).

During its review, HRSA incorrectly determined that Sagebrush's in-kind funding from CDPH had expired on July 31, 2024, rendering the Sites in Connecticut ineligible to participate in

the 340B Program. (Charan Decl. ⁋ 10, Ex. E). Sagebrush responded by providing correspondence from the Director of Infectious Disease and State Epidemiologist at CDPH, dated September 3, 2024, confirming the continued provision of the Section 318 in-kind funding previously awarded to the Sites. (Charan Decl. ⁋ 11, Ex. F).

HRSA also failed to account for the fact that nineteen Sites in Nevada were explicitly listed on the NHHS Notice of Subaward and instead found that all but one of these nineteen Sites "do not receive 318 funding." (Charan Decl. ⁋ 12, Ex. G). In later correspondence, HRSA appeared to acknowledge that the NHHS Notice of Subaward demonstrated receipt of Section 318 funding for one Site, Site No. STD891132, but did not explain why it was insufficient for the other eighteen. (Charan Decl. ⁋ 22, Ex. O).

On December 20, 2024, HRSA informed Sagebrush that twenty active Sites in Connecticut and Nevada were not currently receiving Section 318 funding and therefore were ineligible for covered entity status. (Charan Decl. ⁋ 12, Ex. G). As the grant funding received by these Sites had not changed since the time of certification (or recertification), this finding contradicted HRSA's eligibility determinations made during the certification process. (Charan Decl. ⁋ 13).

In response, Sagebrush provided HRSA with additional documentation regarding the active status of both the NHHS and CDPH Subawards and requested that HRSA delay its termination of the Sites for thirty days to allow Sagebrush time to address any other eligibility concerns. (Charan Decl. ⁋ 13, Ex. H). Without explanation, HRSA concluded that this documentation was insufficient to show receipt of Section 318 funds and removed the twenty active Sites from the 340B Program on January 14, 2025. (Charan Decl. ⁋ 20).

HRSA failed to provide details as to why each Site was ineligible, other than to restate that they had not received Section 318 funds, despite numerous requests by Sagebrush for this

information. (Charan Decl. ⁋⁋ 9–18, Exs. B-M). After this mass removal of Sites, only two remained in the 340B Program (Charan Decl. ⁋ 20).

On March 21, 2025, HRSA informed Sagebrush that, on March 31, 2025, HRSA would remove the two remaining Sites from the 340B Program due to their ineligibility. (Charan Decl. ⁋ 22, Ex. O). HRSA determined that the last active Site in Connecticut, Site No. STD06489, ceased to be eligible on August 1, 2024, because the test kits constituting grant funding were purchased with state funds instead of CDC Section 318 funding. (Charan Decl. ⁋ 22, Ex. O). This finding was directly contradicted by communications from CDPH to Sagebrush. (Charan Decl. ⁋ 11, Ex. F).

HRSA further stated that Site No. STD891132 in Nevada would be ineligible for the 340B Program until NHHS received a Notice of Award from the CDC for the period starting on March 1, 2025. (Charan Decl. ⁋ 22, Ex. O). This determination was contradicted by documentation stating that the updated NHHS Subaward supported by that CDC grant would apply retroactively to cover any potential period of ineligibility resulting from the expiration of the prior NHHS Subaward on February 28, 2025. (Charan Decl. ⁋ 23, Ex. P).

On March 25, 2025, Sagebrush again provided documentary evidence to HRSA contradicting the ineligibility findings. Section 318 funding was, in fact, used to purchase the test kits for Site No. STD06489, as evidenced by the September 3, 2024, correspondence with Dr. Lynn Sosa, Director of Infectious Disease and State Epidemiologist at CDPH. (Charan Decl. ⁋ 23, Ex. P). Additionally, Site No. STD891132 did not have a lapse in eligibility because the new Notice of Award, once signed by NHHS, would be retroactive to March 1, 2025. (Charan Decl. ⁋ 23, Ex. P). Sagebrush supported this position with a memorandum from Samm Warfel, the STD and Hepatitis Program Manager at NHHS. (Charan Decl. ⁋ 23, Ex. P).

On March 27, 2025, HRSA sent an email to Sagebrush, claiming that CDPH reported to HRSA that the fifty HIV test kits CDPH provided to Sagebrush after August 1, 2024, were purchased with state funds and not CDC Section 318 funds. (Charan Decl. ⁋ 24, Ex. Q). HRSA also informed Sagebrush that Site No. STD891132 in Nevada was considered by HRSA to be ineligible for the 340B Program until a new Notice of Award was received by NHHS. (Charan Decl. ⁋ 23, Ex. P). Here, HRSA failed to address the fact that the NHHS Subaward to Site No. STD891132 would be retroactive to March 1, 2025—thereby eliminating any period of ineligibility following expiration of the prior NHHS Subaward on February 28, 2025. (Charan Decl. ⁋ 23, Ex. P).

On March 28, 2025, Sagebrush filed a Complaint and Motion for a Temporary Restraining Order to prevent the removal of Sites Nos. STD891132 and STD06489. (ECF Nos. 1–2.3). In its March 30, 2025, reply brief, HRSA agreed to delay removal of Site No. STD891132 in Nevada until April 14, 2025. (ECF No. 8, p. 8.) HRSA also provided an email chain between HRSA and Dr. Sosa regarding the CDPH grant. (ECF No. 8-3). This email exchange included an email from Dr. Sosa dated October 17, 2024, in which Dr. Sosa stated that the test kits that CDPH provided to Sagebrush were purchased "using funds from the HIV Prevention and Surveillance grant" from the CDC. (ECF Nos. 8-3, p. 4). In a later email, dated February 11, 2025, Dr. Sosa made a statement to the contrary that state funds were used to purchase the kits. (ECF No. 8-3, p. 2).[2]

On March 31, 2025, this Court held a hearing regarding the Motion for a Temporary Restraining Order. HRSA's counsel agreed to delay the removal of both Site Nos. STD891132 and STD06489 until April 14, 2025. (Declaration of James Hulme ("Hulme Decl." ⁋ 2)). The Court

[2] After the March 31, 2025 hearing, Plaintiff requested Dr. Sosa's deposition. In response, Defendants informed Plaintiff that Defendants were in touch with Dr. Sosa and requested documents relating to the support for the Connecticut Site relating to this matter. However, as of time of filing, no such documents have been produced. Consequently, it seems a deposition will be necessary and Plaintiff will supplement the record once it is available.

held the Motion for a Temporary Restraining Order in abeyance and ordered the parties to submit a joint status report by April 7, 2025. (Hulme Decl. ⁋ 2).

HRSA's unjustified removal of the remaining two Sites from the 340B Program will have immediate and severe adverse consequences for Sagebrush, exacerbating the adverse consequences that Sagebrush has already suffered from HRSA's termination of the other twenty Sites on January 14, 2025. (Charan Decl. ⁋ 24). Without the benefit of the 340B Program, Sagebrush will have no choice but to close the STD Program in its entirety, along with the provision of Subaward Services to Patients. (Charan Decl. ⁋ 25). This will impair patients' access to health care services, including pre- and post-exposure prophylaxis treatment that Sagebrush provides to patients to prevent HIV and HCV infection, and Sagebrush's ability to fulfill its NHHS and CDPH Subaward obligations. (Charan Decl. ⁋ 25).

**LEGAL STANDARD**

The primary purpose of a preliminary injunction is to preserve the object of the controversy in its then-existing condition. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). Specifically, to preserve the *status quo ante*, *i.e.*, "the last uncontested status which preceded the pending controversy." *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969). A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *J.D. v. Azar*, 925 F.3d 1291, 1325 (D.C. Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

"The four factors have typically been evaluated on a sliding scale." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). Under the sliding scale framework, "i[f] the

movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291–92. Also, if the movant makes a strong showing on other factors, then it must show only a "serious legal question" on the merits rather than a likelihood of success. *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011).

Ultimately, the question is whether the movant has shown that all four factors, taken together, weigh in favor of preliminary injunctive relief. *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014). For the following reasons, Sagebrush has established that it is entitled to a preliminary injunction.

## ARGUMENT

### A. Sagebrush Is Likely to Succeed on Its APA Claims

Under the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. On judicial review, the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" *Id.* § 706(2)(C). The APA also requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

Sagebrush is likely to succeed on its APA claims because HRSA exceeded its statutory authority in arbitrarily and capriciously terminating Sagebrush's Sites from the 340B Program.

#### 1. HRSA's Termination of Sagebrush Sites Exceeds its Statutory Authority

HRSA's power to remove a covered entity from the 340B Program is limited to those instances where the covered entity committed a violation of the diversion prohibition that is "systematic and egregious as well as knowing and intentional . . . ." 42 U.S.C. § 256b(d)(2)(B)(v)(II). HRSA does not possess general rulemaking authority over the 340B Program,

nor does it have any power beyond that conveyed to it by Congress. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 459 (D.C. Cir. 2024); *see also Marin Audubon Soc'y v. Fed. Aviation Admin*., 121 F.4th 902, 911–12 (D.C. Cir. 2024).

The APA was created expressly to "check . . . administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 371 (2024) (internal quotations omitted). In deciding whether an agency has acted within its authority under a statute, courts must exercise their independent judgment to determine the best reading of the statute. *Id*.

The PHSA sets a high bar for removal of a covered entity from the 340B Program, authorizing HRSA to remove a covered entity only where a violation of the diversion prohibition was "systemic and egregious ***as well as*** knowing and intentional." *Id.* § 256b(d)(2)(B)(v)(II) (emphasis added). HRSA may not remove a covered entity for a violation of the diversion prohibition, a violation of the duplicate discount prohibition, or any other misconduct that does not meet these heightened criteria. *See generally id.* § 256b.

HRSA has never asserted that Sagebrush violated the diversion prohibition to any extent, and certainly not in a way that was "systemic and egregious as well as knowing and intentional." In fact, HRSA's only stated reasoning for its decisions to terminate the Sites consist of vague and general objections to the Sites' eligibility—a puzzling finding when each Site's eligibility was approved and re-confirmed during HRSA's certification and recertification processes.

Furthermore, HRSA's decision to remove the Sites undermines the safeguards built into the statute. The provisions of Section 340B evidence Congress's intent to create a progressive disciplinary system, starting with imposition of repayment liability, then imposition of a monetary penalty (in the form of interest on repayable 340B drug discounts), and then finally with removal—

the harshest sanction—reserved for the worst and rarest cases. Congress explicitly and intentionally reserved removal from the 340B Program for one extreme circumstance—the "systemic and egregious as well as knowing and intentional" violation of the diversion prohibition. *Id.* § 256b(d)(2)(B)(v)(II). Here, HRSA's first course of action was to remove the Sites from the 340B Program.

Because HRSA has not found violations of either the diversion or duplicate discount prohibitions, HRSA has exceeded its statutory authority in ordering the removal of the Sites from the 340B Program.

Accordingly, Sagebrush is likely to prevail on the merits of its APA claim that HRSA exceeded its statutory authority.

**2. HRSA'S Eligibility Determinations Are Arbitrary, Capricious, and Not in Accordance with the Law**

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). "[A]n agency acts arbitrarily when it departs from its precedent without giving any good reason." *N. Calif. Power Agency v. FERC*, 37 F.3d 1517, 1522 (D.C. Cir. 1994). An agency's decision is also arbitrary and capricious when the available record does not "include a rational connection between the facts found and the choice made and indicates [the agency] entirely failed to consider an important aspect of the problem." *Aids Vaccine Advoc. Coal. v. United States Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378, at *11 (D.D.C. Mar. 10, 2025).

**a. HRSA's January 14, 2025 Removal of Sagebrush Sites Named in the NHHS Notice of Subaward Contradicts the Results of HRSA's Certification Process**

"Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy . . . could constitute action that must be

overturned as 'arbitrary, capricious, [or] an abuse of discretion." *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996).

The NHHS Notice of Subaward to Sagebrush explicitly names nineteen Sites eligible for that funding. Through the initial certification process, HRSA determined that each of those Sites was eligible to participate in the 340B Program. HRSA itself seems to acknowledge that the NHHS Notice of Subaward evidences Section 318 funding as its March 21, 2025 letter stated that Site No. STD891132 did not receive funding "as of March 1, 2025," which is when HRSA determined the NHHS Subaward expired. (Charan Decl. ⁋ 22, Ex. O). Ergo, HRSA acknowledges that the Site did receive funding prior to that date, when the most recent NHHS Subaward that Sagebrush had at that time was still in effect.

Yet eighteen of the nineteen named Sites were terminated from the 340B Program on January 14, 2025. In an unexplained and arbitrary reversal of position, HRSA determined that these Sites, provided with the very same funding and servicing the very same Patients, are now somehow ineligible. HRSA's only justifications for its decision amount to either 1) incorrect and subsequently disproven findings related to funding sources, and 2) vague statements regarding "deficiencies" in documentation provided to HRSA from Sagebrush. The purported "deficiencies" in Sagebrush's documentation were never clarified, nor was specific direction provided in order for Sagebrush to determine how each Site was now ineligible.

Because HRSA's decision to remove Sagebrush from the 340B Program was a departure from prior precedent (its previous findings of each Site's eligibility) and because HRSA has failed to provide sufficient reasoning for this sudden self-reversal, Sagebrush is likely to prevail on the merits of its APA claim that HRSA's decision was arbitrary, capricious, and not in compliance with the law.

**b. HRSA's Imminent Termination of the Sites Contradicts Available Evidence and Is Arbitrary, Capricious, and Not in Accordance with the Law**

"The APA's arbitrary and capricious standard requires agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). When conducting judicial review of an administrative agency's decision, "the court 'must confirm that the agency has fulfilled its duty to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Aids Vaccine Advoc. Coal.*, 2025 WL 752378, at *10 (quoting *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016)). An agency's decision is arbitrary and capricious when the available record does not "include a rational connection between the facts found and the choice made and indicates [the agency] entirely failed to consider an important aspect of the problem" *Id.* at *11.

HRSA's reasoning for terminating Site Nos. STD891132 and STD06489 is directly contradicted by the available evidence. To justify the termination of Site No. STD06489, HRSA relied on its incorrect finding that the HIV testing kits shipped to the Site after August 1, 2024, were "purchased with state funds, not Section 318 funding." (Charan Decl. ⁋ 22, Ex. O). This reasoning runs contrary to documentation demonstrating that those kits were purchased using a grant from the CDC, rather than state funds. (Charan Decl. ⁋ 23, Ex. P). The documents provided by HRSA contradict each other—with emails from Dr. Sosa both confirming and denying the use of Section 318 funding to purchase the kits provided to Sagebrush. (ECF 8-3, pp.2, 4). Similarly, HRSA's reasoning for the termination of Site No. STD891132 is based on its finding that the Nevada Subaward expired prior to March 1, 2025, and its apparent refusal to acknowledge the retroactivity of the Notice of Award. (Charan Decl. ⁋⁋ 22, 24, Exs. O, R). Sagebrush has provided the grant's Notice of Award, which, as expected, applies retroactively to March 1, 2025, eliminating any

period of ineligibility following expiration of the prior NHHS Subaward. (Charan Decl. ⁋ 25, Ex. R).[3]

Because the reasoning provided by HRSA to justify the removal of the Sites is directly counter to the evidence, there is no "rational connection between the facts found and the choice made." *Aids Vaccine Advoc. Coal.*, at *10. Therefore, Sagebrush is likely to prevail on the merits of its APA claim that HRSA's decision was arbitrary, capricious, and not in compliance with the law.

**B. Sagebrush Will Suffer Irreparable Harm Absent a Preliminary Injunction**

As an initial matter, economic harm caused by agency action is always irreparable "because the APA's waiver of sovereign immunity does not extend to damages claims," making them "unrecoverable." *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 34 (D.D.C. 2020) (citing 5 U.S.C. § 702 (allowing relief "other than money damages")); *see California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (stating that economic harm caused by federal agency action "is irreparable . . . because the states will not be able to recover monetary damages"); *Clarke v. Off. of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 66 (D.D.C. 2004) (finding irreparable harm because agency was likely immune from suit and resulting losses were therefore unrecoverable).[4]

3 The Nevada grant timing issue extends to sites in Nevada operated by other entities. One would expect HRSA to have terminated all sites subject to the Nevada grant on March 31, 2025. Failing to do so and instead singling out Sagebrush's site would be further evidence of the agency's arbitrary and capricious action.

4 See also *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) ("The threat of unrecoverable economic loss, however, does qualify as irreparable harm."); *Pennsylvania v. Trump*, 930 F.3d 543, 574 (3d Cir. 2019) ("Because the States cannot collect money damages under the APA . . . the States will suffer irreparable harm if the Rules are enforced." (cleaned up)), rev'd on other grounds sub nom. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 697 (2020).

In this case, the economic harm to Sagebrush will be fatal. Sagebrush is a nonprofit entity that relies on the revenues it generates on 340B drugs as its primary revenue source. Sagebrush reinvests most of the savings on its 340B drug purchases back into the communities it serves in the form of free STD testing and other services that are not directly financially supported by the NHHS and CDPH Subawards. If Sagebrush is no longer able to achieve these savings because it lacks access to 340B drugs, it will terminate these community benefits and close its doors. Without preliminary relief, Sagebrush simply will not exist long enough to see the end of this litigation.

Accordingly, Sagebrush has demonstrated that it will suffer irreparable harm absent preliminary relief.

**C. The Balance of Equities and Public Interest Weighs in Sagebrush's Favor**

The balance of equities and the public interest also weigh in favor of preliminary relief. Because this case is against the government, the balance of equities and public interest factors "merge into a single inquiry." *Luokung Tech. Corp. v. U.S. Dep't. of Defense*, 538 F. Supp. 3d 174, 194 (D.D.C. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). That is because "the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original) (citing *Nken*, 556 U.S. at 435).

There is a "substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (*quoting Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)); *see id.* (holding "[t]here is generally no public interest in the perpetuation of unlawful agency action."); *see also N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("The public interest is served when administrative agencies comply with their obligations under the APA."); *Luokung Tech. Corp.*, 538 F. Supp. 3d at 195. There is significant public interest in the continued

participation of covered entities in the 340B Program as well—participation that may be in jeopardy if HRSA is permitted to remove covered entities in circumstances other than those that Section 340B permits.

In the instant case, there is negligible cost to Defendants if preliminary relief is provided. When balanced with the significant, likely fatal, cost to Plaintiff, any potential costs incurred by Defendants are unquestionably outweighed.

## CONCLUSION

The Court should grant Sagebrush's Motion and issue a Preliminary Injunction enjoining HRSA from terminating Sagebrush and Sagebrush's Sites from the 340B Program and requiring repayment of received benefits or other monetary penalties.

Dated: April 4, 2025

**ARENTFOX SCHIFF LLP**

By: /s/ James H. Hulme

James H. Hulme (Bar No. 323014)
Douglas A. Grimm (Bar No. 495805)
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344
Ph: 202.857.6000
Fax: 202.857.6395
james.hulme@afslaw.com
douglas.grimm@afslaw.com
*Counsel for Plaintiff Sagebrush Health Services*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2025, I will electronically file a true and correct copy of the foregoing document with the Court using the CM/ECF system, which will then send a notification of such filing to the following:

Kimberly Stratton
U.S. Attorney's Office
601 D Street N.W.
Washington, DC 20530
202.417.4216
kimberly.stratton@usdoj.gov

*Counsel for all Defendants*

/s/ James H. Hulme
James H. Hulme