UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

            Plaintiff,

    v.

ROBERT F. KENNEDY, JR., Secretary of
Health and Human Services et al.,

           Defendant.

Civil Action No. 25-0915 (JEB)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY
<u>INJUNCTION</u>**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... ii

Background ......................................................................................................... 1

    I.      340B Program ............................................................................ 1

    II.     Sagebrush's Inability to Confirm Program Eligibility ............................ 3

         A.     Site No. STD06489 .................................................... 4

         B.     Site No. STD891132 .................................................. 5

         C.     Other Sagebrush Sites .............................................. 6

Legal Standard .................................................................................................... 7

Argument ............................................................................................................ 8

    I.      Sagebrush is Unlikely to Succeed on the Merits of the Underlying Complaint. .... 8

         A.     Sagebrush is Unlikely to Prevail on its APA Claim. ................................. 8

         B.     Sagebrush is Unlikely to Succeed on Any Due Process Claim. ............... 11

    II.     Sagebrush is Unable to Demonstrate Immediate Irreparable Harm Absent Court Intervention. ................................................................................. 13

    III.    The Balance of Equities and the Public Interest Weigh Against Injunctive Relief. .................................................................................. 15

Conclusion ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
   38 F. Supp. 2d 114 (D.D.C. 1999) ......................................................................................... 8

*Apex, Inc. v. FDA*,
   449 F.3d 1249 (D.C. Cir. 2006) .............................................................................................. 8

*Atherton v. D.C. Off. of the Mayor*,
   567 F.3d 672 (D.C. Cir. 2009) .............................................................................................. 11

*Biovail Corp. v. FDA*,
   448 F. Supp. 2d 154 (D.D.C. 2006) ........................................................................................ 8

*Bowen v. Am. Hosp. Ass'n*,
   476 U.S. 610 (1986) ................................................................................................................. 8

*Butera v. District of Columbia*,
   235 F.3d 637 (D.C. Cir. 2001) .............................................................................................. 12

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ................................................................................................ 7

*Colo. Wild Horse v. Jewell*,
   130 F. Supp. 3d 205 (D.D.C. 2015) ...................................................................................... 15

*Damus v. Nielsen*, Civ. A.,
   No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ............................................... 7

*Davis v. Pension Ben. Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) .............................................................................................. 7

*Decatur Liquors v. District of Columbia*,
   478 F.3d 360 (D.C. Cir. 2007) .............................................................................................. 12

*Doe v. District of Columbia*,
   93 F.3d 861 (D.C. Cir. 1996) ................................................................................................ 11

*Elkins v. District of Columbia*,
   690 F.3d 554 (D.C. Cir. 2012) .............................................................................................. 11

*Emily's List v. FEC*,
   362 F. Supp. 2d 43 (D.D.C. 2005) ........................................................................................ 13

*Hospitality Staffing Sols., LLC v. Reyes*,
   736 F. Supp. 2d 192 (D.D.C. 2010) ........................................................................................ 7

*Katz v. Georgetown*,
   *Uni.*, 246 F.3d 685 (D.C. Cir. 2001) ...................................................................................... 8

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ............................................................................................. 7, 17

*Lewis v. District of Columbia*,
   161 F. Supp. 3d 15 (D.D.C. 2015) ........................................................................................ 12

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360, (1989) ................................................................................................................ 8

*Medina v. District of Columbia*,
   517 F. Supp. 2d 272 (D.D.C. 2007) ...................................................................................... 11

*Nat'l Archives and Records Admin. v. Favish*,
   541 U.S. 157 (2004)................................................................................ 10, 11
*Nken v. Holder*,
   556 U.S. 418 (2009)...................................................................................... 15
*Novartis Pharms. Corp. v. Johnson*,
   102 F.4th 452 (D.C. Cir. 2024)..................................................................... 16
*Novartis*,
   104 F.4th ....................................................................................................... 17
*Power Mobility Coal. v. Leavitt*,
   404 F. Supp. 2d 190 (D.D.C. 2005)............................................................... 13
*Privacy Info. Ctr. v. Dep't of Just.*,
   15 F. Supp. 3d 32 (D.D.C. 2014)................................................................... 14
*Prop. of the People v. Dep't of Just.*,
   310 F. Supp. 3d 57 (D.D.C. 2019)................................................................. 10
*Pursuing Am.'s Greatness v. FEC*,
   831 F.3d 500 (D.C. Cir. 2016)......................................................................... 7
*Save Jobs USA v. Dep't of Homeland Sec.*,
   105 F. Supp. 3d 108 (D.D.C. 2015)............................................................... 13
*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011).......................................................................... 7
*Small v. Avanti Health Sys, LLC*,
   661 F.3d 1180 (9th Cir. 2011)........................................................................ 16
*Solomon v. Off. of Architect of Capitol*,
   539 F. Supp. 2d 347 (D.D.C. 2008)............................................................... 13
*Texas v. United States*,
   86 F. Supp. 3d 591 (S.D. Tex. 2015)............................................................. 16
*Toms v. Off. of the Architect of the Capitol*,
   650 F. Supp. 2d 11 (D.D.C. 2009)........................................................... 12, 13
*Tourus Records, Inc. v. DEA*,
   259 F.3d 731 (D.C. Cir. 2001).......................................................................... 8
*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006).......................................................................... 8
*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 (D.C. Cir. 1977)........................................................................ 13
*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982).................................................................................. 15, 16
*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008)........................................................................... 7, 14, 16
*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985).................................................................. 13, 14
*Wis. Gas*,
   758 F.2d ........................................................................................................ 15

**Statutes**

5 U.S.C. § 702.................................................................................................... 8
5 U.S.C. § 706.................................................................................................... 8

42 U.S.C. § 247c ................................................................................................... 2, 9

42 U.S.C. § 256(a)(4)(K) ........................................................................................ 6

42 U.S.C. § 256b ..................................................................................................... 1

42 U.S.C. § 256b(a)(4)(K) ................................................................................ 2, 9, 12

42 U.S.C. § 256b(a)(5)(A) ...................................................................................... 3

42 U.S.C. § 256b(a)(5)(B) ................................................................................ 2, 9, 11

42 U.S.C. § 256b(a)(5)(C) ..................................................................................... 3, 4

42 U.S.C. §§ 256b(d)(2)(B) ..................................................................................... 2

Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services, the Department of Health and Human Services (the "Department"), the Health Resources and Services Administration (the "Administration" or "HRSA"), and its Administrator (collectively, "Defendants"), through undersigned counsel, respectfully submit this opposition to the motion for preliminary injunction (ECF No. 14, "Plaintiff's Motion") filed by Plaintiff Sagebrush Health Services ("Plaintiff" or "Sagebrush").

Sagebrush is unlikely to prevail on its Administrative Procedure Act ("APA") claims regarding Sagebrush Connecticut site STD06489 because the evidentiary record shows that this site had not received 318 funding after August 1, 2024, and thus fails to meet the threshold statutory requirements to be considered a covered entity. Sagebrush is also unlikely to prevail on the merits of its claims related to its eighteen Nevada sites because those sites were terminated on January 14, 2025 – before the instant lawsuit was initiated – because Sagebrush was unable to demonstrate that those sites met the statutory threshold requirements to be considered covered entities.

Further, Sagebrush's Motion should be denied because Sagebrush cannot demonstrate immediate irreparable harm warranting preliminary relief, and the balance of equities does not favor Sagebrush's continued participation in the 340B Program through entities that cannot show that they meet the statutory threshold requirements to be deemed covered entities.

## BACKGROUND

## I.    <u>340B Program</u>

Congress established the 340B Program, whereby certain statutorily defined healthcare providers ("covered entities") purchase certain drugs ("covered outpatient drugs") at a discount from participating drug manufacturers. 42 U.S.C. § 256b. Drugmakers participate in the program because it is a condition for their products to be reimbursable under Medicare Part B and Medicaid.

Under the 340B Program, one category of eligible covered entity is "[a]n entity receiving funds under section 247c of this title [Section 318 of the Public Health Service Act, 42 U.S.C. § 247c] (relating to treatment of sexually transmitted diseases) . . . *through* a State or unit of local government, but only if the entity is certified by the Secretary pursuant to paragraph [(a)](7)." 42 U.S.C. § 256b(a)(4)(K) (emphasis added). Section 247c, in turn, allows the Secretary to make "grants" to States and local government units for the prevention and control of sexually transmitted diseases. 42 U.S.C. § 247c. Thus, in order for an entity to qualify as a covered entity under section 256b(a)(4)(K), that entity must receive federal funds, which includes good or services, that were provided to the State or local government (i.e., "through a State or unit of local government") for STD treatment or control. In other words, the source of the funds from the State or local government must be a federal grant, as opposed to the covered entity simply receiving funds directly from the State or local government from non-federal funds.

Such fund recipients may participate in the 340B Program if they are verified to be eligible for the Program. *See* 42 U.S.C. §§ 256b(d)(2)(B) (requiring the Department to develop procedures to verify all 340B participating covered entities and to establish an identification system for covered entity sites), 256b(a)(7) (certification requirement for specific covered entity types, including covered entities under § 256b(a)(4)(K)), 256b(a)(9) (requiring the Department to notify participating manufacturers of the identity of participating covered entities, as well as those who are no longer certified under § 256b(a)(7)).

In addition to the basic parameters of eligibility set forth in section 256b(a)(4), the statute also imposes certain obligations and restrictions on participating covered entities. First, the covered entity can only resell or otherwise transfer the discount drugs to its patients. *See* 42 U.S.C. § 256b(a)(5)(B). Second, covered entities must help ensure that drugmakers are not subject to a

"duplicate discount" for covered outpatient drugs. *See* 42 U.S.C. § 256b(a)(5)(A). These are known as the prohibitions on "diversion" and "duplicate discounting," respectively.

The 340B Program is administered by the Administration, and its day-to-day operations are handled by a component called the Office of Pharmacy Affairs. The Office of Pharmacy Affairs uses its database, the Office of Pharmacy Affairs Information System ("OPAIS" or the "Pharmacy Affairs System"), to help track and oversee covered entities participating in the 340B Program. The statute provides the Secretary and the Office of Pharmacy Affairs various tools and procedures to ensure program integrity, including that the Secretary may audit covered entities to ensure compliance with the prohibitions on diversion and duplicate discounting. *See* 42 U.S.C. § 256b(a)(5)(C). Similarly, manufacturers of covered outpatient drugs may, at the Secretary's or the manufacturers' expense, audit covered entities, "acting in accordance with procedures established by the Secretary relating to the number, duration, and scope of audits." *Id.* Following an audit of potential violations of the diversion and duplicate discount provisions, the Secretary may, after notice and a hearing, find a covered entity liable to a drugmaker for repayment of the improper discount amounts. *See id.* § 256b(a)(5)(D).

## II.    <u>Sagebrush's Inability to Confirm Program Eligibility.</u>

By letter dated February 2, 2024, the Administration informed Sagebrush that it was conducting a review of multiple Sagebrush sites for compliance with the 340B Program requirements, with a focus on grant funding by the Centers for Disease Control and Prevention ("CDC"). Health Resources & Services Admin. Letter of Feb. 2, 2024 (ECF No. 14-2 at 11-14). This letter included eleven inquiries requiring responses from Sagebrush to show Program eligibility and compliance. *See id.* Sagebrush responded to this inquiry in part on March 4, 2024. *See* Sagebrush Letter of Mar. 4, 2024 (ECF No. 14-2 at 16-30). From February 2, 2024 through December 20, 2024, the Administration evaluated Sagebrush's documentation regarding grant

agreements and notice of funding availability, along with documentation provided to the Administration by the CDC, the Connecticut Department of Public Health, and the Nevada Department of Health and Human Services. *See* Health Resources & Services Admin. Letter of Dec. 20, 2024 (ECF No. 4 at 71–72).

### A.    Site No. STD06489.

Sagebrush previously had a cooperative agreement with the Connecticut Department of Public Health for 100 HIV test kits that expired on July 31, 2024. *See* Health Resources & Services Admin. Letter Sept. 19, 2024 (ECF No. 14-2 at 66). On August 6, 2024, Sagebrush emailed the Connecticut Department of Public Health (CDPH) to "establish agreed-upon, written expectations" and "the number of test kits to request". Jami Dybik, Vice President of Sagebrush, Email dated August 6, 2024 (ECF No. 14-2 at 105-106). On September 3, 2024, Lynn Sosa, M.D., replied on behalf of the Connecticut Department of Public Health, explaining CDPH's reporting procedure and summarizing what CDPH's records reflected on the number of test kits provided by CDPH that Sagebrush had administered to patients. *See id*. at 105. Sosa offered to send Sagebrush an additional fifty HIV and twenty-five Hepatitis C (HCV) tests kits. *Id*. On September 25, 2024, Sagebrush informed the Administration that Sagebrush accepted fifty HIV kits from the Connecticut Department of Public Health on or about September 4, 2025. *See* Sagebrush letter to the Administration dated Sep. 25, 2024 (ECF No. 14-2 at 68). On December 20, 2024 and January 13, 2025, the Administration notified Sagebrush that the Administration had confirmed with the Connecticut Department of Public Health that certain Sagebrush sites did not receive 318 funding. *See* Health Resources & Services Admin. Letter of January 13, 2025 (ECF No. 14-2 at 90). On March 21, 2025, the Administration informed Sagebrush that while the Connecticut Department of Public Health had a cooperative grant agreement with the Centers for Disease Control and Prevention ("CDC"), the fifty HIV test kits that were shipped to site STD06489 after August 1,

2024, were purchased with state funds and not 318 funding. *See* Health Resources & Services Admin. Letter of Mar. 21, 2025 (ECF No. 14-2 at 98). The Administration notified Sagebrush that Site STD06489 would be terminated from the 340B Program on March 28, 2024. *See id*. at 99.

On March 27, 2025, Sagebrush initiated this lawsuit to block the termination of Site STD06489. *See* Compl. (ECF No. 1); *see also* Mot. for Temporary Restraining Order (ECF No. 2). In support of its opposition to Sagebrush's Motion for a Temporary Restraining Order, the Administration provided an email from the Connecticut Department of Public Health which confirmed that the fifty kits sent to Sagebrush were purchased with state funds. *See* (ECF 8-3 at 2). On April 7, 2025, the parties filed a joint status report. *See* ECF No. 15. The Administration therewith provided an email from the Connecticut Department of Public Health confirming that although the state uses federal funds when funds are available, the fifty HIV tests kits that Sagebrush ordered on September 4, 2024, were purchased with state funds. *See* ECF No. 15-1 at 33-34. The Connecticut Department of Public Health also provided its requisition forms showing the fifty test kits were purchased with state funds. *See* (ECF No. 15-1 at 41-43). To date, the record does not show that Sagebrush has contacted the Connecticut Department of Public Health regarding the fifty HIV test kits it has relied on to support its claim that Site STD06489 received Section 318 funds. On April 11, 2025, the Administration informed Sagebrush that it would hold the termination of Site STD06489 in abeyance until April 25, 2025. *See* Ex. A hereto: Health Resources & Services Admin. Email to Sagebrush dated April 11, 2025.

**B.    Site No. STD891132.**

Sagebrush contacted the Nevada Department of Health and Human Services and obtained a retroactive Notice of Subaward for Site No. STD891132, resolving the eligibility issues for this site before it was terminated from the 340B Program. *See* (ECF No. 15-1 ¶¶ 1,9).

### C.    Other Sagebrush Sites

This Notice of Subaward also included eighteen other Sagebrush sites that already had been terminated from the 340B program on January 14, 2025, for failure to meet the eligibility requirement of 42 U.S.C. § 256(a)(4)(K). *See* (ECF No. 15-1 ¶ 1). The same eighteen Sagebrush sites were the subject of Civil Action No. 25-0127, which Sagebrush voluntarily dismissed on February 21, 2025. *See Sagebrush v. Becerra*, Civ. A. No. 25-0127 (JEB) (D.D.C. filed Jan. 16, 2025). While the Notice of Subaward is retroactive and covers certain Sagebrush Nevada sites from March 1, 2025 through February 28, 2026, the eighteen sites that Sagebrush seeks to reinstate had eligibility defects that pre-date this Subaward and they therefore were properly terminated on January 14, 2025. During the Administration's nearly year-long inquiry, it was discovered that most of Sagebrush's Nevada sites did not receive any 318 Funding at any point in time. *See* Health Resources & Services Admin. letter dated December 20, 2024 (ECF No. 14-2 at 71-72). Moreover, other Nevada sites stopped receiving funding after January 1, 2023, or February 1, 2024. *See id.*

On or about April 3, 2025, Sagebrush requested that the Administration reinstate the eighteen sites that had been terminated on January 14, 2025. *See* Britton Decl. ¶ 13. On April 7, 2025, the Administration informed Sagebrush that if Sagebrush believed the already-terminated sites were now eligible for the 340 Program, Sagebrush should follow the standard procedures to register the sites. *Id.* ¶ 14. On April 8, 2025, Sagebrush requested that the Administration immediately reinstate the sites that it alleges were wrongfully terminated from the program in January 2025. *See* Ex. A hereto: Mithila Urs email to the Administration dated April 8, 2025. On April 11, 2025, the Administration informed Sagebrush that it was reviewing Sagebrush's request to reinstate the eighteen sites, but it encouraged Sagebrush to register the sites during the open registration period. *See* Ex. A hereto: Michelle Herzog email to Mithila Urs dated April 11, 2025.

As of the date of this filing, Sagebrush has submitted reinstatement requests for only eight of the eighteen sites it claimed were eligible for reinstatement in the program. Britton Decl. ¶ 17.

## LEGAL STANDARD

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The movant bears the burden of persuasion and must make "a clear showing" that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). The D.C. Circuit has hinted, though not held, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*).

**ARGUMENT**

I.  **Sagebrush is Unlikely to Succeed on the Merits of the Underlying Complaint.**

A plaintiff that cannot demonstrate a significant likelihood of success on the merits has no hope of obtaining preliminary injunctive relief. *See Trudeau v. FTC*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006); *Katz v. Georgetown Uni.*, 246 F.3d 685, 688 (D.C. Cir. 2001); *Apex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006). "[A]bsent a 'substantial indication' of likelihood of success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, 159 (D.D.C. 2006) (quoting *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)). Here, Plaintiff's APA claims will fail as a matter of law.

    A.  **Sagebrush is Unlikely to Prevail on its APA Claim.**

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is arbitrary, capricious, exceeds statutory authority, or was taken without observance of the procedure required by law. 5 U.S.C. § 706. The reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378, (1989) (internal quotations omitted). At a minimum, agencies must have considered relevant facts and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001).

Sagebrush alleges that the Administration's power to remove covered entities from the 340B Program is limited to systemic and egregious violations of the statutory prohibition regarding

- 8 -

diversion. *See* Pl. Br. (ECF No. 2 at 9). The portions of the statute that Plaintiff identifies, however, are irrelevant to the termination of ineligible sites.

Plaintiff points to statutory sections that outline compliance, auditing, and a process for sanctioning entities that engage in diversion or duplicate discounting, 42 U.S.C. § 256b(a)(5)(B) and (a)(5)(A), respectively. *See* Pl. Br. (ECF No. 2 at 10); *see also* Compl. (ECF No. 1) ¶¶ 88, 98-101. Those provisions are irrelevant to this action, however. Plaintiff's sites were not terminated for diversion or duplicate discounting. Plaintiff's entities were terminated from the Program because Plaintiff failed to show that its sites satisfied the threshold statutory eligibility requirement for the sites to participate in the 340B Program, as prescribed by 42 U.S.C. § 256b(a)(4)(K).

Defendants' actions were not arbitrary or capricious. To the contrary, the relevant factors were considered. The part of the 340B statute applicable to Plaintiff's sites unquestionably requires them to "receiv[e] funds . . . through a State or unit of local government" pursuant to Section 318 (i.e., 42 U.S.C. § 247c). *See id*. The record shows that Sagebrush and the Connecticut Department of Public Health no longer have a cooperative agreement. *See* Health Resources & Services Admin. Letter of Sept. 19, 2024 (ECF No. 14-2 at 66). Sagebrush was able to engage the Nevada Department of Health and Human Services to obtain documentation of continued partnership, *see* Confirmation of Continued Partnership with Sagebrush Health Services (ECF No. 14-2 at 108-109), but Sagebrush has not shown that it has a similar, current partnership with Connecticut. As early as January 13, 2025, Sagebrush was put on notice that the fifty kits upon which it seeks to rely to establish eligibility for its Connecticut site for the program were not purchased with Section 318 Funding. *See* Health Resources & Services Admin. Letter of January 13, 2025 (ECF No. 14-2 at 90). And while the Connecticut Department of Public Health uses federal funds when available, the fifty kits that Sagebrush relies on were purchased with state funds. *See* ECF No. 15-

1 at 33, 35. The Connecticut Department of Public Health has provided unequivocal records showing that the fifty kits were purchased with state funds. *See* ECF No. 15-1 at 41-43. To the extent that Sagebrush alleges any government misconduct in connection with Sagebrush's receipt of kits purchased with state funds, these claims are nothing more than bald conjecture. While allegations of government misconduct are "'easy to allege and hard to disprove,'" mere speculation does not equal evidence of government impropriety. *See Prop. of the People v. Dep't of Just.*, 310 F. Supp. 3d 57, 70 (D.D.C. 2019) (quoting *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 175 (2004)). Here, the Administration has produced the entirety of its communications with the Connecticut Department of Health. The record is clear that Sagebrush Site No. STD06489 does not meet the threshold statutory eligibility requirements to participate in the 340B Program. For its part, Defendant will not speculate about why Sagebrush does not appear to have contacted the Connecticut Department of Health about the test kits upon which it seeks to base its eligibility.

The same is true for the eighteen Nevada sites. At the time of termination, the sites were not covered entities. Most of the sites had not received Section 318 Funding at all. For the remaining sites, Section 318 Funding had either ceased in January 2023 or February 2024. *See* Health Resources & Services Admin. letter dated December 20, 2024 (ECF No. 14-2 at 71-72). While Sagebrush claims that the sites are eligible now, this does not change the fact that at the time the Administration concluded its investigation and terminated the sites, they were ineligible. Moreover, the recent Notice of Subaward is retroactive to March 1, 2025, not January 14, 2025, the date the sites were terminated. Sagebrush can register these sites with the newly executed Notice of Subaward and has already begun that process so for at least some of the sites.

In sum, by the plain terms of the statute, Site No. STD06489 is ineligible to participate in the Program, as Defendants concluded after carefully considering all relevant factors and providing

appropriate time and opportunity for Sagebrush to establish eligibility. The same is true for the eighteen Nevada sites that were terminated on January 14, 2025. That the Nevada sites may now be deemed eligible does not cast any doubt on the propriety of the Defendants' terminations of the sites in January. Accordingly, Plaintiff's APA claim fails on the merits.

**B.      Sagebrush is Unlikely to Succeed on Any Due Process Claim.**

Insofar as Sagebrush alleges a due process claim, this claim is fatally flawed. Sagebrush alleges that the Administration's actions were "contrary to fundamental due process." *See* Pl's Mot. (ECF No. 14-1 at 1, 2). The Fifth Amendment provides that no person shall be "deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. As an initial matter, Sagebrush neither identifies whether its procedural or substantive due process rights were violated, nor does it plead sufficient facts that could give rise to an inference of a violation. *See id*.

In any event, any procedural due process claim fails. A "procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). "At a minimum, a procedural due process claim 'requires the plaintiff to identify the process that is due.'" *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 281 (D.D.C. 2007) (quoting *Doe v. District of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996)); *see also Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a procedural due process claim, a complaint must suggest 'what sort of process is due.'").

Here, Sagebrush fails to identify any process it was due that the Defendants failed to provide. Plaintiff identifies the audit procedure related to the diversion and duplicate discount prohibitions, 42 U.S.C. § 256b(a)(5)(B), (A). *See* Pl's Mot. (ECF No. 14-1 at 11-13). However, because the Sagebrush sites were not proposed to be, or were, terminated from the Program for violating those statutory prohibitions, any policy or procedure related to those provisions is

irrelevant. The entities at issue were terminated because they were deemed ineligible to participate in the 340B Program when Sagebrush failed to show that those entities were "receiving funds" "through" a state or local government entity, as statute requires. *See* 42 U.S.C. § 256b(a)(4)(K). The termination came after Sagebrush was given nearly a year to provide proof of funding for the relevant entities, and after the Defendant confirmed that neither the Connecticut Department of Public Health nor the Nevada Department of Health and Human Services provided funding to the subject entities.

Since Sagebrush cannot identify the process it allegedly was due but was denied, any procedural due process claim will not survive a dispositive motion. *See Lewis v. District of Columbia*, 161 F. Supp. 3d 15, 30–31 (D.D.C. 2015) (dismissing plaintiff's due process claims "[b]ecause [the complaint] is devoid of allegations as to the actual process purportedly denied . . . the [complaint] does not raise [plaintiff's] procedural due process claim 'above the speculative level' to the realm of plausibility").

To the extent that Sagebrush alleges a substantive due process claim, this claim likewise is fatally flawed. "[S]ubstantive due process constrains only egregious government misconduct," *Decatur Liquors v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007). Thus, "a substantive due process violation will only occur where the government's conduct is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Toms v. Off. of the Architect of the Capitol*, 650 F. Supp. 2d 11, 25–27 (D.D.C. 2009) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001)). Sagebrush cannot point to any egregious government conduct at all, let alone any that would shock the conscience. Defendants collected information from Sagebrush and state entities for almost a year before it terminated the ineligible sites. Sagebrush was afforded multiple opportunities to establish the basic eligibility criteria for

participation in the 340B Program under § 256b(a)(4)(K), yet to date Sagebrush has not shown that it received state or local funding for Site No. STD06489. Nor has Sagebrush shown the eighteen Nevada sites' eligibility at the time that they were terminated. Moreover, allegations of perceived procedural deficiencies do not make out a substantive due process claim. *See Toms*, 650 F. Supp. 2d at 25–27 (finding that "plaintiff's perceived procedural deficiencies" did not constitute a due process violation); *Solomon v. Off. of Architect of Capitol*, 539 F. Supp. 2d 347, 350-51 (D.D.C. 2008) (dismissing substantive due process claim, as procedural issue did not meet "conscience-shocking" test). In sum, Plaintiff's due process claim, no matter how construed, fails.

## II.    Sagebrush is Unable to Demonstrate Immediate Irreparable Harm Absent Court Intervention.

The standard for irreparable harm is high. "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is *certain, great and actual*—not theoretical— and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (cleaned up; emphasis in original; quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *see also Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112-13 (D.D.C. 2015).

Purely economic loss, even when large sums of money are involved, typically will not constitute irreparable injury. *See Wis. Gas*, 758 F.2d at 674 (holding that it is "well settled that economic loss does not in and of itself constitute irreparable harm"); *Emily's List v. FEC*, 362 F. Supp. 2d 43, 52 (D.D.C. 2005). Monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business. *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C. Cir. 1977). The movant may not, however, rely on "bare allegations" that the business will not survive absent a preliminary injunction. *Wis. Gas Co.*, 758 F.2 at 674. Instead, the movant must provide some evidence of irreparable harm:

"the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* at 674 (internal quotation marks and citation omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Privacy Info. Ctr. v. Dep't of Just.* 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (citation omitted). Thus, legal authority is clear that, to meet the standard for irreparable harm, the movant must present sufficient evidence that the purported injury is certain, great, actual, imminent, and beyond remediation.

Sagebrush has not shown that it will suffer an "irreparable" injury absent a preliminary injunction. Sagebrush claims "340B drugs as its primary revenue source" and asserts that, if Sagebrush is no longer able to achieve these savings, it will "close its doors." Pl. Mot. (ECF No. 14-1 at 17). In terms of financial loss, the 340B Program allows eligible covered entities to purchase covered outpatient drugs at a discount. While it may harm Sagebrush if it can no longer make purchases at a discount, it does not follow that the alleged financial harm is irreparable, as discounted drug purchasing is not Sagebrush's only form of funding. This is confirmed by the fact that Sagebrush has terminated multiple sites on its own and has remained operational. *See* Compl. (ECF No. 1 ¶ 40) ("From time to time, Sagebrush has removed [Pharmacy Affairs System] Sites (at its own discretion) when Subaward Service ceased based on operational necessities or efficiencies."). Moreover, because the loss Sagebrush has identified is for the most part financial,

it cannot support an irreparable harm finding unless Sagebrush establishes that these losses will indeed threaten the continued existence of its businesses. All that Sagebrush has offered is *ipse dixit*, and indeed Sagebrush's own self-termination of sites strongly suggests that assertions of imminent closures are overblown.

That is, the fact that Sagebrush remains operational despite the self-terminations and the January 2025 termination of the Nevada sites belies any suggestion that absent an injunction Sagebrush's ability to continue operations will be immediately affected. For its part, Sagebrush has offered only bare allegations that, absent an injunction, the entities will not survive. Sagebrush has not submitted audited financial statements or other detailed materials to demonstrate the impact the requested injunction would have on its viability or the dollar deficit that allegedly would force it to close its doors. Moreover, Sagebrush has not shown that its business's viability will be imperiled during the two and a half months until any eligible Nevada sites for which it has sought registration become eligible for 340B discounts. *See* Ex. A hereto: Michelle Herzog email to Mithila Urs dated April 7, 2025 ("The current registration period runs from April 1-April 15, 2025, with a start date of July 1 for successful registrants."). Such "bare allegations" that, absent an injunction, Plaintiff will suffer a debilitating loss or that it will be forced to repay some yet to be identified sum to manufacturers at some indefinite time in the future are insufficient to support a finding of irreparable harm and certainly not one that is imminent. *See Wis. Gas*, 758 F.2d at 654.

III.    **The Balance of Equities and the Public Interest Weigh Against Injunctive Relief.**

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015). Courts must "[give] particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S.

305, 312-13 (1982). In this case, the balance of equities and the public interest tip strongly in favor of the Government, as "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys, LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).

Government entities and 340B Program participants—including drug manufacturers— have a significant interest in Program integrity. The manufacturers' interest is demonstrated by the fact that they have sued the United States Department of Health and Human Services, alleging that the Department wrongly allowed Sagebrush sites that were ineligible to participate in the 340B Program to make discounted drug purchases. *See Amgen, Inc. v. Becerra*, Civ. A. No. 24-3571 (JEB) (D.D.C.). State and local governments likewise have an interest in the integrity of their grant programs. This concern is underscored by the litigation upon which Plaintiff relies in questioning the Administration's ability to ensure compliance with the statutory program eligibility requirements. *See* Pl's Mot (ECF No. 14-1 at 11-12) (citing *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 455, 460 (D.C. Cir. 2024) (upholding drug manufacturers' 340B contractual provisions aimed at curtailing "abuse")).

Accordingly, Sagebrush cannot meet its burden of establishing "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *Texas v. United States*, 86 F. Supp. 3d 591, 675 (S.D. Tex. 2015) ("If no public interest supports granting preliminary relief, such relief should ordinarily be denied, even if the public interest would not be harmed by one." (cleaned up)), *aff'd*, 809 F.3d 134 (5th Cir. 2015); *see also Weinberger*, 456 U.S. at 312 ("[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). Any claim that Defendants failed to "abide by the federal laws that govern their existence and operations" is meritless, as shown herein and as this Court previously concluded in another action brought by Sagebrush. *See* Pl's Mot. (ECF No. 14-

1 at 17) (quoting *League of Women Voters*, 838 F.3d 1); *see also* Min. Order of Jan. 31, 2025 &

Tr. of Jan. 31, 2025 Hr'g (ECF No. 27), *Sagebrush v. Fink*, Civ. A. No. 25-0127 (JEB) (D.D.C.).

The public interest is served here by ensuring that only entities that are statutorily eligible at the

operative time receive 340B discounts, as all involved – Defendants, state health departments,

manufacturers, and providers – benefit from a program that remains viable by ensuring that the

340B Program's substantial benefits are not abused, for such abuses come "at great cost." *Novartis*,

104 F.4th at 455. In sum, the public interest weighs heavily against Sagebrush's attempt to continue

the participation of ineligible entities in the 340B program through preliminary injunctive relief.

## CONCLUSION

For these reasons, Plaintiff's motion for preliminary injunctive relief should be denied.

Dated: April 22, 2025                          Respectfully submitted,

                                               EDWARD R. MARTIN, JR., D.C. Bar #481866
                                               United States Attorney


                                               By: _____*/s/Kimberly A. Stratton*_____
                                               KIMBERLY A. STRATTON
                                               P.A. Bar #327725
                                               Assistant United States Attorney
                                               601 D Street, NW
                                               Washington, DC 20530
                                               (202) 417-4216
                                               kimberly.stratton@usdoj.gov

                                               *Attorneys for the United States of America*

- 17 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

        Plaintiff,

    v.

ROBERT F. KENNEDY, JR., Secretary of
Health and Human Services et al.,

        Defendants.

Civil Action No. 25-0915 (JEB)

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's motion for preliminary injunction and Defendants' opposition thereto, and the entire record herein, it is hereby

ORDERED that Plaintiff's Motion is Denied.


SO ORDERED:


_____
Date

_____
CHIEF JUDGE JAMES E. BOASBERG
United States District Judge