IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES,<br><br>*Plaintiff,*<br><br>v.<br><br>ROBERT F. KENNEDY, JR., Secretary of Health and Human Services, et al.,<br><br>*Defendants.* | Civil Action No. 1:25-cv-00915-JEB |

## **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF**
## **MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Sagebrush Health Services ("Sagebrush"), through counsel, hereby submits additional briefing regarding the question posed by the Court during the April 25, 2025 status conference on Plaintiff's April 4, 2025 motion for a preliminary injunction. There are two questions: one to be answered by Sagebrush and the second to be answered by Defendants.

First, for Sagebrush, regarding the eighteen Nevada Sites, did Sagebrush inform the Health Resources and Services Administration ("HRSA") prior to HRSA's January 15, 2025 termination of Sagebrush's eighteen Nevada Sites that the Sites were at that time operating under a federal subaward issued by the State of Nevada? The answer is yes.

Second, for HRSA, why did it state to Sagebrush in its January 13, 2025 termination decision (the final administrative action under review in this case) that the funds provided by the Connecticut Department of Public Health ("CDPH") to Sagebrush were state funds, not grant funds, when as of that time CDPH had told HRSA the opposite—that Sagebrush was receiving grant funds in Connecticut?

**I. Nevada Sites**

    **a. Sagebrush Provided HRSA Grant Information Prior to the Sites' Termination**

In June 2024, Sagebrush notified HRSA that the eighteen Nevada Sites at issue in this case were recipients of Section 318 funding under the Nevada Department of Health and Human Services ("NHHS") subaward for the period February 1, 2024, through January 31, 2025 (subsequently extended by NHHS to February 28, 2025) (the "2024 Subaward"). These communications occurred through the Office of Pharmacy Affairs Information System ("OPAIS")—HRSA's own 340B covered entity tracking database. On January 14, 2025, during the term of the 2024 Subaward, HRSA terminated the eighteen Sites for failure to receive Section 318 funding (the "Removed Sites").

In June 2024, Sagebrush provided HRSA with key details of the 2024 Subaward as part of HRSA's annual covered entity recertification process for fifteen Removed Sites. Each Site's entry in OPAIS included the underlying federal grant number, the subaward period, and a description of the funding provided.

The remaining three Removed Sites were newly participating Sites that, because of their tenure in the 340B Program, were not yet required to recertify. For these three Removed Sites, Sagebrush provided the same or similar details regarding the 2024 Subaward as for the other fifteen. HRSA approved these three Removed Sites for participation in the 340B Program effective July 1, 2024.

Evidence of these communications is available on OPAIS directly. Each Site is tracked individually and the publicly viewable entries list, among other things, the grant number, the period during which Section 318 funding or in-kind support (for example, test kits and condoms) was received, the last recertification date, and the termination date. The below screenshot is taken from

OPAIS and is representative of each of the eighteen Removed Sites' OPAIS entries (with the exception of the three newly-approved Removed Sites that were not yet recertified and therefore list no recertification date), and shows that information for each of the Removed Sites had been updated publicly to account for the 2024 Subaward[1]. (Declaration of Guru Charan "Charan Decl." ⁋ 3, Ex. A).



Additional details appear under page submenus that track the history of a covered entity, including its initial registration, recertification, and other administrative events. Each entry is timestamped. The below screenshot is taken from the OPAIS history for one of the Removed Sites

---

[1] *Health Res. & Serv's Admin. Off. of Pharm. Affairs 340B OPAIS Covered Entity Details*, (Apr. 29, 2025) *https://340bopais.hrsa.gov/cedetails/94073*.

that recertified its eligibility in June 2024 and is representative of the OPAIS history for the other Removed Sites. (Charan Decl. ¶ 4, Ex. B).



Finally, on August 2, 2024, Sagebrush provided HRSA with tables listing each Site and the corresponding grant for 2023 and 2024. Those table are found in the record at ECF 14-2 at 56–59.

////

////

////

////

////

////

-4-

### b. The Updated 2024 Subaward Conformed to HRSA's Request

NHHS listed nineteen Sites[2] on an amended Notice of Subaward for the 2024 Subaward ("Amendment #1") (Sites listed at ECF 4 at 120) and identified the "Reason for Amendment" in blue font on its front page:



ECF 4 at 115.

Amendment #1 covered the entire period of the 2024 Subaward (January 1, 2024–February 28, 2025) but was not fully executed until February 4, 2025, eighteen days after HRSA terminated the Removed Sites. Notwithstanding NHHS' comment on Amendment #1, it is unlikely that HRSA asked NHHS to identify the eighteen Sites in Amendment #1 after HRSA terminated the Removed Sites. It is reasonable to infer from NHHS' comment and the timing of Amendment #1's execution that HRSA made the update request to NHHS prior to terminating the Removed Sites. To that extent, rather than simply wait for NHHS to issue the updated document that expressly confirmed

---

[2] Sagebrush maintained nineteen Sites in Nevada under the 2024 Subaward. One Site remains active in the 340B Program; eighteen were terminated.

the eligibility of the Removed Sites consistent with their records in OPAIS, HRSA forged ahead with termination.

Ironically, HRSA proceeded to update each Removed Site's OPAIS main page with a January 14, 2025 termination date for lack of Section 318 funding when the text of the 2024 Subaward grant period ending on January 31, 2025 was listed *on the same OPAIS page*. More compelling evidence of arbitrary and capricious agency action would be hard to imagine.

### c. HRSA Can Resolve Its Error

During the pendency of this case, HRSA informed Sagebrush that it could reapply for enrollment of the Removed Sites during the registration window of April 1 to 15, 2025. In good faith and without admitting that any of the Removed Sites were legitimately terminated, Sagebrush was able to complete registration for eight of the Removed Sites prior to close of the registration window. If approved, according to HRSA's policies, the eight Sites could participate in the 340B Program beginning no earlier than July 1, 2025. However, there is no statutory requirement that HRSA make an approval determination within a specific period. Thus, it is possible that HRSA could indefinitely delay an approval determination for the eight Sites. Whether HRSA approves the eight Sites to begin participating on July 1, 2025, or some undetermined future date, it does nothing to remedy the damages caused to Sagebrush from the eight Sites' improper removal from the 340B Program on January 14.

At the hearing for Sagebrush's motion for a preliminary injunction, counsel for Defendants stated that the Removed Sites "can't be reinstated automatically. The agency has to take their time and due diligence to make sure that these entities are covered entities." Status Conf. Tr. at 12, Civ. Case No. 25-00915, Apr. 25, 2025.

There is no statutory or regulatory barrier to HRSA curing its error and retroactively reinstating the Removed Sites. HRSA need only remove the January 14, 2025 termination date in OPAIS for each of the Removed Sites and revise the copies of the December 20, 2024, and January 13, 2025 letters to Sagebrush (as published on HRSA's 340B program integrity public website[3]) to indicate reversal of the termination notifications and reinstatement of the Removed Sites. In other words, HRSA simply must undo the improper and unlawful actions it took based on its incorrect determination that the Removed Sites were not receiving Section 318 funding during the period of the 2024 Subaward.

The suggestion by Defendants that this requires an extensive amount of "time and due diligence" is deeply concerning. This declaration points directly to the ongoing harm caused to Sagebrush by termination of the Removed Sites. Time is Sagebrush's enemy, and no due diligence is required other than reviewing each Removed Site's OPAIS record and the bolded blue text on the first page of Amendment #1. Further, cross-referencing the list of Sites in the 2024 Subaward against the list of Sites included in the current Notice of Subaward for the period of March 1, 2025 through February 28, 2026 (not at issue here, but instructive) confirms that all the Removed Sites have continued to receive Section 318 funding since the 2024 Subaward expired. ECF 14-2 at 114.

For these reasons, an injunction that requires HRSA to retroactively reinstate these Sites as of January 14, 2025 in recognition that they have continuously received Section 318 funds since February 1, 2024 and continuing through the present, remains necessary.

## II. Connecticut Site No. STD06489

On October 17, 2024, Dr. Lynn Sosa of the CDPH informed HRSA in writing that the test kits at issue "are purchased using funds from the HIV Prevention and Surveillance grant, CTDPH

---

[3] *See* https://www.hrsa.gov/opa/program-integrity (last visited Apr. 29, 2025).

grant number NU62PS924521 . . . and now the new cooperative agreement NU62PS924812." Both awards are federal Centers for Disease Control and Prevention grants.

Despite CDPH informing HRSA of the grant numbers for the support given to Sagebrush, on January 13, 2025, HRSA informed Sagebrush that the "Connecticut Department of Public Health . . . confirmed that [Site No. STD06489] do[es] *not* receive 318 funding" (emphasis added). This is inexplicable because the record makes plain that HRSA possessed no information from CDPH supporting HRSA's assertion.

On February 4, 2025—after Sagebrush filed its first lawsuit against HRSA arising from the terminations—HRSA asked Dr. Sosa, for the first time: "Were the test kits provided purchased from CTDPH's HIV Prevention and Surveillance grant NU62PS924812?"

On February 11, 2025, Dr. Sosa answered stating that the kits "were purchased with state funds." This email is the first instance in the record where CDPH made any statement that could be interpreted as disclaiming the use of federal grant dollars for the purchase of the test kits.

Yet HRSA's email to Sagebrush quoted above is dated three weeks earlier, January 13, 2025. On that date HRSA asserted that it had already "confirmed" with CDPH that Site No. STD06489 did "not receive 318 funding." That statement cannot be reconciled with the record, which shows that HRSA had asked no such question and had received no such confirmation. Indeed, the only information HRSA possessed on January 13, 2025 was Dr. Sosa's October 17, 2024, email stating that the kits were purchased with funds from federal grants NU62PS924521 and NU62PS924812. HRSA therefore lacked any evidentiary basis—let alone a rational one—for its declaration to Sagebrush on January 13, 2025 that no federal funds were used to purchase the test kits that Sagebrush received after August 1, 2024. Given these circumstances, the January 13, 2025 termination decision is arbitrary and capricious in the extreme.

<u>Summary</u>:

1. *September 3, 2024: CDPH informs Sagebrush that the funds were federal grant funds.*

2. *October 17, 2024: CDPH informs HRSA that the funds were federal grant funds.*

3. *January 13, 2025: HRSA informs Sagebrush that the funds were state funds.*

4. *February 11, 2025: CDPH informs HRSA that the funds were state funds.*

Because HRSA's determination to remove Site No. STD06489 relied on its own unfounded assertion that state funds were used to purchase the kits, the determination was made "without rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). HRSA ignored its only contemporaneous evidence (CDPH's October 17, 2024, email stating that the kits were purchased with federal funds) and instead substituted a nonexistent fact (CDPH's "confirmation" of the use of state funds) and proceeded to penalize Sagebrush on the basis of that invented fact. Under any standard of review, such decision-making is arbitrary and capricious.

### **The Record**

On September 3, 2024, Dr. Sosa of CDPH wrote to Sagebrush:

> [W]e are happy to provide rapid HIV and HCV test kits to facilitate this testing, as resources allow. In return, we request that sites receiving test kits report back the number of tests done, the results of each test and basic demographics of the persons tested ***so we can demonstrate the impact of this testing for the CDC grant that supports purchase of these test kits***.

ECF 4 at 69 (emphasis added).

On October 8, 2024, HRSA wrote to Dr. Sosa and asked three questions:

1. Did the site receive support from CTDPH's grant NU62PS924521 prior to July 31, 2024? ….

2. Did the site receive support from CTDPH's grant NU62PS924521 during the period August 1, 2023, through September 3, 2024? ….

> 3. Does the site currently receive support from CTPDH's grant NU62PS924521? ....

ECF 8-3 at 4–5.

On October 17, 2024, Dr. Sosa responded to HRSA:

> ***These test kits are purchased using funds from the HIV Prevention and Surveillance grant***, CTDPH grant number NU62PS924521 (January 1, 2019–July 31, 2024) and now the new cooperative agreement NU62PS924812 (August 1, 2024–July 31, 2024). Since 2023, DPH has provided HIV test kits to 38 sites. All sites are required to provide aggregate data on the number of HIV tests administered and provide demographic information on the patients who were tested.

ECF 8-3 at 4 (emphasis added).

On January 13, 2025, HRSA responded to Sagebrush:

> HRSA has also confirmed with Connecticut Department of Public Health . . . that these sites do not receive 318 funding.

ECF 4 at 90.

On February 4, 2025, HRSA wrote to Dr. Sosa as "a follow-up" to Dr. Sosa's October 17, 2024, email and asked: "Were the test kits provided purchased from CTDPH's HIV Prevention and Surveillance grant NU62PS924812?" ECF 8-3 at 3.

On February 11, 2025, Dr. Sosa responds: "No, they were purchased with state funds." ECF 8-3 at 2.

////

////

////

////

////

////

### III. Conclusion.

For the reasons set forth above, the Court should grant Sagebrush's motion and issue a preliminary injunction enforcing the status quo by ordering the retroactive reinstatement of the Removed Sites as of January 14, 2025, and enjoin HRSA from terminating Connecticut Site No. STD06489.

Dated: April 29, 2025                                **ARENTFOX SCHIFF LLP**

By: /s/ James H. Hulme
James H. Hulme (Bar No. 323014)
Douglas A. Grimm (Bar No. 495805)
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344
Ph: 202.857.6000
Fax: 202.857.6395
james.hulme@afslaw.com
douglas.grimm@afslaw.com
*Counsel for Plaintiff Sagebrush Health Services*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 29th day of April, 2025, I will electronically file a true and correct copy of the foregoing document with the Court using the CM/ECF system, which will then send a notification of such filing to the following:

Kimberly Stratton
U.S. Attorney's Office
601 D Street N.W.
Washington, DC 20530
202.417.4216
kimberly.stratton@usdoj.gov

*Counsel for all Defendants*

                                        /s/ James H. Hulme
                                        James H. Hulme