IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES, | |
| *Plaintiff,* | Civil Action No. 1:25-cv-00915-JEB |
| v. | |
| ROBERT F. KENNEDY, JR., Secretary of Health and Human Services, et al., | |
| *Defendants.* | |

## PLAINTIFF SAGEBRUSH HEALTH SERVICES' MOTION FOR SUMMARY JUDGMENT

Plaintiff Sagebrush Health Services ("Sagebrush"), through counsel, respectfully moves that the Court enter judgment in favor of the Plaintiff as a matter of law, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h). The Health Resources and Services Administration (HRSA) exceeded its statutory authority and acted in a manner that was arbitrary, capricious, and not in accordance with the law in removing Sagebrush's Sites from the 340B Program and demanding that Sagebrush repay all 340B savings received during the alleged period of ineligibility. Plaintiff respectfully asks that the Court vacate HRSA's unlawful termination of the eighteen Sites at issue and its repayment decisions, order immediate reinstatement of the Sites, order the immediate removal of all OPAIS postings related to the Sites that indicate termination, permanently enjoin enforcement of repayment demands, order reimbursement of any amounts already paid pursuant to the unlawful demands with interest, and grant such other equitable relief as the Court deems just and proper.

In support of this Motion, Sagebrush concurrently files its Memorandum of Points and Authorities in Support of its Motion for Summary Judgment and Proposed Order.

Dated: October 15, 2025

**ARENTFOX SCHIFF LLP**

By: /s/ James H. Hulme
James H. Hulme (Bar No. 323014)
Douglas A. Grimm (Bar No. 495805)
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344
Ph: 202.857.6000
Fax: 202.857.6395
james.hulme@afslaw.com
douglas.grimm@afslaw.com

*Counsel for Plaintiff Sagebrush
Health Services*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAGEBRUSH HEALTH SERVICES,

         Plaintiff,

   v.

ROBERT F. KENNEDY, JR., Secretary of
Health and Human Services, *et al.*,

         Defendants.

Civil Action No. 1:25-cv-00915-JEB

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 2

    A.   PARTIES AND PROGRAM BACKGROUND ................................................. 2

    B.   SAGEBRUSHS SITES AND CERTIFICATION PERIODS ............................ 3

    C.   FUNDING STREAMS AND DOCUMENTATION .......................................... 4

        1.   Nevada Subaward ................................................................................ 4

        2.   HRSA Eligibility And Recertification Mechanics ............................. 4

    D.   HRSA'S JANUARY 2025 ACTIONS ............................................................. 5

        1.   Programmatic Review .......................................................................... 5

        2.   Nevada Record Development ............................................................... 5

        3.   Terminations And Repayment Demand ................................................ 6

        4.   HRSA Required Executed, Site-Specific Subaward Documentation During Its Review And Related Terminations ................................. 7

    E.   SUBSEQUENT DEVELOPMENTS ................................................................. 9

III.  STANDARD OF REVIEW ................................................................................. 10

IV.   ARGUMENT ....................................................................................................... 11

    A.   HRSA LACKED STATUTORY AUTHORITY TO REMOVE SAGEBRUSH'S CERTIFIED SITES FROM THE 340B PROGRAM MIDWAY THROUGH THEIR CERTIFICATION YEAR .......... 11

        1.   The 340B Statute Limits HRSA To Annual Recertification And Authorizes Removal Only Upon A Finding Of Knowing And Intentional Diversion ......... 11

        2.   HRSA's January 2025 Termination Of The Nevada Sites Violated § 256B(A)(7)'s Annual Recertification Process ................................. 12

        3.   HRSA's "Program Integrity" Rationale Cannot Expand Its Statutory Power ... 13

B.  THE 340B ENFORCEMENT PROVISIONS DO NOT AUTHORIZE
    ELIGIBILITY-BASED, MID-YEAR TERMINATIONS ....................................... 13

    1.  Congress Confined HRSA's Enforcement Powers To Audit-Based
        Diversion Or Duplicate Discount Violations .................................... 13

    2.  HRSA Cannot Invent An "Eligibility Termination" Power
        Untethered To Statutory Text ....................................................... 14

    3.  Congress Conditioned Removal On An Audit And Four Heightened
        Elements; Any Broader Removal Power Would
        Render § 256b(d)(2)(B)(v)(II) Superfluous ...................................... 15

    4.  HRSA Never Alleged Diversion Against Sagebrush; HRSA's
        Actions Were Ultra Vires............................................................... 16

C.  HRSA'S TERMINATIONS WERE ARBITRARY, CAPRICIOUS, AND
    NOT IN ACCORDANCE WITH LAW .................................................................. 17

    1.  HRSA Treated Similarly Situated Sites Differently Without Reason .............. 17

    2.  HRSA Failed To Exercise Reasoned Judgment By Rushing To Terminate...... 17

D.  HRSA FAILED TO OBSERVE PROCEDURE REQUIRED BY LAW .................................... 18

    1.  HRSA Effectuated A New Binding Documentation Requirement
        Without Notice-And-Comment ....................................................... 19

E.  HRSA'S REPAYMENT DEMANDS ARE UNLAWFUL AND MUST BE SET ASIDE............ 20

    1.  The Statute Authorizes Repayment Only For Diversion
        Or Duplicate Discount Violations.................................................... 20

    2.  HRSA Never Alleged Diversion Or Duplicate Discounting ............................ 20

    3.  The Repayment Demands Were Imposed Without
        Procedure And Are Arbitrary.......................................................... 21

F.  HRSA'S ACTIONS CONSTITUTE FINAL AGENCY ACTION ........................................... 21

G.  REMEDY: VACATUR AND REINSTATEMENT ARE WARRANTED
    UNDER ALLIED-SIGNAL ....................................................................... 22

**V.  CONCLUSION**............................................................................................................... **22**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ................................................................22

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ...............................................................10

*ANR Pipeline Co. v. FERC*,
  71 F.3d 897 (D.C. Cir. 1995) ..................................................................17

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) ...............................................................19

*Bennett v. Spear*,
  520 U.S. 154 (1997) .........................................................................11, 21

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*,
  403 F.3d 771 (D.C. Cir. 2005) .................................................................17

*Camp v. Pitts*,
  411 U.S. 138 (1973) ..............................................................................10

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) (Roberts, C.J., dissenting) .............................................11, 16

*Duncan v. Walker*,
  533 U.S. 167 (2001) ..............................................................................15

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ..............................................................................10

*Genesis Health Care, Inc. v. Becerra*,
  701 F. Supp. 3d 312 (D.S.C. 2023) ...........................................................14

*INS v. Yang*,
  519 U.S. 26 (1996) ...............................................................................20

*Int'l Union, UMW v. Fed. Mine Safety & Health Admin.*,
  920 F.2d 960 (D.C. Cir. 1990) .................................................................22

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ..............................................................................13

*Marin Audubon Soc'y v. FAA*,
121 F.4th 902 (D.C. Cir. 2024) ....................................................................15

*Market Company v. Hoffman*,
101 U.S. 112 (1879) ...................................................................................15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ..................................................................10, 16, 18, 21

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007) ...........................................................................14, 15, 20

*Nat'l Env't. Dev. Ass'n's Clean Air Project v. EPA*,
752 F.3d 999 (D.C. Cir. 2014) .................................................................18, 21

*Nat'l Mining Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) ....................................................................19

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024) ....................................................11, 14, 16, 17

*Pharm. Rsch. & Mfrs. of Am. v. HHS*,
43 F. Supp. 3d 28 (D.D.C. 2014) ..............................................14, 16, 20

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547
(2016) .........................................................................................................13

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) ......................................................................................15

*United Steel v. Mine Safety & Health Admin.*,
925 F.3d 1279 (D.C. Cir. 2019) ....................................................................22

**Statutes**

5 U.S.C. § 553 .................................................................................................19

5 U.S.C. § 706(2) ........................................................................................1, 22

5 U.S.C. § 706(2)(A) .................................................................................10, 17

5 U.S.C. § 706(2)(C) .............................................................................10, 13, 17

5 U.S.C. § 706(2)(D) .............................................................................10, 18, 21

42 U.S.C. § 256b(a) ..........................................................................................2

42 U.S.C. § 256b(a)(4)(K) ...............................................................3, 12, 14, 19

42 U.S.C. § 256b(a)(5)(C), (d)(3) ................................................................................13

42 U.S.C. § 256b(a)(7) ...................................................................................11, 12, 14

42 U.S.C. § 256b(d)(1)(B)(vi) ...............................................................................14, 16

42 U.S.C. § 256b(d)(2)(B)(i) .......................................................................................18

42 U.S.C. § 256b(d)(2)(B)(i), (v)(II) ......................................................................1, 15

42 U.S.C. § 256b(d)(2)(B)(ii)–(v) ...............................................................................20

42 U.S.C. § 256b(d)(2)(B)(v)(I) ..................................................................................13

42 U.S.C. § 256b(d)(2)(B)(v)(II) ...............................................................11, 13, 15, 18

Veterans Health Care Act of 1992, Pub. L. No. 102-585, § 602, 106 Stat. 4943,
    4967 (codified at 42 U.S.C. § 256b) ...................................................................2, 4

## I.    INTRODUCTION

This case presents a straightforward question of statutory limits. Congress granted "covered entities," as defined by statute, a one-year certification period and confined the Health Resources and Services Administration's ("HRSA") mid-term removal power over participants in the 340B Drug Pricing Program (the "340B Program") to a single, exceptional pathway: following an audit, and only upon a finding that a diversion violation was "systematic and egregious as well as knowing and intentional." 42 U.S.C. § 256b(d)(2)(B)(i), (v)(II) (42 U.S.C. § 256b ("Section 256b") authorizes and establishes the 340B Program). Those four distinct statutory elements (systematic, egregious, knowing, and intentional), combined with the mandatory audit procedure – which requires notice and an opportunity to respond – constitute essential prerequisites. Any broader removal authority would render these conditions superfluous and collapse Congress's carefully graded enforcement scheme.

HRSA nevertheless terminated eighteen of Sagebrush's certified sites in Nevada (the "Nevada Sites") mid-year and issued sweeping repayment demands without conducting an audit, without finding diversion, much less all four heightened elements, and in disregard of the statute's temporal structure and procedural safeguards. The Administrative Procedure Act ("APA") mandates vacatur of these ultra vires agency actions. 5 U.S.C. § 706(2).

The record leaves no factual ambiguity that could justify HRSA's approach. The Court has already observed that the parties agree that (i) "*if the Sites received funding from the federal government through the Nevada Department of Health and Human Services (NHHS) (i.e., Section 318 funding) at the time of termination, they were eligible to participate in the Program under the authorizing statute,*" and (ii) "*that the [Nevada] Sites did in fact receive such [section 318] funding during the relevant time period.*" Mem. Op. 4–5, Dkt. 34 (June 27, 2025) (emphasis added).

1

Nevertheless, HRSA terminated the Nevada Sites months before the next recertification window and without the only mid-cycle predicate Congress authorized.

HRSA's actions also fail the APA's basic requirements of reasoned decision-making and lawful procedure. The agency ignored material evidence, including NHHS's retroactive subaward, and treated similarly situated sites differently without explanation. Compounding these errors, HRSA effectively imposed a new, binding documentation rule – demanding executed, site-by-site subawards listing each address and discounting recognized Section 318 in-kind support – without notice-and-comment or any statutory footing.

Under the plain reading of § 256b, and without any deference to HRSA's power-expanding interpretation, the agency's eligibility-policing theory and mid-year decertifications are ultra vires. The Court should set aside the terminations of the Nevada Sites and HRSA's repayment demands under the APA, order reinstatement of the Nevada Sites through their certification periods, and remand without leave for post hoc rationalizations. The statute's text, the administrative record, and the Court's own prior observation regarding the provision of NHHS grant funding to Sagebrush all point to the same conclusion: HRSA exceeded its authority, failed to observe required procedure, and acted arbitrarily and capriciously.

## II.    STATEMENT OF FACTS

### A.    Parties and Program Background

Congress created the 340B Program in 1992 to reduce outpatient drug costs for safety-net providers serving vulnerable populations. Veterans Health Care Act of 1992, Pub. L. No. 102-585, § 602, 106 Stat. 4943, 4967 (codified at 42 U.S.C. § 256b). Manufacturers that participate in Medicaid are required to sell covered outpatient drugs to statutorily defined "covered entities" at discounted prices. 42 U.S.C. § 256b(a). Relevant here, entities that "receiv[e] funds under section [318 of the Public Health Service Act ("PHSA" and "Section 318"), as applicable] (relating to

treatment of sexually transmitted diseases) … through a State or unit of local government" qualify as covered entities. *Id.* § 256b(a)(4)(K). Section 318 provides federal support to states and localities for prevention, screening, testing, and treatment of sexually transmitted diseases.

The statute imposes two substantive prohibitions on covered entities: diversion, which bars the resale or transfer of 340B drugs to anyone other than a patient of the covered entity; and duplicate discounts, which bars billing the Medicaid program for a 340B drug when the state Medicaid program also seeks a manufacturer rebate. *Id.* § 256b(a)(5)(A)–(B). Violations may render a covered entity liable to the manufacturer for improperly obtained discounts. *Id.* § 256b(a)(5)(D). Congress circumscribed HRSA's enforcement powers to audits and ordering repayment where an audit reveals diversion or duplicate discount violations. Critically, Congress strictly limited HRSA's authority to remove a covered entity only upon a post-audit finding of diversion that is "systematic and egregious as well as knowing and intentional." *Id.* § 256b(d)(2)(B)(i)–(v).

HRSA's guidance explains registration and recertification mechanics for entities qualifying under Section 318, including the use of in-kind contributions purchased with Section 318 grant funds. *See, e.g.*, 61 Fed. Reg. 55156, 55157–58 (Oct. 24, 1996).[1]

**B.    Sagebrush's Sites and Certification Periods**

Sagebrush is a nonprofit foundation operating specialty care clinics in Nevada and Connecticut that provide critical healthcare services to vulnerable populations. Its 340B eligibility in Nevada arises from valid subawards issued by the Nevada Department of Health and Human Services ("NHHS" and the "Nevada Subawards", as applicable).

---

[1]    *See also* Administrative Record ("AR") 340B_SAGEBRUSH_0000001–3); Registration and recertification materials (AR 340B_SAGEBRUSH_0000004–13; 0000016; 0000019); Program materials addressing in-kind support and eligibility verification (AR 340B_SAGEBRUSH_0000026–27; 0000031–35; 0000037–39).

In June 2024, Sagebrush completed the required annual recertification for each site pursuant to 42 U.S.C. § 256b. HRSA's Office of Pharmacy Affairs Information System ("OPAIS") records reflect HRSA's review and confirmation of continued eligibility between June 4–27, 2024. AR 340B_SAGEBRUSH_0012602–03; 0012702–03; 0013199–200.

As this Court has already recognized, "[*t*]*he parties … agree that the [Nevada] Sites did in fact receive such [§ 318] funding during the relevant time period*," establishing Sagebrush's statutory eligibility as a matter of law. Mem. Op. 5 (emphasis added).

### C.    Funding Streams and Documentation

#### 1.    Nevada Subaward

NHHS issued subaward SG-2024-00109 and subsequent amendments requiring Sagebrush to provide STD prevention, screening, testing, and treatment services.[2]  The Nevada Sites are listed in NHHS's Notice of Subaward.

#### 2.    HRSA Eligibility and Recertification Mechanics

HRSA requires covered entities to register during quarterly windows and to upload supporting documentation the same day; HRSA verifies grant funding with the relevant project director within five business days. AR 340B_SAGEBRUSH_0000004–13. Covered entities recertify annually and are subject to audit authority under § 256b(a)(5)(C). *Id.* at 0000015; 0000019.

---

[2]  *See* Notice of Subaward, Agency Ref. # SG-2024-00109 (AR 340B_SAGEBRUSH_0012428–12447); Subaward Amendment #1, Agency Ref. # SG-2024-00109-1 (AR 340B_SAGEBRUSH_0012459–12477); Subaward Amendment #2, Agency Ref. # SG-2024-00109-2 (AR 340B_SAGEBRUSH_0012413).

### D.    HRSA's January 2025 Actions

#### 1.    Programmatic Review

On February 2, 2024, HRSA initiated a programmatic review that exceeded its statutory authority of fifty-three Sagebrush sites focusing on Section 318 funding and patient status determinations. *Id.* at 0000041–45. Sagebrush produced more than 8,000 pages of documentation, including notices of award, subaward agreements, and correspondence from NHHS and CTDPH addressing Section 318 support. *Id.* at 0000062–76.

#### 2.    Nevada Record Development

On October 3, 2024, HRSA improperly demanded NHHS to provide detailed subaward documentation listing each of Sagebrush's registered Nevada sites and demonstrating Section 318 support, exceeding statutory requirements. *Id.* at 0012387–89. On October 24, 2024, NHHS responded that Sagebrush had been a subaward partner since 2019 and that 19 Nevada sites, including the eighteen at issue here, were explicitly listed in subaward SG-26044 as receiving Section 318 support during January 1, 2023–January 31, 2024; NHHS provided a list of those Nevada sites. *Id.* at 0012413–15. NHHS further explained that for 2024 to 2025, Sagebrush submitted a list of forty-nine service locations, all of which were reviewed, approved, and incorporated by reference into current subaward SG-2024-00109. *Id.* at 0012414–15. The Nevada Subaward document did not initially list each site by name and address, therefore NHHS was amending the award to add an appendix identifying each Nevada Site. *Id.* at 0012416.

On February 27, 2025, NHHS informed HRSA that it was working on a new subaward for the Nevada sites, effective March 1, 2025, but that issuance of the subaward was stalled due to a delay in receipt of CDC funding. *Id.* at 0012490. HRSA's refusal to consider pending materials as evidence of Section 318 support during the review period was arbitrary and capricious under the APA, particularly given the documented continuity of services. *See, e.g., id.* at 0012510-11. On

March 21, 2025, NHHS issued a memorandum confirming continuation of Sagebrush's partnership under the Strengthening STD Prevention and Control for Health Departments grant (No. 6 NH25PS005179-05) through a subaward effective March 1, 2025, identifying multiple Nevada sites and explaining the retroactive start date due to delays in the Centers for Disease Control and Prevention's ("CDC") issuance of the federal Notice of Award. *Id.* at 0012288–89. NHHS stated that failure to implement the subaward retroactively "would result in a gap in STD services for the community [and] an increased risk of sexually transmitted disease." *Id.* at 0012288.

### 3. Terminations and Repayment Demand

On December 20, 2024, HRSA determined that twenty Sagebrush sites – including the eighteen Nevada Sites at issue here – were ineligible for 340B participation, stating Sagebrush's materials could not establish current eligibility under Section 340B. *Id.* at 0012099–100. HRSA improperly demanded that Sagebrush "provide a statement that Sagebrush has determined the full scope of non-compliance and worked with affected manufacturers regarding repayment," and stated that only after Sagebrush "is able to demonstrate that it determined the full scope of noncompliance, repaid affected manufacturers, can demonstrate that it meets the covered entity eligibility requirements set forth in Section 340B(a)(4) of the PHSA, and meets all other 340B Program requirements" would HRSA allow Sagebrush to re-register the sites. *Id.* at 0012100.

Between December 20, 2024 and January 13, 2025, Sagebrush provided additional evidence, including correspondence from NHHS confirming federal grant funding and containing subaward documentation. *See, e.g., id.* at 0012107-167. HRSA's failure to provide a substantive response to the additional evidence submitted constitutes arbitrary and capricious agency action in violation of the APA. Instead, on January 13, 2025, HRSA arbitrarily removed the eighteen Nevada Sites at issue in this litigation from the 340B Program, providing only conclusory statements that "the documentation provided by Sagebrush does not demonstrate receipt of Section

318 funding for purposes of eligibility in the 340B Program" and that "HRSA has also confirmed with …. [NHHS] that these sites do not receive section 318 funding." *Id.* at 0012190.

HRSA's January 14, 2025 removals improperly preceded Sagebrush's next annual recertification window in June 2025, violating the statutory framework which only permits removal during annual recertification absent knowing and intentional diversion.

### 4. HRSA Required Executed, Site-Specific Subaward Documentation During Its Review and Related Terminations

During its compliance review and subsequent termination decisions, HRSA repeatedly required executed, site-by-site subaward documentation that listed each registered site by name and address. In its initial February 2, 2024 request to Sagebrush, HRSA directed Sagebrush to produce the written agreement "between the grantee and Sagebrush that lists the grant number, amount of federal funds authorized, Sagebrush recipient site(s) by name and address," and, separately, all agreements with non-Sagebrush sites that "list the grant number, amount of federal funds authorized, recipient site(s) by name and address," thereby framing the review around executed, site-specific documentation tying each registered location to Section 318 support. *Id.* at 0000041–42.

When Sagebrush's March production apparently did not resolve HRSA's concerns, HRSA's follow-up communication on July 3, 2024 made the same requirement. With respect to Nevada, HRSA stated that Sagebrush's Nevada Subaward documents did not identify the Nevada sites Sagebrush had registered and therefore required either (i) documentation from NHHS that "list[s] the name and address of each of the 43 sites," or (ii) if NHHS grant documents did not list the sites, a separate "subcontract agreement with each of the 43 sites" that, for each site, "list[s] the site's name and address, the grant number, and amount of federal funds authorized, as well as the nature, and terms and conditions of support". *Id.* at 0012041–44, 0012058–60. HRSA imposed

7

an identical structure for Connecticut, requiring documentation from the Connecticut Department of Public Health ("CDPH") that "lists the start date of the cooperative agreement … as well as the name and address of each Sagebrush site" registered in that state, and confirmation of whether CDPH permitted subcontracting to any sites not listed by name and address. *Id.* at 0012043–44, 0012060.

HRSA carried the same site-by-site requirement into its direct communications with the state health departments during the review. On October 3, 2024, HRSA wrote to Nevada and stated that, for each of Sagebrush's then-forty-eight listed Nevada sites (plus a pending registration), HRSA required the "subaward" agreement that "identifies each of the sites" and underscored that the Sagebrush-provided documents "do not identify the 48 sites registered with HRSA," thus necessitating site-specific documentation. *Id.* at 0012387–88. In parallel, HRSA emailed CDPH in October 2024 requesting, for each identified Connecticut site, "the subaward agreement that lists the site by name and address," and, if no such written agreement existed, an explanation of the relationship between each Connecticut site and Sagebrush. *Id.* at 0012370.

HRSA maintained this requirement into 2025 and tied it to termination decisions. On October 24, 2024, HRSA asked Nevada to provide any current subaward that "lists the CDC grant number, terms and conditions, and each Sagebrush site by name and address," reflecting a continuing insistence on an executed, site-enumerated agreement. *Id.* at 0012416. On March 27, 2025, HRSA informed Sagebrush that the prior Nevada Subaward had expired and that, "[u]ntil such time that HRSA receives documentation to demonstrate a current executed subaward agreement … HRSA considers the site ineligible," warning that absent a current executed subaward HRSA would terminate the site on March 31, 2025. *Id.* at 0012290. HRSA's OPAIS reviewer comments during 2024 likewise required site-specific documentation "supporting the

flow of 318 funding … to each site listed" in Sagebrush's pending registrations, reinforcing the agency's insistence on executed, site-level documentary support linking each location by name and address to Section 318 funding or in-kind support. *Id.* at 0011995.

Taken together, the administrative record shows that throughout its review and the subsequent termination decisions, HRSA required executed, site-by-site subaward (or equivalent subcontract) documentation that listed each registered site by name and address and tied that site to the receipt of Section 318 funds or in-kind support. When such site-specific, executed agreements were not provided, HRSA deemed sites ineligible and terminated them without adequate statutory basis. *Id.* at 0000041–42; 0012041–44; 0012058–60; 0012370; 0012387–88; 0012416; 0012290; 0011998.

E.    **Subsequent Developments**

Following the January 2025 removal of the eighteen Nevada Sites, record development continued. As previously stated, on March 21, 2025, NHHS documented a retroactive Nevada Subaward effective March 1, 2025 that included the eighteen Nevada Sites, citing the need to prevent service gaps. *Id.* at 0012288–89. In addition, on March 21, 2025, HRSA noticed termination of two remaining sites – Connecticut Site STD06489 and Nevada Site STD891132 – stating Sagebrush had not demonstrated current executed subawards, without addressing documentation reflecting continued Section 318 support. *Id.* at 0012279–80. However, Nevada Site STD891132 was never terminated, was confirmed by HRSA in April 2025 to be an active covered entity and remains an active covered entity to the present day.[3]

---

[3] *See, e.g.*, *id.* at 0012318 (April 8, 2025 email from Sagebrush to HRSA stating that "yesterday your attorneys confirmed via email to our attorneys that Sagebrush Site No. STD891132 is an approved covered entity.").

### III.    STANDARD OF REVIEW

Summary judgment is the proper mechanism for resolving claims under the APA, which are decided based on the administrative record and present purely legal questions. *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001). Rule 56(a) of the Federal Rules of Civil Procedure provides that judgment shall be entered if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Under the APA, the reviewing court must "hold unlawful and set aside" agency action that is:

- "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A));

- "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" (*Id.* § 706(2)(C)); or

- "without observance of procedure required by law" (*Id.* § 706(2)(D)).

Under well-established Supreme Court precedent, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation modified). The decision must address important aspects of the problem, rely on evidence in the record, and reflect reasoned judgment. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Agency action is arbitrary if it "entirely fail[s] to consider an important aspect of the problem," "offer[s] an explanation for its decision that runs counter to the evidence," or is "so implausible" that it cannot be the product of expertise. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

In addition, agencies "literally have no power to act … unless and until Congress confers power upon it." *City of Arlington v. FCC*, 569 U.S. 290, 317 (2013) (Roberts, C.J., dissenting). If an agency acts without statutory authority, that action must be set aside as ultra vires. *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 459 (D.C. Cir. 2024) (invalidating HRSA enforcement guidance because it was not authorized by statute).

Finally, judicial review is limited to "final agency action." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). An action is final if it consummates the agency's decision-making process and determines rights or obligations or produces legal consequences. HRSA's terminations, reflected in OPAIS postings, and its repayment demands clearly meet this test.

## IV.    ARGUMENT

### A.    HRSA Lacked Statutory Authority to Remove Sagebrush's Certified Sites From the 340B Program Midway Through Their Certification Year

#### 1.    The 340B Statute Limits HRSA to Annual Recertification and Authorizes Removal Only Upon a Finding of Knowing and Intentional Diversion

Congress established a precise and limited framework for certification and removal of covered entities in the 340B Program. Under 42 U.S.C. § 256b(a)(7), HRSA "shall develop and implement a process for the certification" of covered entities and "shall require the recertification of entities … not more frequent than [once per year.]" Once certified, covered entities are entitled to a one-year certification period during which eligibility remains in effect absent a statutorily defined disqualifying event.

The statute's exclusive removal authority is narrowly circumscribed in 42 U.S.C. § 256b(d)(2)(B)(v)(II), which permits HRSA to remove a covered entity only upon a finding, following an audit process identified in the statute, that the entity committed a violation of the diversion prohibition that was "systematic and egregious as well as knowing and intentional."

11

Congress explicitly declined to grant HRSA any general power to decertify an entity for alleged eligibility deficiencies during an active certification year.

This structure reflects Congress's balance: HRSA may ensure program integrity through audits, dispute resolution, and annual recertifications; it cannot terminate participation mid-term based on a shifting view of eligibility, absent a diversion finding. By removing Sagebrush's sites mid-year for purported "eligibility" concerns, HRSA exercised authority Congress did not confer.

### 2. HRSA's January 2025 Termination of the Nevada Sites Violated § 256b(a)(7)'s Annual Recertification Process

The Court has already found that "[*t*]*he parties … agree that the [Nevada] Sites did in fact receive such [§ 318] funding during the relevant time period*." Mem. Op. 5 (emphasis added). There is thus no dispute that the Nevada Sites satisfied 42 U.S.C. § 256b(a)(4)(K)'s substantive eligibility criteria. The only question is whether HRSA was permitted to terminate those sites on January 14, 2025 – months before their next scheduled recertification in April 2025.

It was not. Each Nevada Site was duly certified through April 2025 under HRSA's recertification schedule. Those certifications, as a matter of law, remained valid for the full one-year term and could not be withdrawn except through the specific procedures expressly authorized by statute. HRSA neither conducted an audit nor made any finding, let alone the required finding, of "systematic and egregious" diversion. Its January 2025 letters, therefore, exceeded its statutory authority.

Even if HRSA doubted the continuing validity of Sagebrush's Nevada Subaward, the statute provided a lawful path: wait until the annual recertification window opened and then request submission of updated documentation. Revoking certifications mid-term – without audit or diversion findings – contravened the statute's temporal and procedural limits. The only

predicate the statute recognizes for mid-term removal – an audit-based finding of "systematic and egregious … knowing and intentional" diversion – is absent. 42 U.S.C. § 256b(d)(2)(B)(v)(II).

### 3. HRSA's "Program Integrity" Rationale Cannot Expand Its Statutory Power

HRSA may contend that program integrity implicitly authorizes mid-year removals. But agencies cannot rely on general policy objectives to justify powers Congress withheld. *See Texas v. United States*, 809 F.3d 134, 186 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547 (2016). Congress addressed program integrity by authorizing audits and dispute resolution— not mid-year decertification absent diversion findings. *See* 42 U.S.C. § 256b(a)(5)(C), (d)(3). Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which explicitly rejected Chevron deference in cases involving agency expansion of statutory authority, HRSA's interpretation enlarging its own authority is entitled to no deference; the Court must adopt the best reading of Section 256b, which forecloses an eligibility-termination power untethered to audit-verified diversion. Because HRSA acted mid-year without the statute's sole predicate for removal, its actions exceeded Section 256b's limits and must be set aside under 5 U.S.C. § 706(2)(C).

### B. The 340B Enforcement Provisions Do Not Authorize Eligibility-Based, Mid-Year Terminations

### 1. Congress Confined HRSA's Enforcement Powers to Audit-Based Diversion or Duplicate Discount Violations

Section 256b(d)(2)(B)(v) authorizes HRSA, following an audit, to: require repayment for "knowing and intentional" diversion, 42 U.S.C. § 256b(d)(2)(B)(v)(I); remove a covered entity for "systematic and egregious as well as knowing and intentional" diversion, *Id.* § 256b(d)(2)(B)(v)(II); and refer matters to other authorities, *Id.* § 256b(d)(2)(B)(v)(III). These specifically enumerated provisions constitute the exclusive covered entity enforcement tools Congress provided, and HRSA cannot expand them through administrative interpretation, as

evidenced by the statute's detailed enforcement scheme. The statute does not authorize termination based on eligibility disputes or subaward documentation disagreements, and there is no parallel grant of general enforcement authority over covered entities akin to the civil money penalties Congress expressly authorized for manufacturers. *See id.* § 256b(d)(1)(B)(vi); *see also Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007).

Courts have repeatedly enforced these limits. *See Pharm. Rsch. & Mfrs. of Am. v. HHS*, 43 F. Supp. 3d 28, 40–41 (D.D.C. 2014) (vacating rule; HRSA lacks general rulemaking authority beyond specifically enumerated areas); *Novartis Pharms. Corp.* 102 F.4th at 459. HRSA's own guidance likewise states its notices are interpretive and create no new rights or duties and do not exceed the statute. 61 Fed. Reg. at 55156–57.[4]

### 2. HRSA Cannot Invent an "Eligibility Termination" Power Untethered to Statutory Text

Defendants argue that HRSA may disqualify entities if it concludes they no longer meet Section 256b(a)(4)(K) criteria. But Congress provided no such removal mechanism. HRSA's annual recertification requirement is a strictly administrative condition for continued participation and cannot be construed as granting HRSA unlimited discretion to disqualify entities mid-term over eligibility disputes. *See* 42 U.S.C. § 256b(a)(7). HRSA's own program materials and longstanding practice consistently tie repayment and removal exclusively to audit-verified statutory violations, not to mere disagreements over eligibility or documentation. Accepting HRSA's theory would confer an essentially unlimited termination authority – a result courts have rejected as contrary to text and congressional design. *See Genesis Health Care, Inc. v. Becerra*, 701 F. Supp. 3d 312, 324–26, 330–32 (D.S.C. 2023) (rejecting HRSA's extra-statutory limitations

---

[4] AR 340B_SAGEBRUSH_0000001–02; *see* 340B Program Integrity webpage (340B SAGEBRUSH 0000019) ("Non-compliance may lead to refunds to drug manufacturers or removal from the program.") (tying sanctions to statutory violations verified through audit).

on 340B participation as contrary to the statute's text and purpose and enjoining enforcement, explaining that HRSA's restrictive interpretation "limits the scope of the 340B Program, limits the profitability of 'covered entities,' and frustrates the goal of the 340B statute"). *See also Marin Audubon Soc'y v. FAA*, 121 F.4th 902, 912–13 (D.C. Cir. 2024) ("federal agencies . . . are creatures of statute and, as such, have no power to act except to the extent Congress authorized them").

### 3. Congress Conditioned Removal on an Audit and Four Heightened Elements; Any Broader Removal Power Would Render § 256b(d)(2)(B)(v)(II) Superfluous

Congress spoke precisely regarding when HRSA may remove a covered entity: only "following" an audit and only upon a finding that a violation of the diversion prohibition was "systematic and egregious as well as knowing and intentional." 42 U.S.C. § 256b(d)(2)(B)(i), (v)(II). The same provision embeds procedural safeguards – notice and an opportunity to respond – before sanctions may issue. *Id.* § 256b(a)(5)(D). Those requirements are not surplusage; they are the statute's governing conditions for the extraordinary sanction of removal.

HRSA's contrary position – that it may terminate covered entities mid-term over eligibility or documentation disputes, without an audit, notice, or hearing, and without any finding that all four heightened elements exist – collapses Congress's carefully graded enforcement scheme. It reads out the audit prerequisite, nullifies the notice and opportunity to respond steps, and converts Congress's four-part culpability standard (intentionality, knowledge, egregiousness, and systematicity) into a discretionary, non-textual removal power. Statutory interpretation does not permit such a result. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (courts "are reluctant to treat statutory terms as surplusage"); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) quoting *Market Company v. Hoffman*, 101 U.S. 112, 115–16 (1879) (statute must be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant"); *Nat'l Ass'n of Home Builders* 551 U.S. at 666–67 (structure and specific commands control). By expressly authorizing removal only

after an audit and only upon proof of all four elements, Congress foreclosed any parallel, free-floating removal authority.

The statute's structure confirms the point. For manufacturers, Congress separately created broader enforcement tools, including civil monetary penalties. 42 U.S.C. § 256b(d)(1)(B)(vi). For covered entities, by contrast, Congress limited HRSA to audit-based remedies tied to diversion or duplicate discounts, culminating in removal only upon the heightened findings. *Id.* § 256b(d)(2)(B)(v). Under settled canons, that specific delineation both occupies the field and precludes additional, non-statutory removal grounds. *See City of Arlington,* at 317 (agencies "literally have no power to act … except as authorized by Congress"); *Pharm. Rsch. & Mfrs. of Am.* at 40–41 (D.D.C. 2014) (HRSA limited to authorities Congress enumerated); *Novartis Pharms. Corp.*, 102 F.4th at 459 (same).

Despite having actual knowledge that NHHS was in the process of issuing a new Nevada Notice of Subaward that included coverage of the eighteen Nevada Sites, HRSA unreasonably proceeded with termination based on purported documentation concerns in December 2024. *See* Statement of Facts at II.D., *supra*. Rather than wait for definitive confirmation, HRSA pressed ahead with termination in January 2025. The APA requires agencies to exercise reasoned judgment, not to rush to judgment in the face of pending clarifications. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

### 4. HRSA Never Alleged Diversion Against Sagebrush; HRSA's Actions Were Ultra Vires

It is undisputed that HRSA has never alleged diversion or duplicate discounting by Sagebrush, much less "systematic and egregious" diversion. *See* Statement of Facts at II.D., *supra*. Terminating sites and demanding repayment based on "eligibility deficiencies" is beyond HRSA's

statutory jurisdiction and must be set aside. *See* 5 U.S.C. § 706(2)(C); *Novartis Pharms. Corp.*, 102 F.4th at 459.

**C.     HRSA's Terminations Were Arbitrary, Capricious, and Not in Accordance with Law**

Even if HRSA was to possess authority to terminate entities for eligibility deficiencies (it does not), its decisions fail arbitrary-and-capricious review because HRSA treated similarly situated sites differently and terminated the Sites based on vague, unexplained assertions of "deficiency." *See* 5 U.S.C. § 706(2)(A).

**1.     HRSA Treated Similarly Situated Sites Differently Without Reason**

On January 14, 2025, HRSA terminated the Sites named in NHHS's Notices of Subaward but allowed one site, STD891132, to remain, despite identical funding streams and documentation. *See* Statement of Facts at II.E., *supra*. When an agency treats similarly situated parties differently, it must provide a reasoned explanation. *See Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005); *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995). At a minimum, HRSA had to treat similar cases alike or explain the difference; its unexplained carve-out for STD891132 – despite identical NHHS funding streams and documentation – requires vacatur and uniform reinstatement.

**2.     HRSA Failed to Exercise Reasoned Judgment by Rushing to Terminate**

Despite having actual knowledge that NHHS was in the process of issuing a new Notice of Subaward covering the eighteen Nevada Sites, HRSA acted arbitrarily and capriciously by proceeding with termination based on purported documentation concerns in December 2024. *See* Statement of Facts at II.D.3., *supra*. Rather than wait for definitive confirmation, HRSA pressed ahead with termination in January 2025. The APA requires agencies to exercise reasoned

17

judgment, not to rush to judgment in the face of pending clarifications. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

### D.    HRSA Failed to Observe Procedure Required by Law

The APA also requires courts to set aside agency action "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The 340B statute itself prescribes a procedural framework for HRSA enforcement actions.

Congress required HRSA to:

1. Conduct audits in accordance with procedures established by the Secretary, 42 U.S.C. § 256b(d)(2)(B)(i);

2. Provide notice of alleged violations, *Id.* § 256b(d)(2)(B)(ii);

3. Afford covered entities an opportunity to respond and be heard, *Id.* § 256b(d)(2)(B)(iii); and

4. Impose sanctions only after these steps, and only upon a finding of "systematic and egregious as well as knowing and intentional" diversion, *Id.* § 256b(d)(2)(B)(v)(II).

Here, HRSA completely bypassed the framework mandated by statute. Sagebrush was not given notice of audit, was never actually audited, received no notice of specific violations, and was denied any opportunity for a hearing – fundamental procedural rights guaranteed by statute. Instead, HRSA unilaterally terminated Sagebrush's sites and imposed repayment demands based on eligibility disputes – matters entirely outside the statute's scope and in direct contravention of Congress's explicit enforcement framework.

Courts consistently vacate agency actions that disregard statutory or regulatory procedure. *See Nat'l Env't. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)

18

(invalidating action taken without required procedure). HRSA's failure to comply with the audit-notice-hearing framework independently requires vacatur.

### 1.    HRSA Effectuated a New Binding Documentation Requirement Without Notice-and-Comment

During the review and terminations, HRSA required executed, site-by-site subawards listing each site's address. *See* Statement of Facts, Section II.D.4., *supra.* The statute and HRSA's own rules and guidances do not impose a site address listing or executed subaward prerequisite for covered entity eligibility. *See* 42 U.S.C. § 256b(a)(4)(K).[5] By treating this new documentation demand as controlling and outcome-determinative, HRSA unlawfully adopted a substantive binding norm with immediate adverse effect without the required notice-and-comment rulemaking procedures mandated by 5 U.S.C. § 553. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021–23 (D.C. Cir. 2000); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251–52 (D.C. Cir. 2014).

Moreover, HRSA's procedural failures violate fundamental due process rights guaranteed by the Fifth Amendment. Removal from the 340B Program imposes immediate and severe consequences – loss of access to discounted drugs and, for Sagebrush, the effective destruction of its business model. Constitutional due process and basic fairness require strict adherence to the procedures Congress explicitly mandated, particularly given the severe economic consequences to Sagebrush and the patients it serves. HRSA's disregard for those procedures violated both statutory and constitutional norms. HRSA's own materials describe a registration/verification process that includes contemporaneous confirmation with state or federal project directors within five business days, recognition of in-kind section 318 contributions, and annual recertification. *See* AR 340B_SAGEBRUSH_0000004–13; 0000031–35; 0000037–39. The agency deviated from that

---

[5] *See also, e.g.*, *id. at* 0000004–13; 0000031–35; 0000037–39.

framework – demanding executed, site-listed subawards and disregarding in-kind support – without acknowledging or explaining the departure, which is itself arbitrary. *See INS v. Yang*, 519 U.S. 26, 32 (1996).

### E.    HRSA's Repayment Demands Are Unlawful and Must Be Set Aside

HRSA not only terminated Sagebrush's sites but also demanded that Sagebrush repay all 340B savings received during the alleged period of ineligibility. These demands are unlawful for the same reasons as the terminations themselves: they exceed statutory authority, were imposed without the procedures required by law, and are arbitrary and capricious.

### 1.    The Statute Authorizes Repayment Only for Diversion or Duplicate Discount Violations

The statutory framework is explicit, exclusive, and unambiguous. Repayment obligations arise solely where an audit establishes diversion or duplicate discount violations. 42 U.S.C. § 256b(d)(2)(B)(ii)–(v). Congress created a clear progression: *audit → notice → opportunity to respond → finding of violation → repayment*. Nowhere did Congress authorize HRSA to demand repayment simply because it later disputes eligibility. *See Pharm. Rsch. & Mfrs. of Am.*, 43 F. Supp. 3d at 40–41 (D.D.C. 2014).

### 2.    HRSA Never Alleged Diversion or Duplicate Discounting

The record confirms HRSA has never accused Sagebrush of diversion or duplicate discounting. *See* Statement of Facts at II.D., *supra*. Repayment premised on eligibility disputes is inconsistent with the statutory structure. *See Nat'l Ass'n of Home Builders*, 551 U.S. at 658. There are sound policy reasons for the limited repayment authority Congress conferred on HRSA: nonprofit covered entities, including Sagebrush, have limited resources and reasonably rely on HRSA's expertise and certification decisions. Requiring entities to repay substantial sums due to HRSA's own mistaken eligibility determination would be fundamentally unjust, arbitrary, and

catastrophically detrimental to these essential healthcare providers. Such an order would directly contravene Congress's intent to expand access to affordable medications for vulnerable populations through the 340B Program. Conversely, permitting HRSA to order repayment when it has identified systematic, egregious, intentional, and deliberate diversion is a sound public policy.

### 3.    The Repayment Demands Were Imposed Without Procedure and Are Arbitrary

Just as HRSA failed to audit or provide notice before terminating sites, it also failed to follow statutorily mandated procedures before imposing repayment demands, constituting a clear violation of due process. This violates the APA. 5 U.S.C. § 706(2)(D). *See Nat'l Env't. Dev. Ass'n's Clean Air Project*, 752 F.3d at 1009. Moreover, the repayment demands are arbitrary because they rest on the same selective and arbitrary reasoning, constitute a clear violation of the APA's requirements for reasoned decision-making and procedural compliance. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

### F.    HRSA's Actions Constitute Final Agency Action

Judicial review under the APA requires "final agency action." *Bennett,* 520 U.S. at 177–78. Two conditions define finality: (1) the action must mark the consummation of the agency's decision-making process, and (2) it must determine rights or obligations or produce legal consequences. *Id.*

Both conditions are satisfied here. HRSA's removal of Sagebrush's sites from the 340B Program, reflected in OPAIS postings and explicit repayment demands, definitively consummated the agency's decision-making process with immediate legal consequences. Those actions had immediate legal effect, barring Sagebrush from purchasing 340B-priced drugs. In addition, HRSA's demands that Sagebrush repay millions in discounts imposed binding legal obligations

and immediate financial liability. These demands constitute definitive, binding obligations that are neither tentative nor interlocutory; they represent the agency's final, conclusive determination.

### G.    Remedy: Vacatur and Reinstatement Are Warranted Under *Allied-Signal*

Vacatur is the presumptive remedy. *See* 5 U.S.C. § 706(2); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019). "The decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (*quoting Int'l Union, UMW v. Fed. Mine Safety & Health Admin.,* 920 F.2d 960, 967 (D.C. Cir. 1990)).

Here, both factors of the *Allied-Signal* test favor vacatur: (1) the statutory errors are serious – HRSA acted without authority and imposed a binding documentation norm without notice-and-comment, and (2) vacatur is not disruptive – reinstatement restores the status quo ante certification through the existing certification year and simply bars HRSA from enforcing an unlawful eligibility-policing regime. The Court should vacate the terminations and repayment demands, order reinstatement of the sites through their certification periods, remand with instructions to comply with established administrative procedures and without leave for post-hoc rationalizations.

Thus, HRSA's actions are final and reviewable under the APA and should be vacated.

## V.    CONCLUSION

HRSA's termination and repayment decisions were unlawful. It is undisputed that the Nevada Sites received Section 318 federal funding through NHHS during the relevant period and, because they had such funding at the time of termination, they were eligible to participate in the Program under the authorizing statute. Nevertheless, HRSA terminated the Nevada Sites, acting in excess of its statutory jurisdiction, ignoring procedures required by law, and making an arbitrary

22

and capricious determination unsupported by the record. There are no genuine disputes of material fact. The administrative record is complete, the issues present pure questions of law suitable for summary disposition, and pursuant to Federal Rule of Civil Procedure 56 and the APA, 5 U.S.C. § 706, Sagebrush is entitled to judgment as a matter of law.

The Court should grant summary judgment in favor of Sagebrush, vacate HRSA's unlawful termination of the eighteen Sites at issue and its repayment decisions, order immediate reinstatement of the Sites, order the immediate removal of all OPAIS postings related to the Sites that indicate termination, permanently enjoin enforcement of repayment demands, order reimbursement of any amounts already paid pursuant to the unlawful demands with interest, and grant such other equitable relief as the Court deems just and proper.


Dated: October 15, 2025                          **ARENTFOX SCHIFF LLP**

                                                 By: /s/ James H. Hulme
                                                 James H. Hulme (Bar No. 323014)
                                                 Douglas A. Grimm (Bar No. 495805)
                                                 ArentFox Schiff LLP
                                                 1717 K Street, NW
                                                 Washington, DC 20006-5344
                                                 Ph: 202.857.6000
                                                 Fax: 202.857.6395
                                                 james.hulme@afslaw.com
                                                 douglas.grimm@afslaw.com

                                                 *Counsel for Plaintiff Sagebrush*
                                                 *Health Services*