UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ROBERT F. KENNEDY, JR., SECRETARY OF HEALTH AND HUMAN SERVICES et al.,<br><br>　　　　Defendants. | Civil Action No. 25-0915 (JEB) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................................ i

Table of Authorities ........................................................................................................................ ii

Background ..................................................................................................................................... 1

    I.    Statutory Background. ........................................................................................................ 1

        A.    340B Program ......................................................................................................... 1

        B.    340B Registration and Recertification. ................................................................... 2

    II.    Sagebrush's Inability to Show Program Eligibility. ............................................................ 4

Legal Standard ................................................................................................................................ 6

Argument ........................................................................................................................................ 7

    I.    HRSA Correctly Determined that Sagebrush Lacked Proof of 340B Eligibility. .............. 7

    II.    HRSA's Decision to Terminate Sagebrush Sites for Failure to Show Eligibility Was Neither Arbitrary Nor Capricious. ............................................................................ 10

    III.    Plaintiff's Remaining Claims Fail. .................................................................................... 12

Conclusion .................................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ................................................................................................ 7
*Am. Hosp. Ass'n v. Dep't of Health & Human Servs.*,
  No. 18-2112, 2018 U.S. Dist. LEXIS 187624 (D.D.C. Nov. 2, 2018) ...................................... 6
*Changji Esquel Textile Co. Ltd. v. Raimondo*,
  40 F.4th 716 (D.C. Cir. 2022) ................................................................................................. 12
*Fed. Commc'ns Comm'n v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ........................................................................................................... 10, 11
*Griffith v. FLRA*,
  842 F.2d 487 (D.C. Cir. 1988) ................................................................................................ 12
*Hight v. U.S. Dep't of Homeland Sec.*,
  694 F. Supp. 3d 127 (D.D.C. 2023) .......................................................................................... 6
*Ivy Sports Med., LLC v. Burwell*,
  767 F.3d 81 (D.C. Cir. 2014) .................................................................................................... 9
*Lewis v. U.S. Parole Comm'n*,
  743 F. Supp. 3d 181 ................................................................................................................ 12
*Lomak Petroleum, Inc. v. FERC*,
  206 F.3d 1193 (D.C. Cir. 2000) ................................................................................................ 7
*Marshall Cnty. Health Care Auth. v. Shalala*,
  988 F.2d 1221 (D.C. Cir. 1993) ................................................................................................ 7
*Nuclear Energy Inst., Inc. v. Env't Prot. Agency*,
  373 F.3d 1251 (D.C. Cir. 2004) ................................................................................................ 9
*Trudeau v. Fed. Trade Comm'n*,
  456 F.3d 178 (D.C. Cir. 2006) ................................................................................................ 12

**Statutes**

5 U.S.C. § 704 ............................................................................................................................. 13
5 U.S.C. § 706 ............................................................................................................................... 7
5 U.S.C. § 706(2)(D) ................................................................................................................... 12
42 U.S.C. § 247c ............................................................................................................................ 1
42 U.S.C. § 256b .................................................................................................................. passim
42 U.S.C. § 256b(a)(4)(K) ............................................................................................................ 1
42 U.S.C. § 256b(a)(5)(A) ............................................................................................................ 2
42 U.S.C. § 256b(a)(5)(B) ............................................................................................................ 2
42 U.S.C. §§ 256b(d)(2)(B) .......................................................................................................... 2

Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services, the Department of Health and Human Services (the "Department"), the Health Resources and Services Administration and its Administrator (HRSA) (collectively, "HRSA" or "Defendants"), through undersigned counsel, respectfully submit this memorandum in support of their cross motion for summary judgment and in opposition to Plaintiff's motion for summary judgment. For the reasons outlined below, summary judgment should be entered in Defendants' favor because the administrative record shows that, based on the information before the Defendants at the time of their decision, Sagebrush failed to demonstrate eligibility to participate in the 340B Program.

## BACKGROUND

**I.** <u>**Statutory Background.**</u>

    **A.**    **340B Program**

In 1992, Congress established the 340B Program, whereby certain statutorily defined healthcare providers ("covered entities") purchase certain drugs ("covered outpatient drugs") at a discount from participating drug manufacturers. 42 U.S.C. § 256b. The drugmakers participate in the program because it is a condition for their products to be reimbursable under Medicare Part B and Medicaid. The statute defines the parameters of eligible providers in section 256b(a)(4).

Under the 340B Program, one category of eligible covered entity is "[a]n entity receiving funds under section 247c of this title (relating to treatment of sexually transmitted diseases) . . . through a State or unit of local government, but only if the entity is certified by the Secretary pursuant to paragraph [(a)](7)." 42 U.S.C. § 256b(a)(4)(K). Section 247c, in turn, allows the Secretary to make "grants" to States and local government units for the prevention and control of sexually transmitted diseases. 42 U.S.C. § 247c. Thus, in order for an entity to qualify as a covered entity under section 256b(a)(4)(K), that entity must receive federal funds that were provided to the State or local government (i.e., "through a State or unit of local government") for sexual

transmitted disease ("STD") treatment or control. In other words, the source of the funds from the State or local government must be a federal grant, as opposed to the covered entity simply receiving nonfederal funds directly from the State or local government.

Such fund recipients may participate in the 340B Program if they are verified to be eligible for the Program. *See* 42 U.S.C. § 256b(d)(2)(B) (requiring the Department to develop procedures to verify all 340B participating covered entities and to establish an identification system for covered entity sites), § 256b(a)(7) (certification requirement for specific covered entity types, including covered entities under §§ 256b(a)(4)(K)), 256b(a)(9) (requiring the Department to notify participating manufacturers of the identity of participating covered entities, as well as those who are no longer certified under § 256b(a)(7)).

In addition to the basic parameters of eligibility set forth in section 256b(a)(4), the statute also imposes certain obligations and restrictions on participating covered entities. First, the covered entities can only resell or otherwise transfer the discount drugs to their patients. *See* 42 U.S.C. § 256b(a)(5)(B). Second, the covered entities must help ensure that drugmakers are not subject to a "duplicate discount" for covered outpatient drugs. *See* 42 U.S.C. § 256b(a)(5)(A). These are known as the prohibitions on "diversion" and "duplicate discounting," respectively.

**B.     340B Registration and Recertification.**

The 340B Program is administered by the HRSA, and its day-to-day operations are handled by a component called the Office of Pharmacy Affairs. The Office of Pharmacy Affairs uses a database named Office of Pharmacy Affairs Information System ("OPAIS" or the "Pharmacy Affairs System") to help register, track, and oversee covered entities participating in the 340B Program. *See generally* AR 06-13. During an initial registration, a covered entity seeking to participate in the 340B Program pursuant to section 256b(a)(4)(K) must provide the name, address, federal employer identification number, authorizing official and primary contact of the site. *See*

https://340bregistration.hrsa.gov/help/CoveredEntity/Registration/CE_Registration/NonHospital/NonHospRegCEDetailsAndAddress.htm (last visited Dec. 12, 20205). The covered entity must also provide the section 318 grant number, Notice of Funding Opportunity Number, the nature of support received (e.g. dollars received from CDC or an intermediate organization, and the time period for which the funding was received. *See id.* At registration, the covered entity's authorizing official attests that the information entered in OPAIS is accurate. *See* AR 14.

Covered entities must also annually recertify their eligibility to stay in the 340B Program. During the recertification process, a covered entity must attest to the following:

> *The undersigned represents and confirms that he/she is fully authorized to legally bind the covered entity into a contract and certifies that the contents of any statement made or reflected in this document are truthful and accurate. The undersigned further acknowledges the 340B covered entity's responsibility to abide by the following:*
>
> > *As an Authorized Official, I certify on behalf of the covered entity and its outpatient facilities that:*
> >
> > *(1) all information listed on the 340B OPAIS for the covered entity will be complete, accurate, and correct;*
> >
> > *(2) the covered entity will meet all 340B Program eligibility requirements, including section 340B(a)(4)(L)(iii) of the Public Health Service Act when applicable, regarding the group purchasing organization prohibition - which states that the covered entity hospital does not obtain covered outpatient drugs through a group purchasing organization or other group purchasing arrangement;*
> >
> > *(3) the covered entity will comply with all requirements of Section 340B of the Public Health Service Act and any accompanying regulations including, but not limited to, the prohibition against duplicate discounts/rebates and diversion (section 340B(a)(5)(A) and (B) of the Public Health Service Act);*
> >
> > *(4) the covered entity will maintain auditable records pertaining to compliance with the requirements described in paragraph (3) above, pursuant to section 340B(a)(5)(C) of the Public Health Service Act;*
> >
> > *(5) the covered entity acknowledges its responsibility to contact* ["Office of Pharmacy Affairs"] *as soon as possible if there is any change in 340B eligibility and/or breach by the covered entity of any of the foregoing; and*

> *(6) the covered entity acknowledges that if there is a breach of the requirements described in paragraph (3) that the covered entity may be liable to the manufacturer of the covered outpatient drug that is the subject of the violation, and, depending upon the circumstances, may be subject to removal from the list of eligible 340B entities.*

*See* Declaration of Chantelle V. Britton, ECF No. 20-2 at ¶ 6.

Every covered entity participating in the 340B Program is subject to recertification and the process occurs regardless of whether a covered entity is subject to a compliance investigation at the time of recertification. *See* AR 16. Covered entities are required to have accurate and up-to-date information in OPIS at all times while actively participating in the Program. *See id*. The covered entity's Administrative Officer must verify the covered entity's compliance with all 340B Program requirements. *See id*.  If a covered entity learns it may no longer be eligible for the 340B Program, it is the covered entity's responsibility to immediately notify HRSA and submit a termination request in OPAIS. *See* Program Integrity AR 19. To further ensure the integrity of the program, HRSA has the ability to review eligibility requirements and documentation for compliance. *See id*.

## II.     Sagebrush's Inability to Show Program Eligibility.

Due to a sudden increase in 340B purchases, by letter dated February 2, 2024,the Administration informed Sagebrush that it was conducting a review of multiple Sagebrush sites for compliance with the 340B Program requirements, with a focus on grant funding by the Centers for Disease Control and Prevention ("CDC"). *See* AR 41-43. Over the course of the next ten months, the Office of Pharmacy Affairs and Sagebrush exchanged numerous letters and documents in response to the February 2, 2024, request and several follow-up requests. *See e.g*., AR 41-43, 47, 62-76, 12,090-12,100. This review revealed that fifty-five Sagebrush sites failed to comply with the statutory eligibility criteria of Section 256b(a)(4)(K). *See* AR 12,099. Sagebrush never

notified the Office of Pharmacy Affairs when these sites became ineligible. Instead, the Office of Pharmacy Affairs had to discover these sites' eligibility deficiencies on its own. Notably, Sagebrush only challenges the termination of eighteen of its sites located in Nevada. *See* Plaintiff's Sagebrush Health Services' Motion for Summary Judgment (ECF No. 44, "Plaintiff's Motion") at 10,15.

The eighteen sites were terminated effective January 14, 2025, for failure to demonstrate eligibility. *See* AR 12,190.[1] Ten months prior to the termination, on February 2, 2024, HRSA asked Sagebrush for documentation "between [Nevada] and Sagebrush that lists the grant number, amount of federal funds authorized, Sagebrush recipient site(s) by name and address, as well as the nature, and terms and conditions of support." AR 41. On March 4, 2024, Sagebrush provided a copy of NHHS Subaward SG26044 and two amendments, SG26044-1 and SG26044-2. *See* AR 79-100. Collectively, the subaward and amendments covered the period January 1, 2023 through January 31, 2024. AR 96. This information was buried within more than 8,000 pages of documents. *See* AR 61-11,891.

Subaward SG26044 listed nineteen Sagebrush sites within the scope of the award. *See* AR 12,397. The subaward states "[n]o portion of these grant funds will be subcontracted without prior written approval." *See* AR 12,393. Only four of the eighteen terminated sites were listed on Subaward SG26044. *See id*. 12,397. The first amendment to Subaward SG26044 did not change the list of Sagebrush sites covered by the award. *See* AR 12,409, 12,412. The second amendment only extended the coverage date of the award from December 30, 2023 to January 31, 2024. *See* AR 12,152, 12,413 (stating the purpose of the amendment is to extend the grant period by one month). On April 15, 2024, the State of Nevada issued another subaward, Subaward SG-2024-

---

[1] A chart listing the eighteen sites terminated in January 2025 appears at ECF No. 20-2 at 5.

00109, covering the period from February 1, 2024 through January 31, 2025, but this time only listing one Sagebrush site. *See* AR 136. Thereafter, although given ample time to show eligibility, beginning February 1, 2024, by furnishing proof of 340B eligible funding, Sagebrush failed to do so. Accordingly, HRSA terminated the remaining eighteen sites effective January 14, 2025.

On February 4, 2025, after the eighteen sites were terminated, Nevada Department of Health and Human Services issued Subaward SG-2024-00109-1 dated February 4, 2025, listing the eighteen terminated sites as grant recipients. *See* AR 12,218, 12,223. SG-2024-00109-1 was an amendment to the original Subaward SG-2024-00109. *See id*. The original award only listed site No. STD891132. *See* AR 11,927 -11,928. However, this site was not one of the eighteen terminated sites. *See id*. The original award also stated "[n]o portion of these grant funds will be subcontracted without prior written approval." *See id*. 11,971 The subaward covered the period February 1, 2024 to February 28, 2025. The subaward issued on February 4, 2025, was the first time that HRSA received definitive documentation from Sagebrush establishing that the eighteen sites were receiving section 318 funding. On April 3, 2025, Sagebrush provided subaward SG-2025-00865 demonstrating funding for the eighteen sites for the period March 1, 2025 to February 28, 2026. See AR 12,296-12,303. This documentation also came after the sites were already terminated.

**LEGAL STANDARD**

Summary judgment is "the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the [Administrative Procedure Act] standard of review." *Hight v. U.S. Dep't of Homeland Sec.*, 694 F. Supp. 3d 127, 136 (D.D.C. 2023) (internal quotations and citation omitted); *see also Am. Hosp. Ass'n v. Dep't of Health & Human Servs.*, No. 18-2112, 2018 U.S. Dist. LEXIS 187624, at *7 (D.D.C. Nov. 2, 2018) ("[I]n APA cases early summary judgment motions are often appropriate,

as the entire case on review is a question of law, and only a question of law." (internal quotation marks and citation omitted).

When assessing a motion for summary judgment in an Administrative Procedure Act ("APA") case, however, "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In such cases the complaint "actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Therefore, "[t]he entire case on review is a question of law, and only a question of law." *Id*. The Court's review is based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously or in violation of another standard set forth in the APA. *See* 5 U.S.C. § 706. The party challenging final agency action bears the burden of demonstrating a violation of the APA. *Lomak Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1198 (D.C. Cir. 2000).

## ARGUMENT

**I.      HRSA Correctly Determined that Sagebrush Lacked Proof of 340B Eligibility.**

After a lengthy back and forth, HRSA correctly determined that Sagebrush failed to show the eighteen sites were eligible to participate in the 340B Program based on the information before HRSA at the time of its decision. There is no dispute that only covered entities are eligible to participate in the 340B Program. *See* 42 U.S.C. § 256b(a)(1). As relevant here, a covered entity must receive section 318 federal funds provided by a State or local government for STD treatment or control. 42 U.S.C. § 256b(a)(4)(K). There is no dispute that a covered entity must satisfy these statutory requirements at the time of registration (AR 07) and at re-certification (AR 17).

There is no dispute that Sagebrush failed to comply with the statutory program requirements. From March 4, 2024, when Sagebrush responded to HRSA's request for documentation showing that the eighteen sites had received the statutory required funding— up to

- 7 -

and including when January 14, 2025, when the sites were terminated— Sagebrush did not provide HRSA with a subaward agreement that listed the eighteen sites despite certifying that it did and despite multiple requests from HRSA to produce the documentation. *See* AR 41-43, 47, 62-76, 12,090-12,100. Sagebrush attempts to evade its duty to maintain documentation showing proof of funding by attacking HRSA's review and placing the onus on the State of Nevadato show program eligibility. *See* Pl's Mot. (ECF No. 44) at 14. But Sagebrush's claims are misplaced. HRSA only contacted the Nevada Department of Health and Human Services ("NHHS") due to Sagebrush's lack of documentation. *See* AR 12,388 (explaining to NHHS "48 sites are currently registered with HRSA, and the documentation provided does not demonstrate that the 48 sites, have a current agreement with NHHS"). Most important, it is the covered entity's responsibility to possess and provide the required documentation upon request. *See* 42 U.S.C. § 256b(a)(7)(B),(E); *see also* Registration AR 06-14; Recertification AR 16.

Last, Sagebrush provided funding documentation for the eighteen sites *after* the sites were already terminated in January 2025 by producing an entirely different subaward agreement than the subaward agreement that Sagebrush initially relied on for documentation. *See* AR 12,218, 12,223, 12,296-12,303. To be clear, Sagebrush provided the new subaward agreement in April 2025. *See* AR 12,293.

The only question before the Court is whether HRSA was permitted to review the underlying certification documents submitted by a presumed covered entity as part of HRSA's ability to manage the integrity of the 340B Program and terminate an entity that fails to show the statutorily required funding. The answer to this question is yes. The Secretary of the Department of Health and Human Services has broad authority to "develop and implement a process for the certification of [covered] entities[.] 42 U.S.C. § 256b(a)(7)(A). The certification process

established by the Secretary allows covered entities to evaluate and correct compliance deficiencies through self-reporting and at recertification. *See* Program Integrity AR 19. And it also allows HRSA, through its role as the administrator of the 340B Program, to perform integrity checks on eligibility requirements and the documentation required for compliance. *See id*. The inquiry should end there. Sagebrush must somewhat agree with HRSA's authority to perform a compliance review and terminate entities that fail to show program eligibility because during this review a majority of the 53 sites were termination without contest. Tellingly, Sagebrush only challenges the termination of eighteen of those sites. The inference is that if Sagebrush agrees the compliance review was authorized for some sites, it must be authorized for all sites.

If the statutory authority to develop, implement, and oversee the process for certification is not enough, HRSA has the ability to review an entity's certification documents and terminate any entity that was erroneously certified through HRSA's inherent authority to review its own prior decisions. *See Nuclear Energy Inst., Inc. v. Env't Prot. Agency,* 373 F.3d 1251, 1256 (D.C. Cir. 2004) ( deciding an agency is free to change its past practice as long as it provides "reasoned analysis" for the change); *see also Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) ("[A]dministrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions[.]") Here, the administrative record shows that the eighteen Sagebrush sites were erroneously certified based on Sagebrush's inaccurate self-reporting. Once HRSA reviewed the underlying documentation, HRSA had the inherent authority to correct the erroneous certifications and terminate the entities that no longer met the statutory requirement to participate in the 340B Program. HRSA should not have to wait indefinitely to do so. Once HRSA determined the underlying documentation failed, and upon giving Sagebrush reasonable time to provide

correct documentation, HRSA could terminate Sagebrush from the program based on the records before HRSA at that time showing Sagebrush was no longer a covered entity.

Without citing to any statutory authority, Sagebrush argues once an entity is certified it is "entitled to a one-year certification period during which eligibility remains in effect absent a statutorily defined disqualifying event." *See* Pl.'s Mot. at 20. The one year certification entitlement is not in the statute. *See generally* 42 U.S.C. § 256b. And pointing to the statutory prohibition on diversion and duplicate discounting cannot save Sagebrush's argument. Sagebrush was not terminated from the program for either infraction. Further, there is nothing within the text of the statute stating that covered entities can only be terminated for diversion or duplicate discounting. *See generally* 42 U.S.C. § 256b(a)(5)(A), (B). Sagebrush's flawed interpretation of the statutory text would mean that a covered entity could never be removed from the 340B Program for eligibility issues. Granting 340B covered entities perpetual access to the benefits of the 340B Program long after they no longer qualify would make the eligibility criteria nearly meaningless. Moreover, Sagebrush was terminated for failure to meet the threshold eligibility requirement that only covered entities may participate in the 340B Program. The administrative record shows that after a near yearlong inquiry, as of January 14, 2025, Sagebrush failed to meet this requirement.

## II. HRSA's Decision to Terminate Sagebrush Sites for Failure to Show Eligibility Was Neither Arbitrary Nor Capricious.

HRSA's decision did not violate the APA. HRSA's decision to terminate the eighteen Sagebrush sites from the program was reasonable and based on the administrative record before HRSA as of January 14, 2025. HRSA considered all the relevant information —which included over 8,000 pages of records that had been collected over almost a year— before it decided to terminate the sites from the 340B Program. The APA's arbitrary and capricious standards only require that agency action be "reasonable and reasonably explained." *Fed. Commc'ns Comm'n v.*

*Prometheus Radio Project*, 592 U.S. 414, 423 (2021) ("*Prometheus*"). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id*.

HRSA provided Sagebrush with notice that it was conducting a compliance check of the information Sagebrush submitted at recertification. *See* AR 1-3. HRSA allowed Sagebrush time to collect the required documentation, but at each opportunity Sagebrush failed to provide the required documentation. Sagebrush demanded to continue to participate in the 340B Program based on its own guarantee that Sagebrush would provide the required documentation. There is nothing in the statute requiring HRSA to accept Sagebrush's representation. *See e.g.* AR 12,046 (July 17, 2024 email from Sagebrush requesting more time to provide documentation and thanking HRSA for its "flexibility"). Sagebrush argues that HRSA "rush[ed] to judgment" when it terminated the eighteen sites, but the administrative record shows a lengthy review that began in February 2024 and ended in January 2025, a ten-month span. Pl.'s Mot. at 25. The January 13, 2025 decision noted that HRSA reviewed the documentation provided by Sagebrush in response to HRSA's prior termination notices. *See* AR 12,190. HRSA explained the deficiencies within Sagebrush's documentation. *See id*. HRSA also informed Sagebrush that its decision was based on information that HRSA collected directly from NHHS. *See id*. Although Sagebrush eventually obtained adequate documentation, that documentation came in nearly three months after the sites were already terminated.

In sum, HRSA's decision to terminate the eighteen sites is supported by the administrative record as of January 14, 2025, and HRSA considered all relevant information before terminating the sites from the 340B Program.

### III. Plaintiff's Remaining Claims Fail.

Sagebrush's remaining claims are glaringly faulty and do not warrant much discussion. Sagebrush alleges the decision to terminate the eighteen sites was ultra vires. *See* Pl.'s Mot. at 25. Ultra vires review is extremely limited, only available to correct agency action that exceeded its statutory authority. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189–90 (D.C. Cir. 2006); *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 721–22 (D.C. Cir. 2022) (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)). "It is reserved for those rare situations where an agency disregards a specific and unambiguous statutory directive, or violates some specific command of a statute .... garden-variety errors of law or fact are not enough." *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 193 (D.D.C. 2024 (quoting *Griffith*, 842 F.2d at 493) (cleaned up). As demonstrated, *supra*, HRSA has broad statutory authority to develop, implement, and oversee the 340B Program. Alternatively, HRSA has the inherent ability to review certification materials and correct its own mistakes.

Sagebrush argues that HRSA violated the APA because it treated Site No. STD891132 differently. But the administrative record shows that this site was treated favorably because Sagebrush provided a subaward agreement that listed this specific site as a recipient while it could not do the same for the other eighteen terminated sites.

Sagebrush argues that HRSA failed to observe a procedure required by law in violation of 5 U.S.C. § 706(2)(D), relying on the statutory prohibitions on diversion and duplicate discounting. *See* Pl.'s Mot. at 27. However, the procedure upon which t Sagebrush relies is irrelevant to this case.

To the extent that Sagebrush argues that the terminated sites must be reinstated, Sagebrush does not provide any authority to support this argument and HRSA is unaware of any statutory authority that would permit HRSA to retroactively re-certify a terminated entity.

Sagebrush argues that HRSA's review overall and its specific request for Sagebrush to provide the award for each site identifying the site by name and address amounts to a new binding documentation requirement. *See* Pl.'s Mot. at 28. But as outlined, *supra*, Sagebrush was already required to possess this information and have it readily available within at least 5 days of certification.

Finaly, Sagebrush argues HRSA's "repayment demands" are unlawful. *See* Pl.'s Mot. at 29-30. Sagebrush misapprehends HRSA's reminder that it is "Sagebrush's responsibility to determine the full scope of non-compliance and repay affected manufacturers accordingly for the period of time that the Sagebrush sites did not receive section 318 funding or support." AR 12,280. HRSA's statement is not a demand for repayment. The onus is on Sagebrush to evaluate and determine any potential repayment. HRSA has made no final decision regarding repayment. The Court should disregard Sagebrush's attempt to pre-litigate the issue of repayment because APA review is only available for agency decisions that are final. *See* 5 U.S.C. § 704.

* * *

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendants' favor and deny Plaintiff's motion for summary judgment.

Dated: December 15, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/Kimberly A. Stratton*_____
  KIMBERLY A. STRATTON
  P.A. Bar #327725
  Assistant United States Attorney
  601 D Street, NW
  Washington, DC 20530
  (202) 417-4216
  kimberly.stratton@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES,<br><br>     Plaintiff,<br><br>    v.<br><br>ROBERT F. KENNEDY, JR., SECRETARY OF HEALTH AND HUMAN SERVICES et al.,<br><br>     Defendants. | Civil Action No. 25-0915 (JEB) |

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for summary judgment, Defendants' cross-motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED, and

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that summary judgment is ENTERED in favor of Defendants.

SO ORDERED:

_____           _____
Date                                                    Chief Judge James E. Boasberg
                                                              United States District Judge