UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAGEBRUSH HEALTH SERVICES,<br><br>      Plaintiff,<br><br>  v.<br><br>ROBERT F. KENNEDY, JR., SECRETARY OF HEALTH AND HUMAN SERVICES et al,<br><br>      Defendants. | Civil Action No. 25-0915 (JEB) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Table of Authorities ................................................................................................................ ii

Argument ................................................................................................................................. 2

      I.      Defendants' Decision to Terminate the Sagebrush Sites Complied with the APA. 2

      II.     Plaintiff's Demand for Vacatur is Unmerited. ........................................................ 4

Conclusion ............................................................................................................................... 6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*,
  988 F.2d 146 ............................................................................................................... 4
*Allina Health Servs. v. Sebelius*,
  746 F.3d 1102 (D.C. Cir. 2014) ................................................................................ 4
*Am. Great Lakes Ports Ass'n v. Schultz*,
  962 F.3d 510 ............................................................................................................. 4
*Cboe Futures Exch., LLC v. SEC*,
  77 F.4th 971 (D.C. Cir. 2023) ................................................................................... 4
*Dakota Rural Action v. Dep't of Agric.*,
  668 F. Supp. 3d 1 (D.D.C. 2023) .............................................................................. 4
*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) .................................................................................................. 3
*Heartland Reg'l Med. Ctr. v. Sebelius*,
  566 F.3d 193 (D.C. Cir. 2009) .................................................................................. 4
*Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
  429 F.3d 1136 (D.C. Cir. 2005) ................................................................................ 4
*Loma Linda Univ. Med. Ctr. v. Sebelius*,
  684 F. Supp. 2d 42 (D.D.C. 2010) ............................................................................ 2
*Sierra Club v. Mainella*,
  459 F. Supp. 2d 76 (D.D.C. 2006) ............................................................................ 2

**Statutes**

42 U.S.C. § 256b(a)(7)(A) ............................................................................................... 1

Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services, the Department of Health and Human Services (the "Department"), the Health Resources and Services Administration and its Administrator (HRSA) (collectively, "HRSA" or "Defendants"), respectfully submit this reply in further support of their cross motion for summary judgment (ECF No. 46, "Defs. Mot.")

Plaintiff's position rests on an alarming contention: "absent the specified mid-year predicate, a covered entity's certification remains operative until the next recertification cycle." Pl.'s Combined Reply In Supp. of Its Mot. for Summ. J. and Opp'n to Def.'s Mot. For Summ. J., (ECF No. 49 at 9, "Pl.'s Opp'n"). Under this view, absent an audit or a finding of prescription drug diversion, an entity is effectively free to self-certify using imprecise information and Defendants are left with no recourse to examine that certification for compliance. But that is not the way Congress intended the 340B Program to operate. Plaintiff concedes as much by affirming that the "[c]ertification and annual recertification serve as the principal gatekeeping mechanisms for eligibility." Pl.'s Opp'n at 8. And Defendants have demonstrated the Secretary of the Department of Health and Human Services has broad authority to develop and implement a process for the certification of covered entities. *See* Def's Mot. at 11 (quoting 42 U.S.C. § 256b(a)(7)(A). That process allows covered entities to evaluate or correct compliance deficiencies, and it also allows Defendants to perform integrity checks to evaluate or correct compliance deficiencies. *See id*. at 12.

The Defendants' conduct was neither arbitrary nor capricious, it did not impose any new requirements on Plaintiff, and it was reasonably based on the record at the time of its decision to remove Sagebrush entities from the 340B Program after Sagebrush's compliance could not be confirmed. Defendants' conduct was more than reasonable, allowing nearly a year to examine

documents and contacting relevant state health departments before terminating the ineligible entities.

At bottom, the Defendants' decision to terminate eighteen Sagebrush sites for failure to demonstrate that they were covered entities was supported by the administrative record and complied with the Administrative Procedure Act ("APA").

## ARGUMENT

**I.      Defendants' Decision to Terminate the Sagebrush Sites Complied with the APA.**

At summary judgment the court considers "whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citation omitted). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006). Here the record supports the Defendants' decision to terminate the eighteen sites on January 14, 2025.

There is no dispute that Sagebrush only obtained a subaward notice listing the eighteen sites in question on February 4, 2025—after the sites were terminated —and a year after Defendants began the compliance check. *See* AR 12,296-12,303; *see also* Mem. Op. (ECF No. 34) at 7 (stating the February 4, 2025 subaward notice "came too late".) Sagebrush was required to have the documents supporting its recertification at recertification. *See* AR 14.  Even after a protracted period of compliance review, Sagebrush could not produce the document that it relied on to certify program eligibility. Defendants withheld termination for ten months.  Defendants were not obligated to wait for proof of eligibility and Plaintiff cannot argue that a ten-month compliance review before termination was arbitrary or capricious.

Based on this record, Plaintiff cannot show Defendants acted unlawfully or refused to consider the consequences of termination. The record demonstrates careful consideration of more than 8,000 pages of documentation and several warnings before termination. *See e.g.* AR 41-43, 47, 62-76, 12,090-12,100, 12,099. Plaintiff argues that Defendants' conduct was unlawful because Defendants failed to consider Plaintiff's reliance interest. *See* Pl.'s Opp'n at 17 (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222-24 (2016)). But Defendants were only required to consider Plaintiff's reliance interest if Defendants "changed position." *Encino Motorcars LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (stating "[i]n explaining its changed position, an agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.") (omitted). The agency in *Encino* issued a final agency rule that completely changed course from its proposed rule and "abandon[ed] its decades-old practice." *Id*. at 218. The present case is disanalogous to *Encino*.

Here, the Defendants did not promulgate a new rule or change their position at all. To be sure, Defendants have consistently stated that only covered entities may participate in the 340B Program. Moreover, Sagebrush was already required to maintain complete and accurate records. *See* Def. Mot. at 5- 6. Namely, Sagebrush was already required to provide the grant number, amount of federal funds authorized, Sagebrush recipient site(s) by name and address, as well as the nature and terms and conditions of the support received. *See id.* As demonstrated in the Defendants' moving papers, eighteen of Sagebrush's sites were erroneously certified by Sagebrush because although Sagebrush entered grant information in Defendants' OPIAS system, the information Sagebrush submitted turned out to be lacking. The Defendants did not change their position they merely reviewed the underlying documentation for the certification and determined the entities were certified by Sagebrush in error.

Finally, Sagebrush cannot rely on the Defendant's treatment of Site No. STD891132 to support an arbitrary and capricious claim. *See* Pl.'s Opp'n at 16. The record shows that unlike the other Sagebrush sites, STD891132 was the only site listed on the original Subaward SG-2024-00109. *See* AR 11,927 -11,928. This site met the statutory threshold requirements and thus was not terminated from the 340B Program on January 14, 2025. *See* Defs. Mot. at 9, 15.

## II. Plaintiff's Demand for Vacatur is Unmerited.

Plaintiff argues vacatur is the only proper remedy, but this argument is misplaced. *See* Pl.'s Opp'n at 22-25. First, vacatur is a remedy upon a finding that an agency's action was unlawful. *See Dakota Rural Action v. Dep't of Agric.*, 668 F. Supp. 3d 1, 9 (D.D.C. 2023). That is not the case here, as the administrative record demonstrates the Defendants rationally relied on the record before it when it terminated the eighteen sites on January 14, 2025. Even if the Defendants' actions were found unlawful, remand would be the proper remedy. Courts have broad discretion when deciding between remand and vacatur. *See Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005) (noting "this court is not without discretion" in determining whether to vacate an agency decision); *see also Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009) ("[T]he terms 'invalid' and 'vacated' are not synonyms."). To determine whether remand without vacatur is appropriate, courts in this Circuit consider "first, the seriousness of the action's deficiencies, and, second, the likely disruptive consequences of vacatur." *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518-19 (D.C. Cir. 2020) (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)) (cleaned up; *see also Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). But courts can remand a decision to the agency without vacatur in certain circumstances. *Cboe Futures Exch., LLC v. SEC*, 77 F.4th 971, 982 (D.C. Cir. 2023) (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)).

Here, the agency carried out its duty to oversee the integrity of the 340B Program and determined that more than fifty Sagebrush sites had failed to comply with the statutory eligibility criteria of the 340B Program. Plaintiff only challenges the decision to terminate eighteen of those sites. The significant number of sites that were identified as failing to comply with statutory eligibility criteria properly underlines the Defendants' actions as the result of reasoned decision-making and a careful review of a voluminous administrative record, consistent with the requirements of the APA. Under the deferential standard of review applicable here, the Court's role is not to substitute its judgment for that of the agency, but to ensure that the agency examined the relevant data and articulated a rational connection between the facts found and the decision made. Here, the administrative record supports the January 14, 2025 termination. Moreover, vacatur would inflict serious disruptive consequences to the 340B Program. Vacatur would render the program requirement that a covered entity must obtain statutorily required funding and maintain accurate records showing receipt of such funding meaningless. This would mean that once an entity is certified to participate in the 340B Program as a covered entity once, Defendants would have no mechanism to check ongoing compliance and remove those entities that, for example, self-certify on faulty documentation.

\* \* \*

## CONCLUSION

For these reasons, and those in Defendants' opening brief, the Court should grant Defendants' cross motion for summary judgment.

Dated: February 27, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: */s/ Kimberly A. Stratton*
    KIMBERLY A. STRATTON
    P.A. Bar #327725
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    Ph: (202) 417-4216
    Email: kimberly.stratton@usdoj.gov

*Attorneys for the United States of America*